Phimpha Thepvongsa
20044 139th Way SE
Kent, WA 98042

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

Phimpha Thepvongsa
Plaintiff,

vs.

**Regional Trustee Services Corp. et. al**

Defendant(s)

Case # C10 1045 RSL

RESPONSE & OBJECTION TO
RULE 12 MOTION

Date: September 24th, 2010

(1) Plaintiff, in the Amended Complaint, plead that Defendant(s) 1.) Slandered title to Plaintiff's real property by causing to be recorded in the records of King County, Washington documents that were false 2.) By way of **_unlawful and wrongful_** foreclosure actions have intentionally and recklessly inflicted severe emotional distress upon Plaintiff, 3.) Breached Defendant(s) Fiduciary & Quasi Fiduciary duties owed to Plaintiff 4.) Violated the Washington Consumer Protection Act 5.) Violated Fair Debt Collection Practices Act 6.) Violated Fair Credit Reporting Act 7.) Violated Real Estate Settlement Procedures Act 8.) Are attempting to wrongfully deprive Plaintiff of his money and Property without standing or proof they are a real "party of interest".

(2) Defendants Motion to Dismiss for Fed Civ. Rule 8(a) & Fed. Civ. Rule 12.(b) (6) violations should be denied as Plaintiff is Pro-Se and as such is entitled to some leeway as stated in Haines v Kerner, 404 U.S. 519-421; In re Haines:

> "pro se litigants are held to less stringent pleading standards than admitted or licensed bar attorneys. Regardless of the Deficiencies in the pleadings, pro se litigants are entitled to the opportunity to submit evidence in support of their claims."

Anastasoff v. United States, 223 F.3d 898 (8th Cir. 2000); In re: Anastasoff:

> "Litigants' constitutional (guaranteed) rights are violated when courts depart from precedent where parties are similarly situated."

Granting Defendants Motion to Dismiss for a technicality such as these prior to allowing Plaintiff the opportunity to conduct Discovery, gain honest answers under oath in depositions, interrogatories would be denying the plaintiff access to the courts upon the basis that Plaintiff is not yet, educated to the level or files complaints to the standards of an admitted or licensed attorney, in Civil Procedures & Rules. Especially when it is obvious that Plaintiff is making a diligent and good faith effort to improve the standard of pleadings Plaintiff is filing as evidenced by Plaintiff's first amended complaint in which formatting and service of process was correct.

Plaintiff specifically pleads that Defendant(s) after fraudulently inducing Plaintiff to execute the Promissory Note & Deed of Trust failed to provide notice as required by the Real Estate Settlement Procedures Act & Truth in Lending Act to Plaintiff about additional parties of interest who Defendant allegedly entered into subsequent transfers, negotiations, assignments of interests in Plaintiff's real property. Defendant further charged fees held to be forbidden by Real Estate Settlement Procedures Act to be charged to Plaintiff at settlement.

Plaintiff is prepared to provide this court and Defendant(s) with a more definite statement to further define and support Plaintiff's pleadings.

Defendants, to date, have not, provided any type of substantial answers, verification, or validation to Plaintiff's requests, disputes or demands. Therefore, Plaintiff has been forced to seek this Court's assistance by **way of discovery, yet to be performed** to get answers to Plaintiff's requests and upon completion of discovery and Defendant(s) production of documentation Plaintiff will finally be able to move the court to allow Plaintiff to amend the complaint with additional specific details that will show Defendant(s), omissions, material misrepresentations and misstatements that led Plaintiff

(upon a reliance that he was dealing with a party that could be trusted to operate in good faith and honesty) to enter an illegal and fraudulent scheme designed to generate enormous profits for the Defendant(s).

These false filings, disclosures, omissions, and outright lies include such schemes as at the time of settlement of the contract,

    (a) over-charging Plaintiff with fees that were in violation of the limitations imposed by the Real Estate Settlement Procedures Act as said fees were simply contrived and not paid to a third party vendor.

    (b) charging other fees that were a normal part of doing business and should have been included in the finance charge.

    (c) Omitting additional real "parties of interest" to the transaction

    (d) misrepresenting the roles, authorities, and rights of parties the Plaintiff was made aware of. Plaintiff further suspects additional violations, however is currently ignorant of them due to Defendant(s) failure to timely and adequately respond to Defendant(s) correspondence.

