THE HONORABLE ROBERT S. LASNIK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PHIMPHA THEPVONGSA,

                    Plaintiff,

    v.

REGIONAL TRUSTEE SERVICES
CORPORATION; OLD REPUBLIC TITLE
LTD.; OCWEN LOAN SERVICING, LLC,
SAXON MORTGAGE SERVICES;
ELECTRONIC REGISTRATION SYSTEMS,
INC.; NEW CENTURY MORTGAGE
CORPORATION; DEUTSCHE BANK
NATIONAL TRUST COMPANY;
MORGAN STANLEY ABS CAPITAL I INC.;
and DOES 1 through 20,

                  Defendants.

NO. CV 10-01045-RSL

DEFENDANT SAXON MORTGAGE
SERVICES, INC.'S MOTION TO
DISMISS, OR IN THE ALTERNATIVE,
MOTION FOR SUMMARY
JUDGMENT UNDER FED. R. CIV. P.
12 AND 56

## I.  MOTION & RELIEF REQUESTED

COMES NOW Defendant Saxon Mortgage Services, Inc. ("Saxon") and moves the

Court pursuant to pursuant to *Fed. R. Civ. P. 12(6),* or in the alternative for summary

judgment under *Fed. R. Civ. P. 56,* for an Order dismissing plaintiff's complaint with

prejudice.  Plaintiff's complaint alleges only conclusory allegations in support of the causes

DEFENDANT SAXON MORTGAGE
SERVICES, INC.'S MOTION TO
DISMISS - 1

CV 10-01045-RSL

BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
720 OLIVE WAY, SUITE 1301
SEATTLE, WASHINGTON 98101-1801
206/622-5306  FAX:  206/622-0354

of action pleaded without specific reference to facts unique to this plaintiff.  Moreover, what specific allegations that are made have more to do with the other named defendants and not with Saxon.  But even if the court considers the claims, such as they are, each fails as a matter of law.

II.     EVIDENCE RELIED UPON

1.     Declaration of Mary Gutierrez and exhibits attached thereto.

III.     STATEMENT OF FACTS

Plaintiff filed this action on July 22, 2010.  Plaintiff's complaint fails to articulate any specific factual allegations to support a viable cause of action against Saxon.  Instead, plaintiff only makes conclusory allegations that parrot the statutory elements for each of the following claims: (1) Intentional Inflictions of Emotional Distress; (2) Slander of Title; (3) Breach of Fiduciary Duty; (4) Violation of the Consumer Protection Act; (5) Violation of the FDCPA; (6) Violation of the FRCA; and (7) Violation of the RESPA.

The only factual allegations involving Saxon are as follows:

> Saxon Mortgage Services Inc., is a Texas Corporation, that is NOT licensed to conduct business in the State of Washington, however, but does conduct business in the State of Washington by acting as a "debt collector" as defined by the FDCPA, 15 USC § 1601. Et seq. Complaint, p.2 ¶5 (Dkt. 3).

> On that same day [November 5, 2008], a Scott Walter purportedly an AVP of Defendant Saxon Mortgage Services, who is purportedly an Attorney-in-Fact, for Defendant Duetsche Bank National Trust Company, executed an appointment of Successor Trustee, appointing Defendant Regional Trustee Services Corporation as Successor Trustee.  Again the Notary Stamp, by Mark Bischof,

DEFENDANT SAXON MORTGAGE
SERVICES, INC.'S MOTION TO
DISMISS - 2

CV 10-01045-RSL

BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
720 OLIVE WAY, SUITE 1301
SEATTLE, WASHINGTON 98101-1801
206/622-5306  FAX:  206/622-0354

1   asserts that Mr. Walter is "personally known" to him to be an AVP

2   of Defendant Saxon Mortgage Services.  Complaint p.5, ¶5 (Dkt. 3).

3   Defendant Ocwen responded to the above referenced Debt
    Validation Demand claiming their alleged beneficial interest was
    transferred November 16th, 2009, by and through Defendant Saxon
4   Mortgage Services ("Saxon").  There is no documentation of record
    "Defendant Saxon" acquiring any beneficial interest in Plaintiff's
5   Home Loan filed with the King County Auditor's office, nor did
    Plaintiff receive notice at any time as to such transfer to Defendant
6   Saxon, There also is no documentation of record filed with the King
    County Auditor's office of the alleged transfer made by Defendant
7   Saxon to Defendant Ocwen, however Defendant Ocwen claims in a
    response to Plaintiff's Demand for Validation that it acquired his
8   Home loan from Saxon Mortgage Services on November 19th,
    2009…. Complaint pp. 6-7, ¶9 (Dkt. 3).
9

10  Plaintiff did not receive formal written notice of the purported
    change in ownership and/or servicing of the mortgage loan from any
11  of the defendants named herein, including Defendant Saxon…prior
    to the alleged transfer, as required by laws.  RESPA, 12 USC § 2601
12  et seq.  Instead, Defendant Regional Trustee Services Corporation
    began foreclosure proceeding without properly verifying that it was
13  being instructed to do so by a party with the appropriate authority to
    do so.  Complaint p. 8, ¶12 (Dkt. 3).
14

15      For a period of time Saxon was the loan servicer.  On October 30, 2009, Saxon wrote

16  to the plaintiff to advise that effective November 16, 2009, the servicing for the loan was

17  being transferred to Ocwen Loan Servicing, LLC.[1]  After the transfer of servicing to Ocwen,

18  Saxon has had no other interest or involvement with the subject loan.[2]

19

20

21

22  _____

23  1 Declaration of Mary Gutierrez, *Exhibit A*.
    2 Declaration of Mary Gutierrez, p. 1.

