Phimpha Thepvongsa
20044 139th Way SE
Kent, WA 98042

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| Phimpha Thepvongsa<br>Plaintiff,<br><br>vs.<br><br>**Regional Trustee Services Corp. et. al**<br><br>Defendant(s) | Case # C10 1045 RSL<br><br>RESPONSE & OBJECTION TO DEFENDANT SAXON'S RULE 12 MOTION TO DISMISS<br><br>Date: November 15th, 2010 |

(1) Plaintiff, in the Amended Complaint, plead that Defendant(s) 1.) Slandered title to Plaintiff's real property by causing to be recorded in the records of King County, Washington documents that were false 2.) By way of **_unlawful and wrongful_** foreclosure actions have intentionally and recklessly inflicted severe emotional distress upon Plaintiff, 3.) Breached Defendant(s) Fiduciary & Quasi Fiduciary duties owed to Plaintiff 4.) Violated the Washington Consumer Protection Act 5.) Violated Fair Debt Collection Practices Act 6.) Violated Fair Credit Reporting Act 7.) Violated Real Estate Settlement Procedures Act 8.) Are attempting to wrongfully deprive Plaintiff of his money and Property without standing or proof they are a real "party of interest".

(2) Defendants Motion to Dismiss for Fed. Civ. Rule 12.(b) (6) violations should be denied as Plaintiff is Pro-Se and as such is entitled to some leeway as stated in Haines v Kerner, 404 U.S. 519-421; In re Haines:

"pro se litigants are held to less stringent pleading standards than admitted or licensed bar attorneys. Regardless of the Deficiencies in the pleadings, pro se litigants are entitled to the opportunity to submit evidence in support of their claims."

(3) Granting Defendants Motion to Dismiss technicalities prior to allowing Plaintiff the opportunity to conduct Discovery, gain honest answers under oath in depositions, interrogatories would be denying the plaintiff access to the courts upon the basis that Plaintiff is not yet, educated to the level or files complaints to the standards of an admitted or licensed attorney, in Civil Procedures & Rules. Especially when it is obvious that Plaintiff is making a diligent and good faith effort to improve the standard of pleadings Plaintiff is filing as evidenced by Plaintiff's first amended complaint in which formatting and service of process was correct.

(4) Defendant Saxon claims to have had the proper rights and authority to service the loan "for a period of time" further described to be March 26th, 2007 through November 16th, 2009, and then subsequently transferred those rights to Defendant Ocwen effective November 16, 2009.

    a. The first issue that arises with the above claim is that Saxon was not the originally named Lender on the Deed of Trust. As such Saxon had no rights or authority to service Plaintiff's loan, report to Plaintiff's personal credit, or transfer any type of rights or authority to another party.

    b. Defendant Saxon must have received those rights from the original named lender Defendant New Century Mortgage Corporation. Although Mary Gutierrez claims that she "has custody of and is familiar" with the loan file and records of the Plaintiff and that Defendant Saxon "received the file" from "New Century Mortgage". Defendant Saxon has provided nothing to show what rights or

    authority Defendant Saxon ever actually received, if any, in reference to the Plaintiff's loan.

  c. Furthermore, without having the agreement between New Century Mortgage and Saxon, it is impossible to ascertain whether Defendant Saxon had the appropriate authority to assign the servicing rights to Defendant Ocwen or initiate foreclosure proceedings in December 2008.

  Even if Defendant Saxon can provide evidence that it was assigned, transferred, or appointed by the original Lender, due to the Defendant New Century's fraudulent activities during the origination of Plaintiffs loan, any rights or authority would be void due to the fraud of Defendant New Century.

(5) The 2nd issue that arises is that although Defendant Saxon has filed as its Exhibit "A" a letter of notification, which Defendant Saxon pleads it sent to plaintiff, however this is the first that Plaintiff has seen this letter. It appears that this is an attempt by Defendant to clean up its complete disregard for the duties imposed upon it by the Federal Statues of Real Estate Settlement Procedures Act & Truth in Lending Act.

