1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

PHIMPHA THEPVONGSA,

Plaintiff,

v.

REGIONAL TRUSTEE SERVICES
CORPORATION, et al.,

Defendants.

No. C10-1045 RSL

ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION TO DISMISS

15

16

## I.   INTRODUCTION

17

18

19

20

21

22

23

24

25

This matter comes before the Court on Motions to Dismiss filed jointly by defendants Ocwen Loan Servicing, LLC ("Ocwen"), Deutsche Bank National Trust Company, as trustee, ("Deutsche") and Mortgage Electronic Registration Systems, Inc. ("MERS") (dkt. # 15), which was joined by defendant Regional Trustee Services Corporation ("RTS") (dkt. #16), and by defendant Saxon Mortgage Services, Inc. ("Saxon") (dkt.#24).  In his amended complaint, pro se plaintiff alleges claims of intentional infliction of emotional distress, slander of title, breach of fiduciary or quasi-fiduciary duty, violation of the Consumer Protection Act ("CPA"), violation of the Fair Debt Collection Practices Act ("FDCP"), violation of the Fair Credit Reporting Act ("FCRA"), and violations of the Real Estate Settlement Procedures Act ("RESPA").  Dkt. #7.  Plaintiff has raised several claims for the first time in his oppositions for violation of the Deed of Trust Act ("DTA"), violation of the Truth in Lending Act ("TILA"),

26

ORDER GRANTING IN PART AND DENYING
IN PART MOTION TO DISMISS - 1

fraud and conspiracy that the Court will address as if plead in his amended complaint.  Having reviewed the memoranda, exhibits, and the record herein, the Court GRANTS in part and DENIES in part defendants' motion to dismiss for the reasons set forth below.

## II.   BACKGROUND

On January 19, 2007, plaintiff applied for and obtained a home loan from defendant New Century Mortgage Corporation ("New Century").[1]  Dkt. #7, Am. Compl. at 4 ¶2.  In connection with the loan, plaintiff executed a deed of trust for defendant New Century, which was recorded on January 24, 2007.  Id.  A deed of trust is, in essence, a three-party mortgage through which the borrower gives a third party a lien on the real property to hold in trust as security until the obligation to the lender is discharged.  Wn. House of Rep. Bill Report, 2008 Reg. Sess. S.B. 5378 (March 6, 2008).  The third party is called the trustee, and the lender is generally identified as the beneficiary of the trust.  Through this arrangement, title to the real property passes to the borrower, but the lender is protected under the trust agreement.  If the borrower defaults on his loan, the beneficiary need not file a civil suit to foreclose on the mortgage.  Pursuant to the DTA, the beneficiary may direct the trustee to initiate non-judicial foreclosure proceedings.   The beneficiary may also replace the trustee with a successor trustee to handle the foreclosure.  RCW 61.24.010(2).  As long as the trustee complies with the DTA's requirements, the lender can foreclose on the property inexpensively and efficiently.  If the borrower objects, the burden is on him to seek judicial protection from wrongful foreclosure.

Plaintiff attached a copy of the deed of trust to his original complaint.  Dkt. # 3, Ex. 1.  However, the deed of trust attached to plaintiff's complaint purports to be the second mortgage and secures plaintiff's loan in the amount of $65,000.00 ("Deed 2").  Id.  Defendant Saxon attached a copy of a deed of trust securing $260,000.00 ("Deed 1") to the declaration of Mary Gutierrez, an employee of Saxon.  Dkt. #25-2, Ex. B.  Both Deed 1 and Deed 2 identify four parties: the borrower (plaintiff), the lender (New Century), the trustee (Old Republic Title), and the lender's nominee to act as the beneficiary (MERS).  The Court has not been provided with a copy of any promissory notes, or any purported transfers of the notes.

---

[1]Defendants New Century, Old Republic Title LTD, and Morgan Stanley ABS Capital Inc. have not appeared in this action.

ORDER GRANTING IN PART AND DENYING
IN PART MOTION TO DISMISS - 2

After obtaining the loan in 2007, plaintiff made monthly payments toward the loan to defendant New Century. Dkt. # 7, Am. Compl. at 4 ¶3.  Plaintiff alleges that at some point, "the mortgage had been apparently sold to Saxon Mortgage Services which also held itself out as the owner and/or servicer."  Id.  Plaintiff claims that he did not receive notice of any "sale/transfer of any kind in regards to the purported change in Ownership and/or servicing of the mortgage loan including the alleged transfer to Ocwen."  Id.