(3) In Objection to Defendant(s) claim that Plaintiff's pleadings do not state a claim that Defendant breached Fudiciary & Quasi Fudiciary duties due to no "special circumstances" Plaintiff further pleads that a "special circumstance" need not exist as stated in: <u>Cox v. Helenius</u>, 103 Wn.2d 383, 388, 693 P.2d 683 (1985), the Washington Supreme Court adopted the following view:

> "Because the deed of trust foreclosure process is conducted without review or confrontation by a court, the fiduciary duty imposed upon the trustee is "exceedingly high".

The court went on to illuminate four duties of the trustee:

    1.    The trustee is bound by his office to use diligence in presenting the sale under every possible advantage to the debtor as well as the creditor;

    2.    The trustee must take reasonable and appropriate steps to avoid sacrifice of the debtor's property and his interest;

    3.    Once a course of conduct is undertaken that is reasonably calculated to instill a sense of reliance thereon by the grantor, that course of conduct can not be abandoned without notice to the grantor; and

    4.    When an actual conflict of interest arises between the roles of attorney for the beneficiary and trustee, the attorney should withdraw from one position, thus preventing a breach of fiduciary duty.

The aforementioned case in addition to the Mortgage Broker Practices Act which specifically states in RCW 19.146.095:

> "(1) A mortgage broker has a fiduciary relationship with the borrower. For the purposes of this section, the fiduciary duty means that the mortgage broker has the following duties:
>
> (a) A mortgage broker must act in the borrower's best interest and in the utmost good faith toward the borrower, and shall disclose any and all interests to the borrower including, but not limited to, interests that may lie with ***the lender***."

In this case since it appears that several of the parties involved meet the definition of a Mortgage Broker as defined in 19.146.010 (14)

> "Mortgage broker" means any person who for compensation or gain, or in the expectation of compensation or gain (a) assists a person in obtaining or applying to obtain a residential mortgage loan or (b) holds himself or herself out as being able to assist a person in obtaining or applying to obtain a residential mortgage loan"

Including, but not limited to, Defendant New Century, since the funds used to complete this transaction came other parties who remain undisclosed, although disclosure has been

requested by the Plaintiff. Upon discovery Plaintiff will move to further amend the complaint to include the appropriate parties.

In Addition RCW 19.144.080 states:

> "It is unlawful for any person in connection with making, brokering, obtaining, or modifying a residential mortgage loan to directly or indirectly:
>
>> "Knowingly make any *misstatement, misrepresentation, or omission* during the mortgage lending process knowing that it may be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process;"

(4) In Objection to Defendant(s) claim that Plaintiff(s) pleadings the Defendant(s) committed violations of the Fair Credit Reporting Act were not sufficient to support a claim is again a frivolous motion filed by the Defendant(s). The Statutes specifically states in 15 USC 1681s-2that it is "Responsibilities of Furnishers of information to Credit Reporting Agencies." In subsection (a)(3):

> "If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to **such person** by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer."

This is in relation to a consumer sending a dispute directly to the Furnisher of the inaccurate information. Plaintiff has been attempting to deal with the "Furnisher" of the information, Defendant(s) as it is the "Furnisher's" responsibility to correct innacurrate information supplied to the reporting agencies.

(5) In Objection to Defendant(s) claim that Plaintiffs pleadings that Defendant MERS status as "beneficiary" lacks legal merit. Plaintiff alleged, and is prepared to prove at trial that, the original security instrument, if said instrument still exists, may give the holder a claim against the signator, but have no claim against the property.  In addition, MANY courts through the Country disagree with Defendant(s) claims. In Defendants Motion to Dismiss

Defendants misunderstand Plaintiffs complaint. It is not just the term "nominee beneficiary" that is of issue in this instant case. Although Plaintiff believes the term "nominee beneficiary" is a made up term that is not defined within any of the documentation that was presented to Plaintiff by any of the Defendant(s) in this case. In addition Plaintiff has yet to find any legal definition of a "nominee beneficiary". Without the term being defined how can it be compared with and determined if a "nominee beneficiary" holds the same authority rights and abilities as the very clearly defined in the WA Deed of Trust act 61.24 et seq. party "beneficiary".