24  DEFENDANT SAXON MORTGAGE                BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
    SERVICES, INC.'S MOTION TO                        720 OLIVE WAY, SUITE 1301
25  DISMISS - 3                                    SEATTLE, WASHINGTON 98101-1801
                                                   206/622-5306  FAX:  206/622-0354
    CV 10-01045-RSL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

III    LEGAL ARGUMENT

A.    Standard

Plaintiff's action should be dismissed pursuant to *Fed. R. Civ. P. 12 (b)(6).*  On a motion to dismiss, all facts alleged in the complaint should be considered as true and credit all reasonable inferences arising from their allegations in determining whether plaintiff's complaint states any cause of action against.  *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).

Plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007).  If they do so, their complaint survives dismissal as long as there is "any set of facts consistent with the allegations in the complaint" that would entitle them to relief.  *Id.* at 563; *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").  The court typically cannot consider evidence or allegations beyond the four corners of the complaint, although it may rely on a document to which the complaint refers as long as the document is central to the party's claims or defenses and its authenticity is not in question. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  The court may also consider evidence subject to judicial notice.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Alternatively, as provided for under *Fed. R. Civ. P. 12(d)* when matters outside the pleadings are considered*,* defendant moves for this case to be dismissed as a matter of law pursuant to *Fed. R. Civ. P. 56.*  The law of summary judgment is well settled and familiar.

DEFENDANT SAXON MORTGAGE
SERVICES, INC.'S MOTION TO
DISMISS - 4

CV 10-01045-RSL

BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
720 OLIVE WAY, SUITE 1301
SEATTLE, WASHINGTON 98101-1801
206/622-5306  FAX:  206/622-0354

*Fed. R. Civ. P. 56* provides in relevant part, that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."  See also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A genuine issue of material fact does not exist where there is insufficient evidence for a reasonable fact-finder to find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In order to defeat a motion for summary judgment, the non-moving party bears the burden of making more than conclusory allegations, speculation or argumentative assertions that material facts are in dispute.  *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994).  Summary judgment is appropriate here as there are no material facts in dispute and defendant is entitled to judgment as a matter of law.

### B.      Plaintiff Fails To State a Claim for a RESPA Violation

Plaintiff alleges to have sent Defendant Ocwen "a Dispute of Debt, as defined under the Fair Credit Reporting Act 15 USC § 1681, et seq., a Demand of Validation – Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605, and a Qualified Written Request [QWR] under the Fair Debt Collections Practices Act, 15 USC § 1601…."  Complaint pp. 6, ¶8 (Dkt. 3).  However, nowhere does the plaintiff allege any of these notices, including a QWR, were ever sent to Saxon.  Consequently, as a QWR

DEFENDANT SAXON MORTGAGE
SERVICES, INC.'S MOTION TO
DISMISS - 5

CV 10-01045-RSL

BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
720 OLIVE WAY, SUITE 1301
SEATTLE, WASHINGTON 98101-1801
206/622-5306 FAX:  206/622-0354

1   was not sent to Saxon, there is no obligation to respond, and therefore, no liability as to

2   Saxon

3       Moreover, plaintiff's claim that Saxon and the other defendants failed to properly

4   document the transfer of the "beneficial" interest reflects a fundamental misunderstanding

5   of the beneficiary's status under a deed of trust and that of a loan servicer.[3] Complaint pp.

6   15, ¶2 (Dkt. 3).   As there is no evidence Saxon was anything but a loan servicer for a

7   period of time, Saxon was under no obligation to record an instrument with the county

8   auditor to reflect a change in servicer.

9       Lastly, contrary to plaintiff's the conclusory assertions, (Complaint pp. 15, ¶4

10  (Dkt. 3)), Saxon did provide written notice of its servicing transfer to Ocwen.  On October

11  30, 2009, Saxon wrote to the plaintiff to advise that effective November 16, 2009, the

12  servicing for the loan was being transferred to Ocwen Loan Servicing, LLC.[4]  In doing so,

13  Saxon fulfilled its obligations under 12 U.S.C. § 2605.

### C.    The Plaintiff Fails to State a Fair Credit Reporting Act (FRCA) Claim

17      The plaintiff's complaint simply quotes the Fair Credit Reporting Act and,

18  without citing to any specific fact contends it was somehow violated.  Complaint p. 12,

19  ¶9 (Dkt. 3).  Under *Twomby* this is an impermissibly vague and conclusory claim and

20  fails, as a matter of law, to state a claim.  In addition, the claim is also barred because

---

22   3 The term "servicer" means the "person responsible for servicing of a loan (including the person who makes  or holds a loan if such person also services the loan)...."  12 U.S.C. § 2605(i)(2).

DEFENDANT SAXON MORTGAGE
SERVICES, INC.'S MOTION TO
DISMISS - 6

CV 10-01045-RSL

BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
720 OLIVE WAY, SUITE 1301
SEATTLE, WASHINGTON 98101-1801
206/622-5306  FAX:  206/622-0354

there is no allegation that plaintiff complied with the mandatory prerequisite of making a dispute with a credit reporting agency before suing the furnisher that allegedly provided the inaccurate information to the credit bureaus.