Without Defendant Saxon providing the agreements between it and the other Defendants New Century and Deutsche showing Defendant Saxon was granted the appropriate authority assigned to it by the Defendant New Century all of the activities Defendant Saxon performed including, but not limited to:

  1. Collection of any payments from Plaintiff

  2. Possession of Plaintiff's personal and private financial information

  3. Reporting of inaccurate and/or erroneous information to Plaintiff's consumer credit reports.

    4. Assignment/Appointment of a Substitute Trustee, Defendant Regional Trustee Services.

    5. Assignment/Transferring of Servicing Rights to Defendant Ocwen

were in violation of various state and federal statutes.

(6) Due to the complexity and lack of responses to Plaintiff's previous requests and demands for proof of claim, and a proper chain of title from Defendant Ocwen, Defendant New Century, and Defendant MERS, Plaintiff has been forced to seek this Court's assistance by **<u>way of discovery, yet to be performed</u>** to get answers to Plaintiff's requests and upon completion of discovery and Defendant(s) production of documentation Plaintiff will finally be able to move the court to allow Plaintiff to amend the complaint with additional specific details that will show individual Defendant(s) specific violations and involvement in this illegal and fraudulent scheme designed to generate enormous profits for the Defendant(s).

(7) In Objection to Defendant Saxon motion that a Summary Judgment is appropriate. Plaintiff restates the following material facts in dispute. Defendant Saxon did not ever obtain the appropriate rights or authorities to:

    a. Collect of any payments from Plaintiff

    b. Have possession of Plaintiff's personal and private financial information

    c. Report of inaccurate and/or erroneous information to Plaintiff's consumer credit reports.

    d. Issue Assignments/Appointments of a Substitute Trustees, Defendant Regional Trustee Services.

    e. Assign/Transfer Servicing Rights to Defilant Ocwen

The facts that support the above Material Facts in Dispute as that there is NOTHING that has been provided to Plaintiff, recorded in the county records where the property is located, or that has been provided to this honorable court to dispute Plaintiffs claims above.

(8) In Objection to Defendant Saxon's claim that it had no obligation to record an instrument with the county auditor to reflect a change in servicer as there is

"no evidence Saxon was anything but a loan servicer."

There is no evidence that Defendant Saxon had any authority what-so-ever in relation to Plaintiff's loan. As there is "NO EVIDENCE" that Saxon was anything at all to in relation to Plaintiff's loan. There is no way to know what authority, if any, Defendant had. It is impossible to determine what obligations Defendant Saxon had.

Wherefore, Plaintiff moves this honorable court to issue an order that Defendant Saxon provide any and all agreements between it and any of Defendant(s) or other unnamed parties of interest that provide it any rights or authority or subsequently amend or remove such rights and authority.

(9) In Objection to Defendant(s) claim that Plaintiff(s) pleadings the Defendant(s) committed violations of the Fair Debt Collection Practices Act it appears that even Defendant Saxon is uncertain of the role it claims to have held. Defendant Saxon previously in this same motion pleads

"there is no evidence Saxon was anything but a loan servicer"

However in this section of the motion it pleads that Plaintiff's FDCPA claims should fall under scope of FCRA, in addition Defendant Saxon references specifically "the statutory exemption for creditors and servicers of creditors collecting their own debts"

Was Saxon a "Creditor" or a "Debt Collector"?

Response & Objection to rule 12 motion      5 of 15

One thing is for sure, assuming common sense is applied to the role of all Defendant(s). Each and every Defendant is attempting albeit through various unlawful, fraudulent, and deceptive practices to **"Collect"** an alleged **"Debt".** What else would they be called but debt collectors, I guess we could call them what they really are "Fraudsters". Not to mention that on most all of the Defendant(s) own documentation states the standard disclosure seen on most all correspondence consumers all get from any parties requesting our money. This is even evidence in Defendant Saxon's Exhibit "A". The letter that the Defendant claims is sent to Plaintiff. See the fine print at the bottom of the Letter.