On or about June 2008, plaintiff stopped receiving monthly statements from defendant New Century.  Id. at 5 ¶4.  Around November 4, 2008, MERS purported to transfer its beneficial interest in the deed of trust to defendant Deutsche, and Deutsche, as the purported beneficiary, appointed RTS as the successor trustee.  Id. ¶5.  Plaintiff attached the Assignment of the Deed of Trust ("Assignment")[2] and Appointment of Successor Trustee ("Appointment")[3] to his original complaint. Dkt. #3, Exs. 4 & 5.  It is unclear to the Court whether the Assignment and Appointment applies to Deed 1, Deed 2, or both.  Although plaintiff alleges that no assignment of the deed of trust was filed in King County records (dkt. #7, Am. Compl. at 4 ¶3), the Assignment and Appointment show a recording date of November 7, 2008 in King County (dkt. #3, Exs. 4 & 5).[4]

RTS filed a Notice of Trustee Sale on December 5, 2008, which "stated several charges including 'Beneficial Advances' in the amount of $346.17."  Dkt. #7, Am. Compl. at 5 ¶6. Plaintiff alleges that he was not advised how the term Beneficial Advances was defined.  The sale was discontinued without explanation or notice to plaintiff.  Id.  On December 31, 2009, RTS filed another Notice of Trustee Sale, and stated several charges, including "'Beneficial Advances' in the amount of $4,749.77."  Id. ¶7.  Plaintiff was not advised how the term was defined, and the sale was discontinued without explanation or notice to plaintiff.  Id.

_____

[2]The Assignment identifies defendant Deutsche as Trustee for Morgan Stanley ABS, and purports to transfer MERS's beneficial interest to Deutsche.

[3]The Appointment identifies defendant Deutsche as Trustee for Morgan Stanley and as the present beneficiary, and appoints RTS as successor trustee to have all the powers of the original trustee.

[4]For purposes of this Order, the Court will assume that any reference by plaintiff to the deed of trust means Deed 2, which was attached to plaintiff's original complaint.

ORDER GRANTING IN PART AND DENYING
IN PART MOTION TO DISMISS - 3

On March 23, 2010, plaintiff served on defendants Ocwen, RTS, New Century, Old Republic, and MERS "a Dispute of Debt as defined in Fair Credit Reporting Act 15 USC § 1681 et seq., a Demand of Validation under Fair Debt Collection Practices Act 15 USC §1601, and a Qualified Written Request - Real Estate Settlement Procedures Act (RESPA) 12 U.S.C. § 2605(e) . . . to determine what, if any, interest Defendant Ocwen claimed in plaintiff's home loan." Id. ¶8.   Plaintiff alleges that there is "no documentation of record" that defendant Saxon acquired any beneficial interest in plaintiff's home loan filed with the King County Auditor's office, or of the transfer from Saxon to Ocwen. Id. ¶9.   Plaintiff alleges that he did not receive notice of these transfers either. Id. Plaintiff alleges that Ocwen sent plaintiff a response stating that it acquired his home loan from Saxon on November 19, 2009, and included documentation that he claims he did not initial, "leading to further suspicion that these documents may have been altered without Plaintiff's knowledge after his submission to Defendant New Century." Id. Plaintiff further alleges that defendant Ocwen refused to answer specific questions relating to the accounting and servicing of his loan, and failed to provide any documentation relating to how Ocwen obtained plaintiff's loan documents. Id. Plaintiff also alleges that he "did not receive formal written notice of the purported change in ownership and/or servicing of the mortgage loan from any of the defendants" and, instead, RTS began foreclosure proceedings "without properly verifying that it was being instructed to do so by a party with the appropriate authority to do so." Id. at 7 ¶12.

Plaintiff filed his complaint on June 24, 2010, and RTS continued the pending trustee sale to June 25, 2010. Id. ¶10; dkt. #3.  The sale was again continued to July 23, 2010, and plaintiff moved for a temporary restraining order and preliminary injunction to stop the sale. The Court denied plaintiff's motion because he filed it the same day as the scheduled sale, and it was logistically impossible to restrain the sale. See dkt. #10.[5]

---

[5]It is unclear to the Court whether the sale has been continued again, or whether the trustee sale occurred on July 23, 2010 as scheduled.  Accordingly, the Court will not grant defendants' request to dismiss plaintiff's request for injunctive relief at this time.

ORDER GRANTING IN PART AND DENYING
IN PART MOTION TO DISMISS - 4

1    III.    **ANALYSIS**

2        **A.    Legal Standard**

3        Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint

4    in the light most favorable to the non-moving party.  Livid Holdings Ltd. v. Salomon Smith

     Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).  The Court must accept all well-pleaded

5    allegations of material fact as true and draw all reasonable inferences in favor of the plaintiff.

6    Wyler Summit P'ship v. Turner Broad. Sys., 135 F.3d 658, 661 (9th Cir. 1998).  "To survive a

7    motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state

8    a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937,

9    1949 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that

10   allows the court to draw the reasonable inference that the defendant is liable for the misconduct

11   alleged."  Id.  Dismissal can be based on the lack of a cognizable legal theory or the absence of

12   sufficient facts alleged under a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901

13   F.2d 696, 699 (9th Cir. 1990).  Dismissal is inappropriate unless it appears beyond a doubt that

     plaintiff can prove no set of facts in support of the claim entitling him to relief.  Livid

14   Holdings, 416 F.3d at 946.  This Court holds the pleadings of pro se complainants to less

15   stringent standards than those of licensed attorneys.  Haines v. Kerner, 404 U.S. 519, 520

16   (1972).  Nevertheless, every complainant must demonstrate some claim upon which relief can

     be granted.  Fed. R. Civ. P. 12(b)(6).