Defendants counsel cited a case Pervus vs. MERS that is continuing to be adjudicated in California for Fraud allegations. The order reference by defendants counsel states that a lender may assign an agent to proceed with a non-judicial foreclosure action. Plaintiff is not aware of the full details of that particular case or CA state law. However Plaintiff has done a significant amount of research into the laws that control this instant case and the transaction in question.

In this instant case, in King County, WA the requirement is that the holder and owner of the promissory note or other obligation secured by the deed of trust is the **ONLY** party who is entitled to collect upon default. Plaintiff specifically denies and disputes that any of the Defendant(s) currently meet ALL the requirements to be named as a true and real "party of interest".

In Plaintiff's situation MERS is defined specifically as the "Beneficiary" on the Deed of Trust, which is plainly false and in no way disputed by the defendants. This is just the beginning of the problems with the document and many other completely false documents which the Defendants fraudulently induced the Plaintiff to sign. The addition of a made up term "nominee" and continued definition is of no impact to the multitude of violations the Defendants have committed against the Plaintiff's civil rights, several WA state, and Federal Statutes.

While according to the case Defendants counsel cited that in California there may be no legal prohibition on a lender authorizing an agent to initiate non-judicial foreclosure. In Washington such an agent would need to be authorized and instructed to initiate these procedures by; the true and correct party of interest; the owner and holder of the original promissory note which bears the Plaintiff's own signature, not a reproduction of the document. This party again is defined in Washington Statues as the "beneficiary".

That brings up the questions, as it was apparently omitted in the documents that Defendants presented to Plaintiff at the time of closing:

1. Who has the authority to instruct the agent?

2. What duties does that agent take on?

Which although the Plaintiff has previously asked and in fact demanded this information from the Defendants, the Defendants continue to avoid and in fact decline to answer.

It is extremely clear via many cases through-out the country, MERS own agreements, publications and advertisements that MERS does not at any time have any ownership of the promissory note or other obligation secured by the deed of trust. See ***In Re Walker, Rickie*, 2010 10-21656-E-11** where Judge Ronald H Sargis Ruled against the fraudulent parties falsely claiming to have an interest is the note with the following comments as part of his Minute order of May 20th, 2010.

**"TRANSFER OF AN INTEREST IN THE DEED OF TRUST ALONE IS VOID**

MERS acted only as a "nominee" … under the Deed of Trust. Since no evidence has been offered that the promissory note has been transferred, *[which is the same in this instant case]* MERS could only transfer whatever interest it had in the Deed of Trust. However, the promissory note and the Deed of Trust are inseparable.

"The note and the mortgage are inseparable; the former as essential, the later as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." Carpenter v. Longan, 83 U.S. 271, 274 (1872); …

Therefore, if one party receives the note an**[d]** another receives the deed of trust, the holder of the note prevails regardless of the order in which the interests were transferred….

Further, several courts have acknowledged that MERS is not the owner of the underlying note and therefore could not transfer the note, the beneficial interest in the

>deed of trust, or foreclose upon the property secured by the deed. See In re Foreclosure Cases, 521 F. Supp. 2d 650, 653 (S.D. Oh. 2007); In re Vargas, 396 B.R. 511, 520 (Bankr. C.D. Cal. 2008); Landmark Nat'l Bank v. Kesler, 216 P.3d 158 (Kan. 2009); LaSalle Bank v. Lamy, 824 N.Y.S.2d 769 (N.Y. Sup. Ct 2006).
>
>Since no evidence of MERS' ownership of the underlying note has been offered, and other courts have concluded that MERS does not own the underlying notes, this court is convinced that MERS had no interest it could transfer ….
>
>Since MERS did not own the underling note, it could not transfer the beneficial interest of the Deed of Trust to another. Any attempt to transfer the beneficial interest of a trust deed without ownership of the underlying note is void … "

Even if MERS is held to be an agent of the lender, which the defendants have provided no documentation to assert this false claim, MERS still does not hold the property authority as defined very clearly in **WA** RCW 61.24.030:

>"before the notice of trustee's sale is recorded, transmitted, or served, the trustee shall have proof that **the beneficiary** is **the owner** of any promissory note or other obligation secured by the deed of trust."

to cause the Trustee, (who in Plaintiff's situation has, without authority been substituted with Defendant Regional Trustee) to proceed with a non-judicial foreclosure sale. As seen above only the *beneficiary* is allowed the power to cause *the trustee* to invoke the power of sale, under a *lawful* deed of trust.