Under the FCRA, the duties of a furnisher of information are set forth in 15 U.S.C. §1681s-2.  The FCRA imposes two duties on furnishers of information, codified at 15 U.S.C. §§ 1681s-2 (a) and (b). The category of duties in subsection (a) relates to the furnishers' duty to report accurate information and their ongoing duty to correct inaccurate information. Section 1681s-2(a) provides in relevant part as follows:

> A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or consciously avoids knowing that the information is inaccurate.  A person shall not furnish information relating to a consumer to any consumer reporting agency if (i) the person has been notified by the consumer . . . that specific information is inaccurate; and (ii) the information is, in fact, inaccurate.  A person who . . . has furnished to a consumer reporting agency information that the person determines is not complete or accurate, shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate, and shall not thereafter furnish to the agency any of the information that remains not complete or accurate.

15 U.S.C. §§ 1681s-2(a)(1) and (2).

However it is clear there is no private cause of action under Section 1681s-2(a), for the FCRA limits the enforcement of this subsection to government agencies and

---

4 Declaration of Mary Gutierrez, *Exhibit A.*

DEFENDANT SAXON MORTGAGE SERVICES, INC.'S MOTION TO DISMISS - 7

CV 10-01045-RSL

officials. 15 U.S.C. § 1681s-2(d); *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002).

The statute explicitly excludes a private right of action for furnishing inaccurate information. For these reasons, even if Saxon did furnish inaccurate information to credit reporting agencies, the plaintiff cannot successfully allege causes of actions against Saxon under 15 U.S.C. §§ 1681s-2(a) of the FCRA.

A furnisher of information has specific duties only once the furnisher has been notified by a credit reporting agency that a consumer is disputing information on his or her credit report. 15 U.S.C. § 1681s-2(b).

The procedure for a consumer who disputes information is set forth in 15 U.S.C. §1681i. The consumer must notify the credit reporting agency directly of the dispute, and the agency is then required to conduct a reasonable investigation, including notifying the furnisher of information about the dispute. 15 U.S.C. §1681i(a)(1), (2). Once the furnisher of information has received notice of the dispute from the credit reporting agency, the furnisher must then conduct an investigation, review the information and provide a response to the credit reporting agency pursuant to 15 U.S.C. §1681s-2(b). Accordingly, in order to impose liability on a furnisher of information to the credit reporting agencies, there must first be a dispute by the consumer. 15 U.S.C. § 1681(i). Such notice is necessary to trigger Saxon duties under 15 U.S.C. §§ 1681s-2(b).

Advising the furnisher of information directly, without also advising the credit reporting agencies of a dispute, is insufficient to establish a cause of action under the

DEFENDANT SAXON MORTGAGE
SERVICES, INC.'S MOTION TO
DISMISS - 8

CV 10-01045-RSL

1   FCRA.[5]   In *Peasley v. Verizon Wireless (VAW) LLC*, 364 F.Supp.2d 1198 (S.D. Cal.

2   2005), the court dismissed plaintiff's FCRA claim for failure to state a claim upon which

3   relief could be granted because in order for the duty of a furnisher of information to be

4   triggered, the furnisher must first have received notice of the dispute from the credit

5   reporting agency, not directly from the consumer as was the situation in *Peasley*.

6       To the extent that the plaintiff alleges a FCRA violation for reporting late

7   payments, he is first required to establish that he disputed the reporting with the credit

8   bureaus directly.   The plaintiff has not satisfied this requirement and the FCRA claim

9   should be dismissed.

10

11      **D.       Plaintiff Fails to State a Claim Under the Fair Debt Collection
                 Practices Act (FDCPA)**

12      While not clear, plaintiff appears to allege a FDCPA violation against Saxon for

13   furnishing derogatory information to the credit reporting agencies.   Complaint p. 12, ¶9

14   (Dkt. 3).   While such a claim should fall under the scope of the FCRA and, for the reasons

15

16

17

18   _____

19   5 The FCRA notice requirements make sense considering credit reporting is not within the complete control
     of the furnisher.   Credit reporting agencies can make errors in reporting.   Congress has explained that the
20   purpose of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for
     meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner
     which is fair and equitable to the consumer." 15 U.S.C. § 1681(b).   Thus, credit reporting agencies have their
21   own duty to investigate disputes. *See* 15 U.S.C. §1681i.   Only once the agency has been notified of a dispute
     can it be required to conduct its own "reasonable investigation, including notifying the furnisher of the
22   information about the dispute." 15 U.S.C. §1681i(a)(1), (2).   Unless the agency is notified of a dispute it
     cannot take appropriate action to investigate or correct its own reporting.   Saxon is not responsible for the
23   mistaken reporting of the credit reporting agencies.

24   DEFENDANT SAXON MORTGAGE              BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
     SERVICES, INC.'S MOTION TO                        720 OLIVE WAY, SUITE 1301
     DISMISS - 9                                    SEATTLE, WASHINGTON 98101-1801
25                                                  206/622-5306  FAX:  206/622-0354

     CV 10-01045-RSL

stated above, fail as a matter of law, this claim also fails if the court considers application

of the FDCPA to the allegations because plaintiff ignores the statutory exemption for

creditors and servicers of creditors collecting their own debts.  It is well established that

the FDCPA applies only to "debt collectors" and not to creditors or mortgage servicers.