*"Saxon Mortgage Services, Inc. **is a debt collector.** This is an attempt to collect a debt and any information obtained will be used for that purpose."*

If Saxon is in fact a creditor which as defined in USC 15 § 1692 et. seq.:

> "The term "creditor" means any person who offers or extends credit creating debt or to whom a debt is owed"

This brings up the question of:

> "What credit did Defendant Saxon offer or extend to Plaintiff?"

If Saxon was indeed the creditor in Plaintiff's loan that would verify that Defendant Saxon is indeed liable to Plaintiff for all defenses and claims including RESPA, TILA, deceptive lending, securities violations, rescission, treble damages, usury and so forth.

Wherefore Plaintiff moves the Court to issue an Order that Defendant Saxon provide strict evidence that will prove any and all roles that Defendant Saxon actually played in Plaintiffs loan.

(10)   In Objection to Defendant(s) claim that Plaintiff's pleadings of a Fiduciary duty fail due to Defendant Saxon pleadings and the complete uncertainty of what role it has

played it reference to the transaction it is impossible for Plaintiff or this Court to determine what duties did or did not apply until which time that Defendant Saxon provides strict evidence as to what role it played. One certain duty that exists is stated in RCW 19.144.080:

> "It is unlawful for any person in connection with making, brokering, obtaining, or modifying a residential mortgage loan to directly or indirectly:
>> "Knowingly make any ***misstatement, misrepresentation, or omission*** during the mortgage lending process knowing that it may be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process;"

(11)   In Objection to Defendant Saxon's claim that Plaintiffs pleadings Emotional Distress fail. Defendant Saxon has caused and continues to cause through its misrepresentations, and unfair and deceptive practice a reckless and intentional infliction of emotional distress. Defendant Saxon cites a recent *Pending* case before Judge Robart where a claim for emotional distress was dismissed against only two of the defendants. It is still pending as to whether the claim will be granted against the third. Furthermore; Judge Robart cites the following:

> "The question of whether certain conduct is sufficiently outrageous is ordinarily for the jury, but it is initially for the court to determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability." *Dicomes v. State*, 782 P.2d 1002, 1013 (Wash. 1989);

An ***unlawful and wrongful*** foreclosure which is brought about by false and fraudulent documentation causing significant hardship and damages to Plaintiff mental state, credit and financial standing, and public reputation is extreme and outrageous conduct which has caused severe emotional distress upon Plaintiff. As this case continues and especially

during discovery where Plaintiff can motion this honorable court to compel defendants to comply with admissions, and discovery Plaintiff will be able to further support these claims.

Based upon the sheer number of cases that are currently pending in Washington and through-out the country and the many instances of Homeowners pleading emotional distress it is would appear to be obvious to many reasonable minds that there is a difference of opinion as to whether the extreme and outrageous conduct of ***unlawfully and wrongfully*** attempting to foreclose on ones real property is "sufficiently extreme to result in liability.

Wherefore; Plaintiff moves this honorable court to deny Defendants motion to dismiss and allow the matter to be decided by a jury.

(12)     In Objection to Defendant Saxon's claim that Plaintiff pleadings Slandered Title fail. Plaintiff attached as Exhibit "5" to the amended complaint a copy of the recorded assignment of a substitute trustee, Defendant Regional Trustee which Defendant Saxon executed. This issue was originally plead in the amended complaint and after discovery and Defendant production of strict evidence of what roles and authority Defendant Saxon actually had Plaintiff will move the amend the complaint to further show the combined and cooperative efforts of the Defendant(s) to the variously plead issues were designed as a scheme through various unfair and deceptive practices to generate enormous profits with no risk of loss on the Defendant(s) part where the only party that has any negative outcome is Plaintiff via loss of Plaintiff's real property via an unlawful and wrongful foreclosure action brought by Defendant(s).