17       The Court generally may not consider material beyond the pleadings in ruling on a

18   motion to dismiss.  Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).  However,

19   the Court may consider material properly submitted as part of the complaint, may consider

20   documents whose contents are alleged in the complaint and whose authenticity is not

21   questioned, and may take judicial notice of matters of public record without converting the

22   motion to dismiss to a motion for summary judgment.  Id.  In deciding this 12(b)(6) motion, the

     Court has considered Deed 1, Deed 2, the Assignment, and the Appointment.

23       **B.    Intentional Infliction of Emotional Distress**

24       Defendants move to dismiss plaintiff's claim for intentional infliction of emotional

25   distress because plaintiff failed to plead the elements of the claim.

26
     ORDER GRANTING IN PART AND DENYING
     IN PART MOTION TO DISMISS - 5

The tort of intentional infliction of emotional distress, also called outrage, requires proof of (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress.  Kloepfel v. Bokor, 149 Wn. 2d 192, 195 (2003).  The first element requires proof that the conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Robel v. Roundup Corp., 148 Wn. 2d 35, 51 (2002).  The Court makes the initial determination of whether "reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability."  Dombrosky v. Farmers Ins. Co. of Wn., 84 Wn. App. 245, 261 (1996).

The conduct plaintiff complains of predominately relates to the foreclosure process. Plaintiff argues in his opposition to defendant Saxon's motion to dismiss that an "***unlawful and wrongful*** foreclosure which is brought about by false and fraudulent documentation causing significant hardship and damages to Plaintiff mental state [sic], credit and financial standing, and public reputation is extreme and outrageous conduct which has caused severe emotional distress upon Plaintiff."  Dkt. #29 [Opp'n to Saxon] at 7-8 (emphasis in original).  However, plaintiff has not plead any facts from which the Court could reasonably infer that any of the defendants committed any "extreme and outrageous" conduct in their dealings with plaintiff, or that the emotional distress complained of was inflicted intentionally or recklessly.  See e.g., Bain v. Metro. Mortgage Group Inc., 2010 U.S. Dist. LEXIS 22690, *11 (W.D. Wn. 2010) (no outrageous conduct in foreclosure process).

Accordingly, the Court dismisses plaintiff's claim for intentional infliction of emotional distress with prejudice.

## C.    Slander of Title

In plaintiff's slander of title claim, he alleges that defendants recorded false documents, including Deed 2 which contained "false statements with regards to MERS'[s] beneficial interest," and other "false assignments" of the Note and substitute trustee.  Dkt. #7, Am. Compl. at 8-9; dkt. #17 [Opp'n] at 11; dkt. #29 [Opp'n to Saxon] at 8.

Here, both Deed 1 and Deed 2 identify the beneficiary as MERS "solely as nominee for Lender." Dkt. #3, Ex. 1, Dkt. #25-2, Ex. B at 2.  Deed 1 provides: "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument."  Dkt. #25-2, Ex. B at 2.  Deed 1 and Deed 2 also provide:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed of Trust, but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Deed of Trust.

Dkt. #3, Ex. 1; Dkt. #25-2, Ex. B at 3 (using "Security Instrument" instead of "Deed of Trust").

To establish slander of title, plaintiff must allege (1) false words, (2) that were maliciously published, (3) with reference to some pending sale or purchase of property, (4) which defeat's plaintiff's title, and (5) result in plaintiff's pecuniary loss.  Brown v. Safeway Stores, Inc., 94 Wn. 2d 359, 375 (1980).  Malice is not present when the allegedly slanderous statements were made in good faith and were prompted by a reasonable belief in their veracity. Id.

The Court finds that plaintiff has not plead sufficient facts to survive dismissal.  With respect to false statements, the only allegedly false statement identified by plaintiff is MERS's role as beneficiary in Deed 2.  Plaintiff's allegations that MERS, acting as nominee for the lender, is not the beneficiary is a conclusion, not a factual allegation.  Dkt. #7, Am. Compl. at 4; Bell v. Twombly, 550 U.S. 544, 555 (2007) (labels, conclusions and formal recitation of causes of action insufficient).  Plaintiff also fails to allege any facts supporting the purported malicious conduct.  See Krienke v. Chase Home Fin., LLC, 2007 Wn. App. LEXIS 2668, *13 (2007) ("the initiation of foreclosure proceedings cannot be deemed malicious in the context of a bona fide dispute over mortgage payments.").