Under Washington State Law the definition of a "beneficiary" is extremely clear and concise.

RCW 61.24.005 (2)

>"Beneficiary" "means the holder of the instrument or document evidencing the obligations secured by the deed of trust…"

Due to the fact that one of the instrumental parties is falsely defined due to the misstatements of the Defendant(s) the security instrument itself is false and this court should find it to be void and therefore not enforceable.

1  MERS itself as discussed and ruled by many courts though-out the country, as sited
2  above by Judge Ronald H Sargis in his minute order in the briefs attached to Plaintiffs
3  amended complaint as Exhibit "2" and Exhibit "3" as well as the Honorable Arthur M
4  Schack who reference the famous TV show "The Twilight Zone" where his comments
5  read:

> "The explanations offered by plaintiffs [HSBC] counsel, ..., attempting to cure the four defects … are so incredible, outrageous, ludicrous and disingenuous that they should have been authored by the late Rod Serling, creator of the famous science-fiction television series, The Twilight Zone. Plaintiff's counsel…appears to be operating in a parallel mortgage universe, unrelated to the real universe, Rod Serling's opening narration, to episodes in the 1961-62 season of The Twilight Zone could have been an introduction to the arguments presented in support of the instant motion… "You are traveling through another dimension, a dimension not only of sight and sound but of mind. A journey into a wondrous land of imagination. Next Stop the Twilight Zone"

In this order Judge Schack makes a comparison to the chaos, conflicts of interest, lack of MERS authority to assign interest in the Note, and the validity of anything that may have been caused to be recorded by MERS in his ORDER of against HSBC BANK USA, N.A. AS TRUSTEE FOR MONURA ASSET-BACKED CERTIFICATE SERIES 2006-AF1, issued on May 24th in the Supreme Court, Kings County, New York. See: HSBC v Yeasmin.

These and many other cases throughout the country continue to affirm the fact that MERS, DOES NOT HOLD ANY INTEREST IN THE NOTE.

In Plaintiff's current action MERS assigned its non-interest to Defendant Duetsche who then, as Trustee for, Defendant Morgan Stanley (yet another non-party), falsely and without any authority under the recorded Deed of Trust(as OLD Republic Title the named Trustee never "Ceased to Act") assigned a Substitute Trustee, Defendant Regional Trustee Services. Concurrently, a yet to be verified Defendant, possibly Defendant

Ocwen, caused Defendant Regional Trustee to begin Foreclosure Proceedings. It will further be defined during discovery, which defendant this was, as this is another of Plaintiffs requests, that Defendant(s) have failed to answer, so it is still uncertain which of the above listed Non-Parties instructed Defendant Regional Trustees to begin foreclosure proceedings.

As stated in the amended complaint due to MERS not at any time directly holding any ownership or beneficial interest in the alleged obligation secured by the deed of trust which Plaintiff was fraudulently induced into signing. MERS **IS NOT** and in fact by definition of the above cited RCW **CANNOT** BE the Beneficiary.

Therefore, as a **non-owner/holder** to any debt obligation that may exist MERS also does not hold the rights to assign any **ownership interest** in the promissory note to any other parties. Furthermore, since the assignment of interest in the note was issued to Defendant Deutsche by MERS (who again had NO INTEREST IN THE NOTE) there is nothing in the record to establish that Defendant MERS nor Deutsche nor any of the other current parties in this instant case meet the definition of "Beneficiary" as defined in very clearly and concisely in RCW 61.24.005 (2):

> "Beneficiary" "means the holder of the instrument or document evidencing the obligations secured by the deed of trust..."