15 U.S.C. § 1692a(6)(F); *Perry v. Stewart Title Co.,* 756 F.2d 1197, 1208 (5th Cir.1985);

*Chernik v. Bank of America Home Loans,* 2010 WL 3269797, 4 (E.D.Cal.,2010) (as a

matter of law, creditors and mortgage servicers are excluded from the definition of a "debt

collector" under the federal act).   To the extent the alleged conduct falls under the

FDCPA, and not the FCRA, plaintiff fails to state a claim under the FDCPA and dismissal

should be granted.

### E.  Plaintiff Fails to Plead That a Special Relationship Existed in Support of a Claim for Breach of Fiduciary Duty

A breach of a fiduciary duty imposes liability in tort.  Restatement (Second) of

Contracts § 193 (1981); *Tedvest Agrinomics VI v. Tedmon Properties V,* 49 Wn. App. 605,

607, 744 P.2d 648 (1987).  In order to prevail, the plaintiff must establish: (1) the existence

of a duty owed; (2) a breach of that duty; (3) a resulting injury; and (4) that the claimed

breach was the proximate cause of the injury.  *Hansen v. Friend*, 118 Wn.2d 476, 479, 824

P.2d 483 (1992).  Whether a legal duty exists is a question of law.  *Hansen,* 118 Wn.2d at

479.

In Washington, the general rule is that a lender is *not* a fiduciary of its borrower.

Only if a "special relationship" is found to exist does a lender become a fiduciary to a

DEFENDANT SAXON MORTGAGE
SERVICES, INC.'S MOTION TO
DISMISS - 10

CV 10-01045-RSL

1    borrower.  *Miller v. U.S. Bank*, 72 Wn. App. 416, 426-427, 865 P.2d 536 (1994)  "This

2    confidential relationship requires proof that the borrower's relationship with the lender was

3    such that the borrower could justifiably expect the lender to care for his or her welfare.

4    Important considerations are the borrower's lack of business expertise, friendship between

5    the parties, the lender's superior knowledge, and the lender's assumption of an adviser's

6    role."  *Washington Commercial Law Deskbook*, Vol. IV, §37.2(3)(b).  Simply placing trust

7    in another is not sufficient to give rise to a fiduciary duty.  *Micro Enhance v. Coopers &*

8    *Lybrand,* 110 Wn. App. 412, 40 P.3d 1200 (2002); *Resolution Trust Corp. v. KPMG Peat*

9    *Marwick*, 844 F. Supp. 432, 436 (N.D.Ill. 1994) (placing trust and confidence in firm as

10   independent advisor insufficient to create fiduciary duty).   Consequently, absent any

11   showing of a special relationship the claim fails on its face.

12

13        In addition, this tort claim is also barred by the economic loss rule.  In *Alejandre v.*

14   *Bull*, 159 Wn.2d 674, 153 P.3d 864 (2007), the Washington Supreme Court reversed, in an

15   *en banc* decision, the Appellate Court over the economic loss rule, and in doing so

16   provided a thorough discussion of the rule:

17
18            The economic loss rule applies to hold parties to their contract
             remedies when a loss potentially implicates both tort and contract
19            relief.  It is a "device used to classify damages for which a remedy
             in tort or contract is deemed permissible, but are more properly
20            remediable only in contract. . . .  '[E]conomic loss describes those
             damages falling on the contract side of "the line between tort and
21            contract".'

22            The rule "prohibits plaintiffs from recovering in tort economic
             losses to which their entitlement flows only from contract" because
23

24   DEFENDANT SAXON MORTGAGE                 BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
     SERVICES, INC.'S MOTION TO                        720 OLIVE WAY, SUITE 1301
25   DISMISS - 11                                    SEATTLE, WASHINGTON 98101-1801
                                                    206/622-5306  FAX:  206/622-0354
     CV 10-01045-RSL

1

2

    "tort law is not intended to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement."

3

4

5

6

7

8

9

10

    Tort law has traditionally redressed injuries properly classified as physical harm.  It "is concerned with the obligations imposed by law, rather than by bargain," and carries out a "safety-insurance policy" that requires that products and property that are sold do not "unreasonably endanger the safety and health of the public."  Contract law, in contrast, carries out an "expectation-bargain protection policy" that "protects expectation interests, and provides an appropriate set of rules when an individual bargains for a product of particular quality or for a particular use.  In general, whereas tort law protects society's interests in freedom from harm, with the goal of restoring the plaintiff to the position he or she was in prior to the defendant's harmful conduct, contract law is concerned with society's interest in performance of promises, with the goal of placing the plaintiff where he or she would be if the defendant had performed as promised.

11

12

13

14

15

*Alejandre v. Bull*, 159 Wn.2d at 681-82 (citations omitted).  *Alejandre v. Bull* involved the sale of real property and the seller's failure to disclose a defective septic system.  Because this issue was within the parties' contract, the economic loss rule prevented any recovery in tort.  *Id* at 677, 686.  The court concluded,

16

17

18

    In short, the purpose of the economic loss rule is to bar recovery for alleged breach of tort duties where a contractual relationship exists and the losses are economic losses.  If the economic loss rule applies, the party will be held to contract remedies, regardless of how the plaintiff characterizes the claims.

19

20

*Alejandre v. Bull*, 159 Wn.2d at 683.