(13)     In Objection to Defendant(s) claim that Plaintiff(s) pleadings the Defendant(s) committed violations of the Washington Consumer Protection Act it appears that Defendant(s) are requesting a more definite statement as opposed to actually objecting to

the claim. The facts that Plaintiff Plead which most definitely constitute unfair and deceptive business practices, that occurred in trade or commerce, that are of public interest, and that caused injury to plaintiff again were clearly stated in the Plaintiffs pleadings as so much that Plaintiff can specifically plead while Defendants continue to block, mislead, omit, and deceive Plaintiff by failing to answer any of the demands, requests, or correspondence Plaintiff previously sent to Defendant(s). The fact Defendant(s) failed to properly cause to be recorded ALL of the appropriate assignments and transfers to maintain an accurate chain of title and establish a complete record of who in the true and correct party of interest is a violation of the Washington Consumer Protection Act. In Addition the fact that the Defendant(s) caused derogatory, erroneous, and inaccurate information to be reported into Plaintiffs credit file from at least April 2008 through November 2009 definitely constitutes:

   a. unfair and deceptive business practices;

   b. pertain to and occurred in trade or commerce as all of the following statues regulated in some way transactions that occurred in trade and/or commerce; the Fair Credit Reporting Act, Fair Debt Collections Practices Act, and Washington Consumer Protection Act

   c. are of public interest due to the fact the assignments that should have been recorded to notify the public of transfers and assignments in Plaintiffs Note associated with Plaintiffs real property. Thereby maintaining a complete record of transfers and ownership of title for all parties of interest associated with Plaintiffs real property incur a fee payable to the County in which the property is located and due to the scheme created by Defendant(s) in relationship to this and every other deed of trust & Promissory Note which there is a missing assignment

1                 allowed the Defendant(s) to avoid paying those proper fees to the County, thereby

2                 increasing the deficiencies in the public county and state budget.

3     In addition, anything dealing with a consumers credit file is used for many public

4     purposes including but not limited to job applications, approval of additional credit, cost

5     of insurance, etc. The derogatory, erroneous, and inaccurate information reported into

6     Plaintiffs credit file has most definitely caused Plaintiff direct damage publicly,

7     emotionally, and financially.

8   (14)     In Objection and response to Defendant Saxon's ramblings in regards to the rights a

9     Defendant MERS. Plaintiff has already included several citings of cases that defeat the

10     arguments Defendant Saxon is describing. There are several key issues that have differing

11     opinions through many courts. Most ALL of the arguments that have found in the favor of

12     MERS and various other lenders, servicers, etc. have been found due to plaintiffs, many of

13     whom are also pro-se, like in this case lack of stating the complaint to the standards of

14     admitted or licensed bar attorneys. This has caused much case law in both directions,

15     however here are a few additional points that MUST be addressed.

16     The right to enforce a note on the note holder's behalf does not convert the note holder's

17     agent into a real party in interest. *Id*. at 396 B.R. at 767, quoting 6A Wright, Miller &

18     Kane, *Federal Practice and Procedure: Civil 2d* § 1553; *In re Jacobson*, 402 B.R. 359,

19     366 (Bankr. W.D.Wash., 2009). The holder of the note, identified as a "Beneficiary" in

20     RCW 61.24 et seq. and not the servicer or the collecting agent, is the only party with the

21     proper standing to foreclosure and must be so named in the pleadings. *Id; Kang Jin*

22     *Hwang, supra; Vargas, supra*. Pursuant to FRCP 17(a) and 19(a), the real party in

23     interest is the only party that can proceed in this action on behalf of the beneficiary of the

24     note in question and their joinder is required. FED. R. CIV. P. 19 requires mandatory