Accordingly, the Court dismisses plaintiff's claim for slander of title with prejudice.

ORDER GRANTING IN PART AND DENYING
IN PART MOTION TO DISMISS - 7

1

## D.      Breach of Fiduciary or Quasi-Fiduciary Duty

2
3
4
5
6

In order to prevail on his breach of fiduciary duty claim, plaintiff must establish (1) the existence of a duty owed, (2) a breach of that duty, (3) a resulting injury, and (4) that the claimed breach was the proximate cause of the injury.    Miller v. U.S. Bank, 72 Wn. App. 416, 426 (1994).  Whether a legal duty exists is a question of law.  Hansen v. Friend, 118 Wn. 2d 476, 479 (1992).  In Washington, a lender is not a fiduciary of its borrower unless a special relationship exists to impose a fiduciary duty.  Miller, 72 Wn. App. at 426-27.

7
8
9
10
11
12
13

Plaintiff argues that defendants owed him a fiduciary or quasi-fiduciary duty based on Cox v. Helenius, 103 Wn. 2d 383 (1985), the Mortgage Broker Practices Act (RCW 19.146), and RCW 19.144.080, which prohibits any person in connection with making, brokering, obtaining, or modifying a residential mortgage loan to knowingly make misstatements, misrepresentations, or omissions during the mortgage lending process knowing that it may be relied on by a mortgage lender, borrower, or other party to the process.  Dkt. #17 [Opp'n] at 4-5; Dkt. #29 [Opp'n to Saxon] at 7.  The Court disagrees.

14
15
16
17
18
19
20
21
22

Pursuant to the DTA, the "trustee or successor trustee shall have no fiduciary duty or fiduciary obligation to the grantor or other persons having an interest in the property subject to the deed of trust."  RCW 61.24.010(3).  This subsection became effective on June 12, 2008, and was intended to address ambiguities regarding the duties of trustee after the Washington Supreme Court imposed dual (and in many ways competing) obligations in Cox.  See Wn. Senate Bill Report, 2008 Reg. Sess. S.B. 5378 (Feb. 9, 2008); Wn. House Rep. Bill Report, 2008 Reg. Sess. S.B. 5378 (March 6, 2008).  Accordingly, when defendant MERS executed an assignment of plaintiff's deed of trust to defendant Deutsche as trustee on November 5, 2008, Deutsche owed no fiduciary duty to plaintiff.  Likewise, RTS, who was later appointed as successor trustee, owed no fiduciary duty to plaintiff.

23
24

The Court also finds that plaintiff has not plead sufficient facts to demonstrate the existence of a fiduciary or quasi-fiduciary duty pursuant to RCW 19.146.010(14) or RCW

25
26

ORDER GRANTING IN PART AND DENYING
IN PART MOTION TO DISMISS - 8

19.144.080.[6]  Plaintiff has not alleged any facts demonstrating that any of the moving parties fall within the meaning of "mortgage brokers" by alleging that they assisted him in obtaining or applying to obtain a residential mortgage loan or held themselves out as being able to assist him in obtaining or applying for a residential mortgage loan.  RCW 19.146.010(14).  Plaintiff alleges that he applied for and obtained a home loan from defendant New Century.  Am. Compl. at 4 ¶2.  According to plaintiff's amended complaint, the only possible entity who could qualify as a "mortgage broker" is New Century, who has not yet appeared in this action.

Accordingly, the Court dismisses plaintiff's breach of fiduciary duty claim with prejudice as to all defendants.

### E.        Violation of the DTA

The DTA required the trustee and successor trustee to "act impartially between the borrower, grantor, and beneficiary."  RCW 61.24.010(4) (effective June 12, 2008, amended July 26, 2009 to provide that the trustee "has a duty of good faith to the borrower, beneficiary, and grantor").  Pursuant to the DTA, the trustee must have proof that the beneficiary is the owner of the note or obligation secured by the deed of trust prior to the trustee sale.  RCW 61.24.030(7)(a).  Plaintiff has alleged that RTS "began foreclosure proceeding without properly verifying that it was being instructed to do so by a party with the appropriate authority to do so."  Am. Compl. at 7 ¶12.  Defendants fail to address this allegation.  In the absence of a complete record of all relevant documents, including the promissory notes, and all purported transfers of the notes, Deed 1 and Deed 2, the Court cannot determine who held the promissory note and under what authority the default and sale was to occur.  Additionally, pursuant to the DTA, the beneficiary or trustee was required to provide plaintiff written notice of default thirty days prior to the recording of the notice of sale, including the name and address of the owner of any promissory notes or other obligations secured by the deed of trust and the contact information of any entity acting as servicer of the obligations secured by the deed of trust.

---

[6]There is no private right of action under RCW 19.144.080.  RCW 19.144.120 (only director may "enforce, investigate, or examine persons covered by this chapter."