Since the Deed of Trust, has no "Beneficiary" it should be rendered void and unenforceable. Even if the Deed of Trust is not ruled as void and remains enforceable, to properly establish a true and accurate party of interest, the true "Beneficiary", further defined as the "Holder of the note or other debt obligation" must meet the requirements very clearly defined in UCC 3-302 adopted in Washington State as RCW 62A.3-302.

Wherefore, in response to Defendants Motion to Dismiss (which again, in reality appears to be more of a Request for a More Definite Statement) Plaintiff moves the court to allow

1    Plaintiff the opportunity to provide Defendant(s) a more definite statement and amend the
2    Complaint to include a defense as described in RCW 62A.3-305(a)(iii):

3    "Fraud that induced the obligor to sign the instrument with neither knowledge nor
4    reasonable opportunity to learn of its character or its essential terms"

5    The elements of which are painfully obvious and will be described in more specific terms
6    upon Court's granting Plaintiff's motion to amend the complaint and provide Defendants
7    with a more definite statement.

8    (6) In Objection to Defendant(s) claim that Plaintiff pleadings the Defendant(s) have
9    Slandered Title to Plaintiff(s) real property are lack factual support, Plaintiff attached as
10   Exhibit "1" a copy of the recorded Deed of Trust which makes false statements
11   throughout the document, including but not limited to, the parties roles including MERS
12   role as a "Beneficiary", Plaintiff further attached as Exhibit "4" MERS false assignment
13   of the Note to Defendant Deutsche, Plaintiff further attached as Exhibit "5" Defendant
14   Deutsche's false assignment of a substitute trustee, Defendant Regional Trustee. There
15   have been additional false documents filed in the records of King County in relation to
16   this instant case such as Notices of Trustee Sale that Plaintiff will point out during
17   discovery proceedings.

18   (7) In Objection to Defendant(s) claim that Plaintiff(s) pleadings of violations of the Real
19   Estate Settlement Procedures Act are inadequate "to give basic notice to Defendant(s) as
20   to the basis for the claims against it."

21   Again this issue is caused by Defendant(s) failure to operate in good faith and respond to
22   Plaintiff(s) previous requests.

23   In prior written communication with Defendant(s), Plaintiff by way of a "Constructive
24   Legal Notice of Lawful Debt Validation Demand" including a "Qualified Written
25   Request", TILA Request, RESPA Request, Complaint of Probable Fraud in the Factum,
26   Dispute of Debt & Validation of Debt in regards to the transaction in question; Disputed
27   the debt, the lawful claim to Plaintiff's property and demanded validation and verification
28   of fees, charges and accounting involved with the transaction including fees charged of

Plaintiff at the time of Settlement listed on the HUD 1 Settlement Statement. Plaintiff also demanded disclosure of the real "parties of interest" including the true and correct holder of Plaintiff's original promissory note and Deed of Trust.

Plaintiff alleges that, at closing, false fees were charged to Plaintiff by lender. Said allegations are stated below with specificity. Plaintiff alleged that the original lender sold the security instrument immediately after closing, but failed to transfer the lien document to the purchaser of said security instrument. Plaintiff is prepared to prove, subsequent to discovery, that the lender, while still holding the security instrument, received consideration and, therefore, could not be harmed rendering the lien unenforceable.

### A. LENDER CHARGED FALSE FEES

1. Lender charged fees to Plaintiff that were in violation of the limitations imposed by the Real Estate Settlement Procedures Act as said fees were simply contrived and not paid to a third party vendor.

2. Lender charged other fees that were a normal part of doing business and should have been included in the finance charge.

3. Below is a partial listing of the fees charged at settlement, however neither at settlement, nor upon Plaintiff's Qualified Written Request, Dispute, Demand, nor at any other time did Lender, Trustee or any of the Defendant(s) provide documentation to show that the fees herein listed were valid, necessary, reasonable, and proper to charge Plaintiff.

| | | |
|---|---|---|
| 803 | Appraisal Fee | $350 |
| 804 | Credit Report | $34.56 |
| 808 | Broker Loan Fee | $4,000 |
| 809 | Broker Processing Fee | $495 |
| 810 | Broker Courier Fee | $95 |
| 811 | Flood Cert Fee | $11.20 |