21

22

    In this case, it is alleged there is a contract between defendants and the plaintiff (a note and deed of trust), and it was breached.  Based on the authorities above, the economic

23

24

25

DEFENDANT SAXON MORTGAGE
SERVICES, INC.'S MOTION TO
DISMISS - 12

CV 10-01045-RSL

BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
720 OLIVE WAY, SUITE 1301
SEATTLE, WASHINGTON 98101-1801
206/622-5306  FAX:  206/622-0354

1   loss rule precludes plaintiff's tort claim of breach of fiduciary duty and it must be

2   dismissed.

3   **F.      No Basis Exists for an Emotional Distress Claim against
           Saxon.**

4

5       "The tort of outrage requires the proof of three elements: (1) extreme and

6   outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3)

7   actual result to plaintiff of severe emotional distress." *Kloepfel,* 66 P.3d at 632; *see Strong*

8   *v. Terrell,* 147 Wn. App. 376, 195 P.3d 977, 981 (2008). "The question of whether certain

9   conduct is sufficiently outrageous is ordinarily for the jury, but it is initially for the court to

10  determine if reasonable minds could differ on whether the conduct was sufficiently

11  extreme to result in liability." *Dicomes v. State,* 113 Wash.2d 612, 782 P.2d 1002, 1013

12  (1989); *see Robel v. Roundup Corp.,* 148 Wn.2d 35, 59 P.3d 611, 619 (2002). "The first

13  element requires proof that the conduct was 'so outrageous in character, and so extreme in

14  degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious,

15  and utterly intolerable in a civilized community.'" *Robel,* 59 P.3d at 619 (quoting

16  *Dicomes,* 782 P.2d at 1012).

17      Here, the plaintiff has not pleaded factual allegations sufficient to give rise to a

18  genuine issue regarding whether the defendants' conduct was so extreme as to satisfy the

19  first element of the claim, nor has he pleaded that any conduct by Saxon actually caused

20  him severe emotional distress. *Cf. Freeston,* 2010 WL 1186276, at *5; *Bell v. Fed.*

21  *Deposit Ins. Corp.,* No. C09-0150RSL, 2010 WL 113995, at *2 (W.D. Wash. Jan. 7,

22  2010).

23

24  DEFENDANT SAXON MORTGAGE          BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
    SERVICES, INC.'S MOTION TO                720 OLIVE WAY, SUITE 1301
25  DISMISS - 13                          SEATTLE, WASHINGTON 98101-1801
                                          206/622-5306  FAX:  206/622-0354
    CV 10-01045-RSL

In *Vawter v. Quality Loan Service Corp. of Washington,* Judge Robart recently considered this on similar facts and dismissed the claim:

> [Defendants'] actions in connection with the nonjudicial foreclosure process, as alleged by the plaintiff, may be problematic, troubling, or even deplorable, but these actions do not involve physical threats, emotional abuse, or other personal indignities aimed at the Vawters. Therefore, the court grants judgment on the pleadings with respect to the Vawters' intentional infliction of emotional distress claim against Chase and MERS.

*Vawter v. Quality Loan Service Corp. of Washington*, 2010 WL 1629355, 11 (W.D.Wash.,2010). Similarly here, nothing that Saxon nor any other defendant in this case is alleged to have done gives rise to such a claim and it should be dismissed as a matter of law. Additionally, for the reason argued above, this tort claim is also barred by Washington's economic loss rule.

**G.    Slander of Title**

1.    *Plaintiff fails to articulate even a prima facie case for slander of title*

The elements of such a claim are "(1) false words, (2) maliciously published, (3) with reference to some pending sale or purchase of property, (4) which go to defeat plaintiff's title, and (5) result in plaintiff's pecuniary loss." *Rorvig v. Douglas*, 123 Wn.2d 854, 860, 873 P.2d 492 (1994). "Malice is not present where the allegedly slanderous statements were made in good faith and were prompted by a reasonable belief in their veracity." *Brown v. Safeway Stores, Inc.*, 94 Wn.2d 359, 375, 617 P.2d 704 (1980).

DEFENDANT SAXON MORTGAGE
SERVICES, INC.'S MOTION TO
DISMISS - 14

CV 10-01045-RSL

Plaintiff has not specifically identified whether Saxon is involved in its slander of title claim or even bothered to allege all of the elements of such a claim, much less supported each necessary allegation with the level of factual detail required under *Twombly*.  By way of example, but without limitation, plaintiff has failed to state which of Saxon's statements were false, maliciously published, relate to a pending sale of the property, would defeat plaintiff's title, or would result in his pecuniary loss.  None of the elements of a slander of title claim have been alleged as against Saxon, nor can they.  Accordingly, plaintiff's Slander of Title cause of action should be dismissed as against Saxon without leave to amend.

> **2.** *Plaintiff Contractually Agreed to MERS as Beneficiary Under the Deed of Trust*

Plaintiff's central argument appears to be the claim that Mortgage Electronic Registration Systems, Inc. (MERS) somehow lacks authority under the subject Deed of Trust.  Under the Deed of Trust, MERS is identified as a separate corporation acting as nominee for the Lender, and Lender's successors and assigns, and MERS is the beneficiary under the Deed of Trust.  While MERS has been of recent interest in number of cases in which its role under the Deed of Trust is considered, it does not raise an issue of fact that would prevent dismissal of this action.