25     joinder of every person with an interest in the note if not doing so could lead to

inconsistent results in different proceedings affecting the same subject matter. *Kang Jin Hwang, supra* at 7. Foreclosure agents and servicers must prove they have authority to act for a party that has standing. *In re Scott*, 376 B.R. 285 290 (Bankr. D. Idaho 2007); *Kang Jin Hwang*, 396 B.R. at 767; *Jacobson, supra* at 12. A nominee or agent must also show that has actual authority from the true party in interest to act on its behalf and it cannot be assumed that it continues to have such authority even if granted it in the original deed of trust. See *In re Mitchell*, Memorandum Opinion, p.8, BK-S-07-16226-LBR, (Bky. D.NV. 2008). *Mitchell* was designated as the lead case for Motions to Lift Stay filed by MERS in 28 cases, listed by case number therein, in which an order for joint briefing was issued because the issues were substantially the same. Prior to oral argument MERS attempted to withdraw all but 4 of the motions. The mere fact that a party, such as MERS, is named as the beneficiary in a deed of trust is insufficient to enforce the obligation. It must truly be the beneficiary or join the true beneficiary in the action. Many documents contain statements that admit that MERS or the servicer is not the true beneficiary. They also contain contradictory statements stating that they are the beneficiary in one place and that it is only the nominee in another. An entity named as the beneficiary on a deed of trust or who has been assigned the deed of trust may not enforce it if not the holder of the note. If a note has been securitized into a pooling trust, the trustee may enforce the note. "If a loan has been securitized, the real party in interest is the trustee of the securitization trust, not the servicing agent. See *LaSalle Bank N.A. v. Nomura Asset Capital Corp.*, 180 F.Supp.2d 465, 469-71(S.D.N.Y.2001) ("*LaSalle-Nomura*"); accord, *LaSalle Bank N.A. v.Lehman Bros. Holdings, Inc.*, 237 F.Supp.2d 618, 631-34 (D.Md.2002) ("*LaSalle-Lehman*"). *Kang Jin Hwang, supra* at 766. But as stated the Trustee is the real party in interest if the PSA and the Bond Indenture grant it that status and do not take away that status in another section of the document, or if they

have an authorization signed by at least the percentage of certificate holders as the PSA requires. Additionally, if a power of attorney is presented to this Court and it refers to pooling and servicing agreements, the Court needs a properly offered copy of the pooling and servicing agreements, to determine if the servicing agent may proceed on behalf of plaintiff. (*EMC Mortg. Corp. v. Batista*, 15 Misc.3d 1143(A) [Sup Ct, Kings County 2007]; *Deutsche Bank Nat. Trust Co. v. Lewis*, 14 Misc.3d 1201(A) [Sup Ct, Suffolk County 2006]). *HSBC Bank USA, N.A. v Valentin*, 1/30/2008, 18 Misc 3d 1123(A), 2008 NYSlipOp 50164(U), ¶ 3. Again, as the facts regarding these transactions are coming to light, a copy of the pooling and servicing agreements, is necessary, as is the document, if separate, that sets forth the terms of the powers of the Trustee to the pool, because even the Trustee may not have the powers to act on behalf of the Trust, let alone the servicing agent for the Trustee of the pool. And again the Bond Indenture must also be produced to prove actual authority to act on behalf the Trust and the Certificate (Bond) Holders. This is because the PSA is contract between the "Lender" as stated in the Deed of Trust, which wasn't really the lender but played the role of the lender in the transaction, the "Master Servicer" and the "Trust." But this contract does not include the investor (certificate holder), who is the real party in interest and the only party entitled to enforce the note, and accordingly the only party with the power to grant authority to act on its behalf. It has unfortunately customarily been the practice in many Courts to not insist on strict application of the Rules of Evidence, in the interest of the efficient and inexpensive administration of justice. But the MBS system has been one big giant fraud and there have been many reported instances that have brought the veracity and authenticity of documents in mortgage foreclosure cases into doubt. And there are generally gaping holes in proof of the history of ownership and assignments of the notes and in the proof of their chain of custody, that would be necessary to fairly prove the identity of the real

party in interest and its connection to the party seeking to act on its behalf are so glaring, there must be compliance with the Rules of Evidence, such as those for competency of witness, personal knowledge, hearsay and authenticity, not to mention matters such as relevance of factual assertions contained in documents, and sufficiency of proof. Many of the cases cited herein strictly enforced the evidentiary rules in these cases, because various facts in the cases placed the veracity of the documentary evidence in doubt. For example, *In re Mitchell*, supra at 13-14; *In re Vargas*, 396 B.R. 511, 517 (Bankr. C.D. Cal. 2008).