ORDER GRANTING IN PART AND DENYING
IN PART MOTION TO DISMISS - 9

RCW 61.24.030(8)(l).  Plaintiff has not alleged any facts regarding the written notice of default, however, he has made general allegations that defendants, other than Ocwen, have not responded to his requests to determine what interests each defendant has in his loan and deed of trust, and that the present holder of the note is "unknown," which suggests that MERS, Deutche or RTS did not provide the required notice.

Accordingly, the Court finds that plaintiff has stated sufficient facts to state a claim against MERS, Deutsche, and RTS for violation of the DTA.

> **F.     Violation of the FCRA**

The FCRA prohibits a person from furnishing information relating to a consumer to a credit reporting agency that the person knows is inaccurate, and it requires a furnisher to provide written notice to a customer whenever it first reports negative information to a credit reporting agency.  15 U.S.C. §1681s-2(a)(1)(A) & (a)(7)(A)(i).  However, the statute explicitly prohibits private suits for violations of section (a), and provides that the exclusive enforcement mechanism is by federal or state agencies.  Id. 1681s-2(c)(1) & (d); Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057, 1059 (9th Cir. 2002).   The FCRA does create a private right of action for willful noncompliance with its requirements under subsection (b), but only after a consumer reporting agency is notified and offers the furnisher the opportunity to save itself from liability by taking certain steps.[7]  15 U.S.C. §1681s-2(b), §1681n; Nelson, 282 F.3d at 1060; see Tuazon v. HSBC Mortgage Servs., Inc., 2007 U.S. Dist. LEXIS 47703, *4 (W.D. Wn. 2007) ("a consumer who disputes furnished credit information is required to follow a procedure set out in the FCRA which begins with notifying the credit reporting agency directly of the dispute.").

Here, plaintiff alleges that defendants violated the FCRA by reporting his accounts to credit reporting agencies with "erroneous and inaccurate information." Am. Compl. at 14; dkt. #17 [Opp'n] at 5.  Plaintiff also alleges that defendants Saxon and Ocwen had "entered

---

[7]Plaintiff does not claim that he provided a consumer reporting agency with the requisite notice.

ORDER GRANTING IN PART AND DENYING
IN PART MOTION TO DISMISS - 10

derogatory information" to credit reporting agencies that they "were attempting to collecting [sic] on the alleged account simultaneously and each were also reporting derogatory information that the alleged account was past due and foreclosure has been initiated." Am. Compl. at 12 ¶9. These allegations, if true, would fall within Section 1681s-2(a), which prohibits a private right of action.

Accordingly, plaintiff's claim for violation of the FCRA fails and is dismissed with prejudice.

### G.   Violation of the FDCPA

Plaintiff alleges that defendants RTS, Ocwen, MERS, and Deutsche are debt collectors under the FDCPA. Defendants argue that plaintiff has failed to state a claim because the enforcement of a security interest through a nonjudicial foreclosure does not constitute the collection of a debt for purposes of the FDCPA, and because plaintiff fails to plead facts that bring defendants within the meaning of "debt collectors" as defined in the FDCPA.

Under the FDCPA, a "debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. §1692a(5). The term "debt collector" means

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . For the purpose of section 808(6) [15 USCS § 1692f(6)], such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

Id. at §1692a(6). Section 1692f(6), referenced in this definition, prohibits a debt collector from taking or threatening to take "non-judicial action to effect dispossession or disablement of property if -- (A) there is no present right to possession of the property claimed as collateral

ORDER GRANTING IN PART AND DENYING
IN PART MOTION TO DISMISS - 11

through an <u>enforceable security interest</u>; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement." <u>Id.</u> §1692f(6) (emphasis added).

The FDCPA exempts from the term "debt collector" "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person."  <u>Id.</u> §1692(a)(6)(F)(iii).[8]

The trend among Ninth Circuit District Courts has been to hold that enforcement of a security interest through a nonjudicial foreclosure proceeding does not constitute the collection of a debt.  <u>See e.g.</u>, <u>Roman v. N.W. Trustee Servs., Inc.</u>, 2010 U.S. Dist. LEXIS 131359, *8-9 (W.D. Wn. 2010); <u>Barbanti v. Quality Loan Serv. Corp.</u>, 2007 U.S. Dist. LEXIS 676, *8 (E.D. Wn. 2007); <u>Fong v. Prof'l Foreclosure Corp.</u>, 2005 U.S. Dist. LEXIS 31643, *7 (W.D. Wn. 2005) ("Notably, Washington's Deed of Trust Act provides that a foreclosure action constitutes enforcement of an interest in property via a trustee's sale.  RCW § 61.24.100 et seq; id. § 61.24.020.").  The most commonly cited case is <u>Hulse v. Ocwen Fed. Bank, FSB</u>, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002), which held that "[f]oreclosing on a trust deed is distinct from the collection of the obligation to pay money. . . . Payment of funds is not the object of the foreclosure action.  Rather, the lender is foreclosing its interest in the property."