        812   Lender Processing Fee     $399

        813   Tax Service Fee          $78

        814   Lender Underwriting Fee   $399

        815   Broker Underwriting Fee   $595

4. Plaintiff is unable to determine whether or not the above fees are valid in accordance with the restrictions provided by the various consumer protection laws. Therefore it was demanded that Defendants provide;

    a. a record of payment to each vendor who provided the above listed services;

    b. a record of all invoices and agreements for each vendor who provided a billed service;

    c. clearly stipulate as to the specific service performed,

5. The above charges have been disputed and deemed unreasonable until such time as said charges have been demonstrated to be reasonable, necessary, and in accordance with the limitations and restrictions included in any and all laws, rules, and regulations intended to protect the consumer.

6. In the event Defendant fails to properly document the above charges, borrower will consider same as false charges. The effect of the above amounts that borrower would pay over the life of the note will be an overpayment in the tens of thousands of Dollars. Plaintiff is prepared to provide calculated after completion of discovery. As this amount will be reduced by the amount of items above when said items are fully documented.

**B. RESPA PENALTIES**

1. From a cursory examination of the records, with the few available, the apparent RESPA violations are as follows:

    a. Good Faith Estimate not within limits, No HUD-1 Booklet, Truth In Lending Statement not within limits compared to Note, Truth in Lending

                    Statement not timely presented, HUD-1 not presented at least one day before closing, No Holder Rule Notice in Note, No 1st Payment Letter

    2. No signed and dated :

        a. Financial Privacy Act Disclosure; Equal Credit Reporting Act Disclosure; ,notice of right to receive appraisal report; servicing disclosure statement; borrower's Certification of Authorization; notice of credit score; RESPA servicing disclosure letter; loan discount fee disclosure; business insurance company arrangement disclosure; notice of right to rescind.

    2. The courts have held that the borrower does not have to show harm to claim a violation of the Real Estate Settlement Procedures Act, as the Act was intended to insure strict compliance.  And, in as much as the courts are directed to assess a penalty of no less than two hundred dollars and no more than two thousand, considering the large number enumerated here, it is reasonable to consider that the court will assess the maximum amount for each violation.

    3. Since the courts have held that the penalty for a violation of RESPA accrues at consummation of the note, borrower has calculated that, the number of violations found in a cursory examination of the note, if deducted from the principal, would result in an additional significant overpayment on the part of the borrower, over the life of the note, again this amount calculates into tens and possibly hundreds of thousands of dollars. Plaintiff is prepared to provide calculated after completion of discovery.

    4. If the violation penalty amounts for each of the unsupported fees listed above are included, the amount by which the borrower would be defrauded is exceeds $100,000.

    5. Adding in RESPA penalties for all the unsupported settlement fees along with the TILA/Note variance, it appears that lender intended to defraud borrower in an amount more than the face value of original note.

(8) In Objection to Defendant(s) claim that Plaintiff(s) pleadings the Defendant(s) committed violations of the Washington Consumer Protection Act it appears that Defendant(s) are again requesting a more definite statement as opposed to actually objecting to the claim.

The facts that Plaintiff Plead which most definitely constitute unfair and deceptive business practices, that occurred in trade or commerce, that are of public interest, and that caused injury to plaintiff again were clearly stated in the Plaintiffs pleadings as so much that Plaintiff can specifically plead while Defendants continue to block, mislead, omit, and deceive Plaintiff by failing to answer any of the demands, requests, or correspondence Plaintiff previously sent to Defendant(s). The fact Defendant(s) failed to properly cause to be recorded ALL of the appropriate assignments and transfers to maintain an accurate chain of title and establish a complete record of who in the true and correct party of interest is a violation of the Washington Consumer Protection Act. In Addition the fact that the Defendant(s) caused derogatory, erroneous, and inaccurate information to be reported into Plaintiffs credit file from at least April 2008 through November 2009 definitely constitutes:

  a. unfair and deceptive business practices;
  b. pertain to and occurred in trade or commerce as all of the following statues regulated in some way transactions that occurred in trade and/or commerce; the Fair Credit Reporting Act, Fair Debt Collections Practices Act, and Washington Consumer Protection Act
  c. are of public interest due to the fact the assignments that should have been recorded to notify the public of transfers and assignments in Plaintiffs Note associated with Plaintiffs real property. Thereby maintaining a complete record of transfers and ownership of title for all parties of interest associated with Plaintiffs real property incur a fee payable to the County in which the property is located and due to the scheme created by Defendant(s) in relationship to this and every other deed of trust & Promissory Note which there is a missing assignment

      allowed the Defendant(s) to avoid paying those proper fees to the County, thereby increasing the deficiencies in the public county and state budget.