A recent law review article, *Gerald Korngold*, LEGAL AND POLICY CHOICES IN THE AFTERMATH OF THE SUBPRIME AND MORTGAGE FINANCING CRISIS, 60 S.C. L. Rev. 727, 741-42 (2009), provides a good summary on MERS's role under a deed of trust:

DEFENDANT SAXON MORTGAGE
SERVICES, INC.'S MOTION TO
DISMISS - 15

CV 10-01045-RSL

In 1993, the Mortgage Bankers Association, Fannie Mae, Freddie Mac, the Government National Mortgage Association (Ginnie Mae), the Federal Housing Administration, and the Department of Veterans Affairs created MERS. MERS provides 'electronic processing and tracking of [mortgage] ownership and transfers.' Mortgage lenders, banks, insurance companies, and title companies become members of MERS and pay an annual fee. They appoint MERS as their agent to act on all mortgages that they register on the system. A MERS mortgage is recorded with the particular county's office of the recorder with 'Mortgage Electronic Registration System, Inc.' named as the lender's nominee or mortgagee of record' on the mortgage. The MERS member who owns the beneficial interest may assign those beneficial ownership rights or servicing rights to another MERS member. These assignments are not part of the public record, but are tracked electronically on MERS's private records. Mortgagors are notified of transfers of servicing rights, but not of transfers of beneficial ownership.

MERS facilitates an efficient secondary market in mortgages by allowing the easy transfer of beneficial rights. After the initial recording in the local clerk's office, subsequent transactions can be done quickly at a low cost from a central location utilizing modern technology without the need for local recording of paper assignment documents. Such a process facilitates the flow of global capital, bringing investment funds into areas without local mortgage financing. Potential homeowners, as well as those seeking the most favorable rates, can benefit from MERS.

*Gerald Korngold*, LEGAL AND POLICY CHOICES IN THE AFTERMATH OF THE SUBPRIME AND MORTGAGE FINANCING CRISIS, 60 S.C. L. Rev. 727, 741-42 (2009) (citations omitted).

There have been a number of suits challenging the standing of MERS in relation to foreclosure actions brought in the name of MERS as nominee for owner of the promissory

DEFENDANT SAXON MORTGAGE SERVICES, INC.'S MOTION TO DISMISS - 16

CV 10-01045-RSL

BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
720 OLIVE WAY, SUITE 1301
SEATTLE, WASHINGTON 98101-1801
206/622-5306 FAX: 206/622-0354

note.  Typical is the *Jackson v. Mortgage Electronic Registration Systems, Inc.*, 2008 WL

413293 (D. Minn. Feb. 13, 2008) decision in which Jackson and other individuals filed a

putative class action seeking to enjoin certain foreclosure actions being conducted by

MERS.  Minnesota law requires that for a foreclosure by advertisement to be valid, all

assignments of the mortgage must have been recorded and included in the notice of sale.

The court denied the request for a temporary restraining order, finding that the plaintiff's

likelihood of success on the merits was slim.  The court noted that MERS had the right to

foreclose on the property without recording every assignment because MERS remained the

legal titleholder throughout the duration of the mortgages.  The mortgage documents

included provisions permitting MERS to exercise any and all of the lender's rights,

including foreclosure.

Other courts that have considered the issue, including other district courts from

within the Ninth Circuit, have also ruled that mortgage lenders and their assigns (via

MERS) have standing to foreclose and take various actions on behalf of its member

beneficiaries.  *See, e.g., Elias v. HomeEq Servicing*, 2009 WL 481270, *1 (D. Nev. 2009);

*Blau v. America's Servicing Co.*, 2009 WL 3174823, *7-8 (D. Ariz. 2009); *Cervantes v.

Countrywide Home Loans, Inc.*, 2009 WL 3157160, at *11 (D. Ariz. 2009); *Derakshan v.

Mortgage Electronic Registration Systems, Inc.*, 2009 U.S. Dist. LEXIS 63176, *17-*18

(C.D. Cal. 2009); *Swanson v. EMC Mortgage Corporation,* 2009 WL 3627925 (E.D. Cal.

October 29, 2009) (The mortgage lender scheduled a foreclosure sale after Swanson

defaulted on the loan. Swanson filed suit against MERS and the lender, alleging that

DEFENDANT SAXON MORTGAGE
SERVICES, INC.'S MOTION TO
DISMISS - 17

CV 10-01045-RSL

BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
720 OLIVE WAY, SUITE 1301
SEATTLE, WASHINGTON 98101-1801
206/622-5306  FAX:  206/622-0354

neither MERS nor the current lender had standing to foreclose, arguing, among other reasons, that neither was a real party in interest. MERS and the lender moved to dismiss Swanson's claims.  The court granted the motion, noting that MERS was properly listed in the deed of trust as the beneficiary giving it the right to commence a non-judicial foreclosure); see also *US Bank N.A. v. Mallory,* 2009 WL 2915680 (Pa. Super. September 14, 2009) (the Superior Court of Pennsylvania held that recording an assignment of mortgage was *not* a prerequisite to having standing to initiate a mortgage foreclosure action).

Courts around the country have considered whether MERS is a real party in interest with standing to move for relief from the automatic stay or foreclose on a property, and the majority of courts have held that MERS has standing.  *See, e.g., Mortgage Electronic Registration Sys., Inc. v. Revoredo*, 955 So.2d 33, 34 (Fl. 2007); *Mortgage Electronic Registration Sys., Inc. v. Coakley*, 41 A.D.3d 674 (NY App. 2007); *In re Huggins*, 357 B.R. 180 (Bank. D. Mass. 2006); *In re Sina*, WL 2729544 (Minn. Ct. App. Sept. 26, 2006); *Mortgage Elec. Registration Sys., Inc. v. Ventura*, No. 054003168S, 2006 WL 1230265 (Conn. Super. Ct. April 20, 2006); *Mortgage Electronic Registration Sys., Inc. v. Leslie*, No. 2005 WL 1433922 (Conn. Super. Ct. May 25, 2005).