At a minimum, there must be an unambiguous representation or declaration setting forth the servicer's authority from the present holder of the note to collect on of the note and enforcement of the deed of trust. If questioned, the servicer must be able to produce and authenticate that authority Jacobson at 18. In this instant case upon demand by the Plaintiff the servicer refused to authenticate that authority.

    A further development has come to light that makes even these requirements insufficient. It is necessary to obtain proof that the original funding came from the MBS Pool Trust that is seeking to enforce the note, as well proof of the identity of the specific persons or entities that invested the funds that were loaned to Plaintiff, and a copy of the bond indenture specific to the loan being sought to be enforced.

    *Nosek v Ameriquest* et al (Fed D Mass 2009) (Case 4:08-cv-40095-WGY), supra, is a District Court decision in its second trip up the appellate ladder from a Bankruptcy Court adversary proceeding. This questions extremely serious matters to which every mortgage company, servicer, Trustee to a pool, and all attorneys involved ought to pay real attention. Up to the present time, mortgage companies and servicers have bluffed their way through proofs of claim, motions for relief

from stay and on to foreclosure, misleading the Court as to their real role in the matter and without identifying for the Court, borrower, trustee, or anyone who requests the information, the real party in interest. The mortgage entities seeking to enforce a note and deed of trust, and their attorneys were sanctioned severely in *Nosek* for not investigating and revealing to the Court the real nature of the mortgage company's interest in the note, nor of their real authority to enforce them. It is not doubtful that Attorneys involved in enforcing mortgages in the past have not been aware of the true nature of the facts pertaining to the securitized loans they have enforced. If the nature of the transactions were apparent by mere review of the notes, deeds of trust and payment accountings, the economy would not have been nearly destroyed by the loss of trust in the system that arose when facts pertaining to MBS began to come to the awareness of the investing persons and entities, particularly when the pool contains tranches that include subprime loans, as is true in most or all cases. But *Nosek v Ameriquest* et al, Id, provides guidance that a greater standard of investigation and disclosure to the Court is required, due to the prevailing state of affairs, and of the fact that the nature of these transactions is no longer a mystery, and is becoming increasingly known to all.

**MORE DEFINITE STATEMENT**

Plaintiff is willing to prepare a more definite statement for the court. Subsequent to the filing of the amended complaint, Plaintiff has made additional inquiry and found evidence of knowingly and deliberate criminal acts by lenders intended to defraud Plaintiff of Plaintiff's property. Plaintiff is prepared to file a more definite statement with the court.

**Conclusion**

Wherefore Plaintiff moves this honorable court to

1. Deny Defendant Saxon's Motion to Dismiss;

2. Issue an Order to require the real party in interest to appear as a party to this proceeding, and to present strict proof that it is the real party in interest, or has full and sufficient authority to act on behalf of the real party in interest, as well as proof of all required elements as set forth above, with strict application of the Rules of Evidence, including proof of the amount, if any, of Plaintiff's obligation that remains undischarged, not deregonized under GAAP

3. Stay further action pending responses to discovery requests granting Plaintiff an opportunity to file an amended complaint when the information is obtained by Plaintiff,

4. Any such other and further relief that the Court deems just and necessary.

Plaintiff reserves the right to assert additional defenses and rights as they arise. RCW 62A.1-207.

Respectfully Submitted,

 /s/ Phimpha Thepvongsa

Phimpha Thepvongsa
206-708-5014
thph60@gmail.com