However, the Fourth and Fifth Circuits have rejected the reasoning in <u>Hulse</u>.  The Fourth Circuit has concluded that a "'debt' remain[s] a 'debt' even after foreclosure proceedings commenced" and that actions "surrounding foreclosure proceeding were attempts to collect that debt."  <u>Wilson v. Draper & Goldberg, P.L.L.C.</u>, 443 F.3d 373, 376 (4th Cir. 2006) (citing <u>Romea v. Heiberger & Assocs.</u>, 163 F.3d 111, 116 (2d Cir. 1998) (concluding that an eviction notice required by statute could also be an attempt to collect a debt)).  The Fourth Circuit reasoned that to conclude otherwise "would create an enormous loophole in the Act

---

[8]It is unclear from plaintiff's allegations whether the debt was in default prior to Saxon's transfer to Ocwen as servicer, prior to the Assignment to Deutsche of the beneficial interest in the deed of trust, or prior to Appointment of RTS as successor trustee.

ORDER GRANTING IN PART AND DENYING
IN PART MOTION TO DISMISS - 12

immunizing any debt from coverage if that debt happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt." Id.

Similarly, the Fifth Circuit has concluded that "a party who satisfies § 1692a(6)'s general definition of a 'debt collector' is a debt collector for the purposes of the entire the FDCPA even when enforcing security interests." Kaltenbach v. Richards, 464 F.3d 524, 529 (5th Cir. 2006). The court reasoned that courts like Hulse simply posit that a party is a debt collector outside of section 1692f only if they were collecting a debt in the particular instance that gave rise to the dispute, which misconstrues section 1692a(6)'s method of defining the term. Id. "Under that subsection, a party's general, not specific, debt collection activities are determinative of whether they meet the statutory definition of a debt collector." Id. The court further reasoned that whether "a debt collector's specific action qualifies as the collection of a debt may or may not be relevant when determining whether the party must comply with other, specific substantive requirements of the FDCPA, but that is a separate inquiry from whether the party meets the general statutory definition of a debt collector." Id.

Defendants have not addressed this countervailing authority that has been cited with approval among some recent district courts in the Ninth Circuit. See e.g., Albers v. Nationstar Mortgage LLC, 2011 U.S. Dist. LEXIS 182, *5-6 (E.D. Wn. 2011); Allen v. United Fin. Mortgage Corp., 2010 U.S. Dist. LEXIS 26503, *18-20 (N.D. Cal. 2010). Nevertheless, the Court finds that plaintiff has not alleged sufficient facts. For instance, plaintiff has not stated any facts that would demonstrate when he defaulted, whether he tendered loan payments after his default, whether defendant Ocwen began servicing his loan before or after his default, whether defendants Deutsche and RTS's alleged acquisition of their interest in plaintiff's deed of trust occurred before or after he was in default, or whether any of the defendants repeatedly threatened foreclosure absent payment of the obligation.

Accordingly, the Court dismisses plaintiff's FDCPA claim without prejudice.

### H.      Violation of the RESPA

The RESPA provides a private right of action where there are charges for unearned fees. 12 U.S.C. §2607. Section 2607(b) prohibits the practice of giving or accepting money where

ORDER GRANTING IN PART AND DENYING
IN PART MOTION TO DISMISS - 13

no service was performed in exchange for money.  <u>Martinez v. Wells Fargo Home Mortgage,</u>
<u>Inc.</u>, 598 F.3d 549, 553 (9th Cir. 2010).  This section "cannot be read to prohibit charging fees,
excessive or otherwise, when those fees are for services that were actually performed."  <u>Id.</u> at
553-54.

Here, plaintiff alleges that defendants violated the RESPA by charging improper
"Beneficiary Advances" in the Notices of Trustee Sale.  Dkt. #7, Am. Compl. at 5-6 ¶¶6-7.
Although not pled in his complaint, plaintiff also claims that defendants violated the RESPA by
over-charging him with fees that "were simply contrived and not paid to a third party vendor"
and that "were a normal part of doing business and should have been included in the finance
charge."  Dkt. #17 [Opp'n] at 3.  He also claims that the lender charged him a number of false
fees (<u>id.</u> at 12-13), and other allegations related to closing[9] (<u>id.</u> at 13-14).  The Court finds that
plaintiff has not stated a claim for violation of section 2607(b) because he has not alleged
whether the services were actually performed for the fees charged, or which defendants gave or
accepted money for the services charged.