In addition, anything dealing with a consumers credit file is used for many public purposes including but not limited to job applications, approval of additional credit, cost of insurance, etc.

The derogatory, erroneous, and inaccurate information reported into Plaintiffs credit file has most definitely caused Plaintiff direct damage publicly, emotionally, and financially.

(9) In Objection to Defendant(s) ramblings that Plaintiff's motion for Preliminary Injunction to enjoin any further action by Defendant(s) to initiate a non-judicial foreclosure action thereby maintaining the status-quo and preventing Defendant(s) ability to cause irreparable harm to Plaintiff upon which the court could deem Plaintiff has a "fair chance of success on the merits". Plaintiff has in the amended complaint and with this motion again makes a record that on each and every count plead by Plaintiff there is a strong probability of success and serious questions are raised. Both Plaintiff believes that serious questions are raised and Statues agree as referenced in RCW 19.144.090 (1)

      "…Mortgage fraud is a serious level III offense"

The hardship most definitely rests in favor of Plaintiff as ALL of the offenses including, financial, emotional, fraud, deceptive and unfair business practices have been committed against Plaintiff and NONE of the Defendant(s) have shown anything in the record that they have ANY liability or lawful standing, what-so-ever. The Defendant only stands to as stated in RCW 19.144.080 (4) receive proceeds and additional value in connection with the completion of a Trustee Sale of Plaintiff's Real Property.

(10)    Plaintiff alleges, and is prepared to prove at trial that, Defendant(s), and the attorneys claiming to represent same, have committed fraud by representing to the court

that Defendant(s) are real party(ies) in interest in the contract of sale and has standing to take said property from defendant when no such claim exists.

(11)   Plaintiff has alleged, and is prepared to prove at trial, that the defendant(s), by claiming standing to express the provisions of the contract of sale and lien, claim to be real parties in interest and, therefore, under the Federal Trade Commission Holder Rule 16 CFR 433, are subject to any claim Plaintiff may have against the original lender.

## ONGOING CRIMINAL CONSPIRACY

Defendant complains that Plaintiff's complaint is similar to other cases alleging wrongdoing by banks and lending institutions.

This begs a question; does the wrongdoing of Defendant(s) become somehow less wrong simply because they do it to everyone?

Simply because the lenders are accused by numerous plaintiffs of acting in concert and collusion, one with the other, of the perpetration of predicate acts toward the furtherance of an ongoing criminal enterprise intended to strip the people of this country of the equity in their property, and thereby, deprive them of their homes, is hardly a valid objection. It seems Defendant(s), by complaining that others have accused them of the same sorts of fraud should somehow render the claims made here less valid. This also simply demonstrates the extent of their acts of theft and fraud.  Plaintiff suggests, instead of attacking the messenger, the court may consider convening a court of inquiry to examine into the fraudulent practices of the Defendant(s) and encourage the federal government to pick up the mantel and prosecute the criminal wrongdoing of the banks and lending institutions.

## MORE DEFINITE STATEMENT

Plaintiff is willing to prepare a more definite statement for the court.  Subsequent to the filing of the amended complaint, Plaintiff has made additional inquiry and found evidence of knowingly and deliberate criminal acts by lenders intended to defraud Plaintiff of Plaintiff's property. Plaintiff is prepared to file a more definite statement with the court.

## CONCLUSION

Wherefore;

a. Plaintiff maintains that Defendant(s) motion of dismissal is frivolous and that counsel, in making said claim, has failed to speak with candor with the court.

b. Plaintiff moves this honorable court to DENY Defendant's Motion to Dismiss

**Respectfully Submitted,**

*Phimpha Thepvongsa*
**Phimpha Thepvongsa**
**206-708-5014**
thph60@gmail.com