The Federal District Court of the Western District of Washington recently addressed this issue in *Vawter v. Quality Loan Service Corp.*, ___ F. Supp. 2d ___, 2010 WL 1629355 (2010) (decided April 22, 2010, publication ordered).  In *Vawter*, Judge James L. Robart applied Washington's Deed of Trust Act and related case law to the

DEFENDANT SAXON MORTGAGE
SERVICES, INC.'S MOTION TO
DISMISS - 18

CV 10-01045-RSL

BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
720 OLIVE WAY, SUITE 1301
SEATTLE, WASHINGTON 98101-1801
206/622-5306 FAX:  206/622-0354

1   Vawters challenge of MERS's role as a nominee beneficiary under their Deed of Trust and

2   its subsequent assignment of the beneficial interest in the deed of trust.  *Id.*   In rejecting

3   these arguments, Judge Robart concluded:

> The deed of trust act allows a beneficiary, such as MERS, to appoint a successor trustee, which MERS did in this case. Plaintiff argues, however, that MERS cannot be a beneficiary and therefore MERS' appointment of a new trustee was invalid.  RCW 61.24.005(2) defines a beneficiary as "the holder of the instrument or document evidencing the obligations secured by the deed of trust, excluding persons holding the same as security for a different obligation." Plaintiff provides a printout from MERS' website stating that it is an electronic registry that tracks the ownership of loans. Debtor argues that because MERS only registers documents it does not actually hold them. Plaintiff's argument is unconvincing.  Simply because MERS registers documents in a database does not prove that MERS cannot be the legal holder of an instrument.

13  *Vawter*, at * 8-9.

14      In reaching its decision, the *Vawter* court relied the early decision of *Moon v.*

15  *GMAC Mortgage Corp.*, 2008 WL 4741492, at *5 (W.D. Wash. 2008).   In *Moon,* the

16  plaintiff challenged MERS ability to act as the beneficiary on Deeds of Trust and claimed

17  that this violated Washington State's Deeds of Trust Act.  The court noted that MERS was

18  named as the original beneficiary on the Deed of Trust and upheld MERS ability to act as

19  the beneficiary, finding that "simply because MERS registers documents in a database

20  does not prove that MERS cannot be the legal holder of an instrument."

21
22      In another recent case, *Daddabbo v. Countrywide Home Loans, Inc.*, 2010 WL

23  2102485, at *5 (W.D. Wash. May 20, 2010), Judge Richard Jones ruled that by signing a

24  DEFENDANT SAXON MORTGAGE
    SERVICES, INC.'S MOTION TO
25  DISMISS - 19

    CV 10-01045-RSL

1   deed of trust the plaintiffs properly granted MERS status of beneficiary under the deed of

2   trust:

3   > Plaintiffs' sole basis for blocking the foreclosure (other than
    > the bases rejected above) is their contention that MERS has

4   > no beneficial interest in the note that the deed of trust
    > secures, and that Recontrust therefore has no power as

5   > MERS's designee to initiate a foreclosure action.   This
    > assertion is baffling.  The deed of trust, of which the court

6   > takes judicial notice, explicitly names MERS as a
    > beneficiary.  The deed of trust grants MERS not only legal

7   > title to the interests created in the trust, but the authorization
    > of the lender and any of its successors to take any action to

8   > protect those interest, including the "right to foreclose and
    > sell the Property."

9

10      As stated in the Deed of Trust in this case, MERS is identified as a separate

11  corporation acting as nominee for the Lender, and Lender's successors and assigns, and

12  MERS is the Beneficiary under the Deed of Trust.[6]  The Deed of Trust states in pertinent

13  part:

14

15  > MERS is a separate corporation that is acting solely as a
    > nominee for Lender and Lender's successors and assigns.

16  > *MERS is the beneficiary under this Security Instrument.*
    > * * * *

17  > The beneficiary of this Security Instrument is MERS (solely
    > as nominee for Lender and Lender's successors and assigns).

18  > * * * *

19  > Borrower understands and agrees that MERS holds only
    > legal title to the interests granted by Borrower in this

20  > Security Instrument, but, if necessary to comply with law or
    > custom*, MERS (as nominee for Lender and Lender's*

21  > *successors and assigns) has the right: to exercise any or all*
    > *of those interests, including, but not limited to, the right to*

22  _____

23  6 Declaration of Mary Gutierrez, *Exhibit B*.

24  DEFENDANT SAXON MORTGAGE                    BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
    SERVICES, INC.'S MOTION TO                      720 OLIVE WAY, SUITE 1301

25  DISMISS - 20                                   SEATTLE, WASHINGTON 98101-1801
                                                   206/622-5306  FAX:  206/622-0354
    CV 10-01045-RSL

> foreclose and sell the Property; and to take any action
> required of Lender[.]

By signing the Deed of Trust, plaintiff specifically agreed to MERS's role as the nominee beneficiary for the original lender and its successors and assigns.  Consequently, not only is MERS recognized by our courts to serve as a beneficiary under a deed of trust, but plaintiff also contractually agreed for it to fulfill this role.