The RESPA also provides a private cause of action where a loan servicer fails to give
proper notice of transfer.  12 U.S.C. §2605.  Under the RESPA, if servicing of a mortgage is
transferred after the mortgage loan is made, the former servicer must notify the consumer in
writing fifteen days before the effective date of the transfer.  12 U.S.C. §2605(b)(2)(A).
Additionally, a servicer must provide certain information upon a qualified written request "for
information relating to the servicing of such a loan."  <u>Id.</u> §2605(e)(1)(A).  "Servicing" is
defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms
of any loan . . . and making the payments of principal and interest and such other payments
with respect to the amounts received from the borrower as may be required pursuant to the
terms of the loan.  <u>Id.</u> §2605(i)(3).  "Qualified written request" is defined as written

_____

[9]Plaintiff claims as RESPA violations: "Good Faith Estimate not within limits, No HUD-1
Booklet, Truth In Lending Statement not within limits compared to Note, Truth in Lending Statement
not timely presented, HUD-1 not presented at least one day before closing, No Holder Rule notice in
Note, No 1st Payment Letter."  <u>Id.</u> at 13-14.  The Court finds that plaintiff has not provided the factual
predicate for these purported violations.

ORDER GRANTING IN PART AND DENYING
IN PART MOTION TO DISMISS - 14

correspondence that include, or otherwise enable the servicer to identify, the name and account of the borrower, and include a statement of the reasons that the borrower believes the account is in error, or that provide sufficient detail to the servicer regarding information relating tot he servicing of the loan sought by the borrower.  12 U.S.C. §2605(e)(1)(B); 24 C.F.R. 3500.21(e)(2).

Plaintiff alleges that defendants violated the RESPA by failing to notify him of certain assignments of the loan and its servicing rights[10] (Am. Compl. at 4 ¶3, at 6 ¶9, at 7 ¶12, at 15 ¶¶ 2-4), by failing to provide him notice "in writing at least 15 days before the effective date of the transfer" from any of the defendants (Am. Compl. at 15 ¶4), and by failing to adequately and timely respond to a "Dispute of Debt" request (id. at 6 ¶8).  However, the only moving parties that would be required to provide notice are servicers Ocwen and Saxon.

The Court finds that with respect to servicers Ocwen and Saxon, plaintiff has stated sufficient facts to state a claim for violation of the RESPA.  The Court further finds that plaintiff has failed to state a RESPA claim under section 2605 against defendants MERS, Deutsche and RTS because plaintiff has not alleged that they were "servicing" his loan.

## I.    Violation of the CPA

Plaintiff argues that he has plead facts that demonstrate a violation of the CPA because defendants "continue to block, mislead, omit, and deceive Plaintiff by failing to answer any of the demands, requests, or correspondence Plaintiff previously sent to Defendant(s)" and because defendants "failed to properly cause to be recorded ALL of the appropriate assignments and transfers to maintain an accurate chain of title and establish a complete record of who [is] the true and correct party of interest."  Dkt. # 17 [Opp'n] at 15, #29 [Opp'n to Saxon] at 9.  Plaintiff also argues that defendants "caused derogatory, erroneous, and

---

[10]Defendant Saxon has attached as Exhibit A to Ms. Gutierrez's declaration what purports to be the notice given to plaintiff about the change in servicing of plaintiff's loan.  Dkt. #25-1.  However, plaintiff claims that he has not previously seen this letter. Dkt. #29 [Opp'n to Saxon] at 3.  The Court declines Saxon's request to treat its motion as one for summary judgment simply to consider this letter because the Court does not have before it the complete record of all relevant documents, including the promissory notes, and all purported transfers of the notes, Deed 1 and Deed 2.

ORDER GRANTING IN PART AND DENYING
IN PART MOTION TO DISMISS - 15

inaccurate information to be reported into Plaintiffs [sic] credit file from at least April 2008 through November 2009." Id.

To state a claim under the CPA, plaintiff must plead facts demonstrating: (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) that impacts the public interest, (4) which causes injury to the plaintiff in his or her business or property, and (5) which injury is causally linked to the unfair or deceptive act. Indus. Indem. Co. v. Kallevig, 114 Wn. 2d 907, 920-21 (1990). Ordinarily, a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 790 (1986). However, a private dispute can affect the public interest if it is likely that additional plaintiffs have been or will be injured in exactly the same fashion. Id. The Court must examine several factors to determine whether the public interest is impacted: (1) Were the alleged acts committed in the course of defendant's business? (2) Did defendant advertise to the public in general? (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others? (4) Did plaintiff and defendant occupy unequal bargaining positions? Id. at 790-91.

Here, plaintiff's allegations concerning purported violations of the CPA are identical for every defendant. Even if the Court assumes that plaintiff has met the first two elements of a CPA claim, he has failed to state facts sufficient to demonstrate the last three elements. No facts are alleged to support plaintiffs claims that the acts alleged impacted the public interest and caused plaintiff's alleged injuries. Plaintiff also has not plead an actionable injury. It is unclear to the Court whether the trustee sale has occurred, and plaintiff does not dispute his default under the terms of the note.

Accordingly, the Court grants defendants' motion to dismiss the CPA claims as to all moving defendants without prejudice.