Plaintiff fails to state a claim for slander of title and as a matter of law the claim should be dismissed.

### H.     Saxon Committed No CPA Violation.

Plaintiff's alleges a CPA violations premised on the above claims which fail for the reasons stated above.  Furthermore, plaintiff fails to state a claim with the level of factual detail required under *Twombly*, and should be dismissed impermissibly vague and conclusory.

To prevail on a CPA claim, plaintiff must prove: (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) that impacts the public interest, (4) which causes injury to the party in his business or property, and (5) which injury is causally linked to the unfair or deceptive act.  *Industrial Indem. Co. v. Kallevig*, 114 Wn.2d 907, 920-21, 792 P.2d 520 (1990) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784-85, 719 P.2d 531 (1986)).

In this case, plaintiff contends defendants violated the CPA for essentially the same actions alleged elsewhere in his complaint, and without further explanation, declares

DEFENDANT SAXON MORTGAGE
SERVICES, INC.'S MOTION TO
DISMISS - 21

CV 10-01045-RSL

them to be a CPA violation as well.   Under *Twombly*, *supra*, we know that conclusory allegations that simply parrot the statutory requirements are legally deficient as a matter of law to support such a claim.

Furthermore, plaintiff cannot make the requisite showing of public impact nor reliance.  To prove impact on public interest in an essentially private dispute, a plaintiff must prove that, "it is likely that additional plaintiffs have been or will be injured in exactly the same fashion." *Life Insurance Co. v. Turnbull*, 51 Wn. App. 692, 702-03, 754 P.2d 1262 (1988).  The court in *Anhold v. Daniels,* 94 Wn.2d 40, 614 P.2d 184 (1980) identified the following indicia of an effect on public interest:

> We believe the presence of public interest is demonstrated when the proof establishes that (1) the defendant by unfair or deceptive acts or practices in the conduct of trade or commerce has induced the plaintiff to act or refrain from acting; (2) the plaintiff suffers damage brought about by such action or failure to act; and (3) the defendant's deceptive acts or practices have the potential for repetition.

*Id,* at 46.  Plaintiff's loan terms, such as their payment amount, and interest rate, the circumstances surrounding his failure to make his payments, and the collection efforts are unique to the plaintiff's particular situation.

Also, the Washington Supreme Court recently ruled in *Schnall v. AT & T Wireless Services, Inc.* 225 P.3d 929, 939 (2010) that for a deception-based CPA claim, the court must decide if the plaintiff was actually deceived and would have purchased the product "But For" the alleged deceptive act:

DEFENDANT SAXON MORTGAGE SERVICES, INC.'S MOTION TO DISMISS - 22

CV 10-01045-RSL

BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
720 OLIVE WAY, SUITE 1301
SEATTLE, WASHINGTON 98101-1801
206/622-5306  FAX:  206/622-0354

1

2
*Hangman Ridge,* 105 Wn.2d at 785, 719 P.2d 531, requires
CPA plaintiffs to establish a causal link "between the unfair
3
or deceptive act complained of and the injury suffered."  We
have more recently held that this causal link must establish
4
that the "injury complained of ... would not have happened"
if not for defendant's violative acts.  *Indoor Billboard,* 162
5
Wn.2d at 82, 170 P.3d 10.  The quantum of proof necessary
to establish the proximate, "but for" causation required by
6
the CPA is not fully developed in our case law.  However,
*Indoor Billboard* clearly establishes that proximate cause in
7
a class action cannot be established by "mere payment" of an
allegedly injurious charge, though that payment can be
8
"considered with all other relevant evidence on the issue of
proximate cause." *Id.* at 83.

9    *Schnall v. AT & T Wireless Services, Inc.* 225 P.3d at 939.

10       In this case, it is impossible to tell, based on the plaintiff's incorporation by

11   reference of preceding paragraphs, what facts he is relying on to support this claim.  In

12   any event, the claim fails because plaintiff has not alleged any facts showing reliance or

13   even how he was harmed by any particular conduct on the part of Saxon.

14
15       The only harm or damages plaintiff does allege are emotional distress damages.

16   But neither emotional distress damages, nor damages for pain and suffering are

17   recoverable for a violation of the CPA.  *White River Estates v. Hiltbruner*, 134 Wn.2d

18   761, 765 n. 1, 953 P.2d 796 (1998); *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons

19   Corp.*, 122 Wn.2d 299, 318, 858 P.2d 1054 (1993).

20

21

22

23

24   DEFENDANT SAXON MORTGAGE
     SERVICES, INC.'S MOTION TO
25   DISMISS - 23

     CV 10-01045-RSL

BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
720 OLIVE WAY, SUITE 1301
SEATTLE, WASHINGTON 98101-1801
206/622-5306  FAX:  206/622-0354

1

V.     CONCLUSION

2

For the foregoing reasons, defendants are entitled to dismissal of this action with

3

Dated this 26th day of October, 2010.

4

BISHOP, WHITE, MARSHALL
& WEIBEL, P.S.

5

6

/s/ David A. Weibel

7

David A. Weibel, WSBA #24031
Attorney for Defendant

8

Saxon Mortgage Services, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

DEFENDANT SAXON MORTGAGE
SERVICES, INC.'S MOTION TO
DISMISS - 24

BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
720 OLIVE WAY, SUITE 1301
SEATTLE, WASHINGTON 98101-1801
206/622-5306 FAX: 206/622-0354

25

CV 10-01045-RSL