### J.    Violation of the TILA

Plaintiff alleges a violation of the TILA for failing to provide notice of transfer of his promissory note. Dkt. #17 [Opp'n] at 2; Dkt. #29 [Opp'n to Saxon] at 4, 6. The TILA requires that if ownership is transferred, the new owner or assignee of a mortgage loan must notify the

ORDER GRANTING IN PART AND DENYING
IN PART MOTION TO DISMISS - 16

borrower within thirty days after the loan is sold or assigned of its identity, contact information, and information about any party with authority to act on behalf of the new owner.  15 U.S.C. §§1641(g) (effective May 20, 2009), 1640(a) (private right of action for violation of section 1641(f) or (g)).  A servicer of a consumer obligation arising out of a credit transaction is not treated as an assignee unless the servicer is or was the owner of the obligation.  Id. §1641(f)(1). The Court has not been provided with all relevant documents, including the promissory note and any purported transfers of the note.  However, plaintiff has alleged that defendants Saxon and Ocwen became the owner of his loan.  Am. Compl. at 4-5 ¶3, 15 ¶2.  He also alleges that he has not received any notice of transfer of ownership of the note, or received any response to his written requests seeking the identity of the note holder.  Id. at 6 ¶8, 7 ¶12.

Accordingly, the Court finds that plaintiff has stated a claim for a TILA violation against defendants Saxon and Ocwen.  Plaintiff has not alleged that defendants MERS, Deutsche, or RTS ever held the note, and the Court dismisses the TILA claim against them without prejudice.

**K.    Fraud**

Plaintiff claims that defendants fraudulently induced him to execute the promissory note and deed of trust.  Dkt. #17 at 2:12-13, 3:1-3, 11:3-4.  Plaintiff claims that the deed of trust contains a false statement because it specified MERS as the beneficiary.  Id. at 6:20-26, 10:6-9. Plaintiff also claims that defendants have "committed fraud by representing to the court that Defendant(s) are real party(ies) in interest in the contract of sale and has standing to take said property from defendant when no such claim exists."  Id. 16:25-17:2.

To survive a motion to dismiss, a complaint must plead allegations of fraud with particularity.  Fed. R. Civ. P. 9(b).  The complaint must include an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.  Schwartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007).  Rule 9(b) does not allow a plaintiff to lump all defendants together, but requires plaintiffs to differentiate their allegations and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.  Id. at 764-65.  In Washington, a claim for fraud has the following

ORDER GRANTING IN PART AND DENYING
IN PART MOTION TO DISMISS - 17

elements: (1) representation of an existing fact, (2) materiality, (3) falsity, (4) the speaker's knowledge of its falsity, (5) intent of the speaker that it should be acted upon by the plaintiff, (6) plaintiff's ignorance of its falsity, (7) plaintiff's reliance on the truth of the representation, (8) plaintiff's right to rely upon it, and (9) damages suffered by plaintiff. Stiley v. Block, 130 Wn. 2d 486, 505 (1996).

Here, plaintiff's claims fail to allege any purported fraudulent conduct with specificity. Accordingly, the Court dismisses plaintiff's fraud claims against all defendants without prejudice.

### L.    Conspiracy

Plaintiff claims that defendants have engaged in an ongoing criminal conspiracy. Dkt. #17 at 17.  The Court will construe plaintiff's claim as  civil conspiracy.  "A conspiracy is a combination of two or more persons who contrive to commit a criminal or unlawful act, or to commit a lawful act for criminal or unlawful purposes." Adams v. King County, 164 Wn. 2d 640, 660 (2008).  Plaintiff has failed to allege sufficient facts to state a claim for civil conspiracy, and the Court dismisses this claim with prejudice.

### IV.    CONCLUSION

For all the foregoing reasons, the Court GRANTS in part defendants' motions to dismiss and DISMISSES the following claims WITH PREJUDICE:

1. Intentional infliction of emotional distress against all moving defendants;
2. Slander of title against all moving defendants;
3. Fiduciary duty against all moving defendants;
4. DTA against defendants Ocwen and Saxon only; and
5. Conspiracy against all moving defendants.

The Court DISMISSES the following claims WITHOUT PREJUDICE:

1. FDCPA against all moving defendants;
2. RESPA against defendants MERS, Deutsche, and RTS;
3. CPA against all defendants;
4. TILA against MERS, Deutsche, and RTS; and

ORDER GRANTING IN PART AND DENYING
IN PART MOTION TO DISMISS - 18

5. Fraud against all defendants.

The Court DENIES defendants' motion to dismiss the following claims:

1. DTA against MERS, Deutsche and RTS only;

2. RESPA against defendants Ocwen and Saxon only;

3. TILA against defendants Saxon and Ocwen only.

Plaintiff may amend his complaint with respect to claims that the Court has not dismissed with prejudice within thirty days of this Order.


DATED this 26th day of January, 2011.


*MWS Casnik*

Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART AND DENYING
IN PART MOTION TO DISMISS - 19