The Honorable Robert S. Lasnik

Edward L. Mueller, WSBA # 264
Mueller & Associates, Inc. P.S.
2050 112th Avenue, N.E., Suite 110
Bellevue, WA 98004
Tel. # (425) 457 7600
Fax #  (425) 457 7601
e-mail: elm@muellerlawfirm.net
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT,
## WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| Phimpha Thepvongsa,<br><br>                      Plaintiff<br><br>vs.<br><br>Regional Trustee Services Corporation; Ocwen Loan Servicing LLC; Saxon Mortgage Services, Inc.; Mortgage Electronic Registration Systems, Inc.; Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS Capital I Inc Trust 2007-NC4;<br><br>                      Defendant(s) | **No. 2:10-cv-01045 RSL**<br><br>SECOND AMENDED COMPLAINT FOR:<br><br>(1) Violation of Washington Deed of Trust Act RCW 61.24 *et seq.*;<br>(2) Violation of RESPA 12 U.S.C. §2605 et. seq. & §2607 et. seq.;<br>(3) Violation of FDCPA 15 U.S.C. §1692 et. seq.;<br>(4) Violation of FCRA 15 U.S.C.§ 1681s-2<br>(5) Violation of WA CPA RCW 19.86 et. Seq.;<br>(6) Declaratory Relief; Lack of Standing.<br>(7) Permanent Injunction |

Phimpha Thepvongsa, Plaintiff, states claims against the following named Defendants:

Regional Trustee Services Corporation; Ocwen Loan Servicing LLC; and Saxon Mortgage

Services; Mortgage Electronic Registration Systems, Inc.; and Deutsche Bank National Trust

**Second Amended Complaint**          **- Page 1 -**

Company, as Trustee for Morgan Stanley ABS Capital I Inc Trust 2007-NC4; separately and together as follows:

## I.   JURISDICTION, VENUE AND PARTIES,

### 1.1   Jurisdiction and Venue

Jurisdiction in this case is based on 28 USC § 1331 because Plaintiff's claims stated below against Defendants include alleged violations of federal statutes.  In addition, jurisdiction in this case is based on diversity of citizenship pursuant to 28 USC §1332.  The Plaintiff is a resident of Washington State, and some of the defendants are residents of other states, as stated in the descriptions of the parties in ¶¶ 1.3 through 1.8 of this Second Amended Complaint.  The value of the amount in controversy exceeds $75,000.00, as described in the Promissory Note and Deed of Trust which are described in ¶ 2.1 of this Second Amended Complaint, Venue in this matter is properly set in the U.S. District Court, Western District of Washington pursuant to 28 USC §1391(a) (2) based on facts pled in ¶¶ 1.2, -1.8 inclusive of this Second Amended Complaint.

### 1.2   Phimpha Thepvongsa, Plaintiff

Phimpha Thepvongsa (hereinafter "Plaintiff") is a Washington State resident, who resides in King County, Washington.   Plaintiff acquired fee title to the real property commonly known as 10722 18th Ave SW, Seattle, WA 98146 pursuant to that certain Statutory Warranty Deed dated January 19th, 2007 and recorded in the King County Records Record # 2007012400214, a copy of which is attached, marked **Exhibit 2AC1**, and incorporated herein by reference as if fully set forth here.  The legal description of the real property is:

//

**Second Amended Complaint**          **- Page 2 -**

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601)

Lot 4(s), Block 11, Oak Park, according to plat thereof recorded in
Volume 22 of Plats page(s) 72, records of King County, Washington
Situate in the County of King, State of Washington.

Tax Parcel Number(s) 630340-0795-02

**1.3    Regional Trustee Services Corporation, Defendant**

Defendant Regional Trustee Services Corporation (hereinafter RTS), is a Washington

Corporation, with an office located in Seattle, WA, and doing business in King County, WA,

among other counties in the state.   At the time this lawsuit was commenced RTS claimed to be

a successor Trustee with a right to exercise the power of sale provided in that certain deed of

trust that encumbers Plaintiff's home property.  RTS issued and recorded a Notice of Trustee's

Sale (a non-judicial foreclosure) pursuant to the deed of trust that encumbers the real property

owned by Plaintiff, which property was described above in ¶ 1.2 of this 2nd Amended

Complaint. Plaintiff's claims against Defendant RTS in this Complaint challenge the reputed

authority and basis for the Notice of Trustee's Sale and claim damages for various violations of

the law by Defendant RTS in performance of its activities.  RTS is subject to the jurisdiction

and venue of this court by its residency and by its acts of scheduling the non-judicial sale, and

its other activities as alleged in this complaint.

**1.4    Ocwen Loan Servicing LLC, Defendant.**

Ocwen Loan Servicing LLC (hereinafter "Ocwen") is believed to be a Delaware limited

liability company licensed to do business in Washington State, with an office located in

Edmonds, WA.  It had done and does business in King County, among other places in the state.

The Washington Department of Licensing website lists Defendant Ocwen as a "Collection

Agency."   Defendant Ocwen is subject to the jurisdiction and venue of this Court by its

**Second Amended Complaint**          **- Page 3 -**

1  residency in Delaware and its claim to have an interest as "servicer" in Plaintiff's above

2  referenced loan and real property located in King County, WA, and the claims asserted by

3  Plaintiff against Ocwen in this complaint.

4  **1.5    Saxon Mortgage Services, Inc., Defendant**

5          Saxon Mortgage Services Inc. (hereinafter "Saxon") is a Texas Corporation, licensed to

6  do business in Washington, and doing business in King County, WA among other counties by

7  acting as a creditor, servicer of mortgage loans, and debt collector.  Defendant Saxon is subject

8  to the jurisdiction and venue of this court by its residency in Texas and by its actions in King

9  County recited in the Plaintiff's claims against Saxon asserted in this complaint.

   **1.6    Mortgage Electronic Registration Systems, Defendant**

10         Mortgage Electronic Registration Systems, (hereinafter "MERS") is a Delaware

11  corporation that is not licensed to conduct business in the State of Washington, but it never the

12  less purports to have acquired an interest only in the deed of trust that secures the note in

13  Plaintiff's Loan as a "nominee" of the "Lender and its successors and assigns" and

14  "beneficiary."  Defendant MERS is subject to the jurisdiction and venue of this court (1) by its

15  residency in Delaware, (2) by its purported assignment of an interest in the deed of trust and

16  note recorded in King County, WA, and (3) by Plaintiff's claims against MERS in Plaintiff's

17  Second Amended Complaint.

18  **1.7    Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS**
           **Capital I Inc Trust 2007-NC4, Defendant.**
19

20         Defendant Deutsche Bank National Trust Company, as Trustee for Morgan Stanley

21  ABS Capital I Inc Trust 2007-NC4, (hereinafter "Deutsche,") is a national banking association

22  with its home office in New York State.  It is not licensed in Washington State, and has no

**Second Amended Complaint**          **- Page 4 -**

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601)

known offices or branches in this state.  It purports to claim that is the present owner/holder of

the original promissory note signed by Plaintiff, and the current beneficiary of that certain deed

of trust that secures the payment of said note.   Defendant Deutsche is subject to the jurisdiction

and venue of this court by a combination of four reasons: (1) by its residency in New York

state, (2) by its claim of being the owner/holder of the $ 260,000.00 promissory note signed by

Plaintiff and the beneficiary of the deed of trust that secures the payment of said note, (3) by

reputedly having requested that RTS perform a non-judicial foreclosure sale with respect to the

certain deed of trust , and (4). by Plaintiff's claims against Deutsche in this Second Amended

Complaint.

## II.   BACKGROUND FACTS AND HISTORY.

### 2.1   Original Loan to Plaintiff;  Lender Named as Payee on Promissory Notes.

Plaintiff applied for and obtained a home loan for $325,000.00 from New Century

Mortgage Corporation[1] (hereinafter "New Century"). As a part of the closing of the loan, the

Plaintiff was required by Defendant New Century to sign two separate promissory notes.   The

first promissory note states a principal debt of $260,000.00; the second promissory note states a

principal debt of $65,000.00.  Both notes were expressly payable to New Century or its order.

The two notes are disclosed so as to completely inform the Court of the facts. However, only

---

[1]     New Century Mortgage Corporation (hereinafter "New Century,"), was a California
corporation located in Irvine, California that was previously registered to conduct business in
the State of Washington, however the Washington State corporate license expired on October
31st, 2007 and the corporate license in this state became inactive on February 1, 2008.  At the
time the loan was made to Plaintiff the corporation conducted business in King County by,
among other things, engaging in mortgage lending activities and obtaining notes, payment of
which was secured by deeds of trust on real property located in King County, Washington.
Defendant New Century was the named "Lender" on both of Plaintiff's notes and both deeds of
trust.

**Second Amended Complaint**          **- Page 5 -**

the first note for $260,000.00 is directly a part of the subjects of this lawsuit.  The first note will

be referred to hereinafter as the "Note."  A copy of the Note with three riders is attached hereto,

marked **Exhibit 2AC2** and incorporated herein by reference as if fully set forth here. The copy

of the Note with riders was received by Plaintiff with a letter from Defendant Ocwen Loan

Servicing LLC dated April 20, 2010.  At the bottom right hand of each page of the Note and the

riders is a Loan No. 1011755184.  The note had a guaranteed interest rate for the first two

years.

**2.2    Payment of Each Note was Secured by Related Deeds of Trust**.

The payment of each note was secured by a separate deed of trust encumbering the

Plaintiff's home property described in ¶ 1.2 of this Second Amended Complaint.  The payment

of the first Note was secured by a first priority deed of trust (hereinafter "DoT"#1) dated

January 19th, 2007, and recorded in the King County Records January 24th, 2007 under

Recording No. 20070124002146.  DoT #1 is one of the subjects of this lawsuit, and encumbers

the title to Plaintiff's real property described in ¶ 1.2 above.  A copy of the recorded DoT #1 is

attached hereto, marked **Exhibit 2AC3,** and incorporated herein by reference as if fully set

forth here. A number listed on the bottom right hand of each page of that exhibit is

1011755184, which corresponds to the Loan Number on the Note.  DoT #1 provided that the

Lender was New Century Mortgage Corporation; the Borrower was Phimpha Thepvongsa; the

designated trustee was Old Republic Title Ltd; and the "nominee" of the Lender was Mortgage

Electronic Registration Systems, Inc. (MERS) who was also designated "beneficiary."  The

DoT #1 document itself was 15 pages plus 8 pages of attachments for a total of 23 pages.

**2.3    Recorded Assignment of Deed of Trust;  Recording Date: 11/07/2008.**

On November 7th, 2008 an Assignment of Deed of Trust was recorded under King

**Second Amended Complaint**          **- Page 6 -**

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601)

County Records Recording No. 20071107001076, and returned to Saxon Mortgage Services,

Inc.  The assignment was dated November 5, 2008 and reputedly assigned all of Defendant

MERS's "beneficial interest" in the certain Deed of Trust recorded on 01/24/2007 under

Auditor's File No. 20070124002146 (the same DoT #1 referenced in ¶2.2 above) to Defendant

Deutsche as trustee for Morgan Stanley ABS Capital I Inc., MSAC 2007-NC4.  (That trust is

sometimes referred to hereinafter as the "...NC4 Trust.")  The Assignment also stated:

> "Together with the Note or Notes therein described or referred to, the money
> due and to become due therein with interest and all rights to accrue under
> said Deed of Trust."

A copy of the Assignment of Deed of Trust is attached hereto, marked **Exhibit 2AC4**, and

incorporated herein by reference as if fully set forth here.

## 2.4    The Recorded Assignment of Deed of Trust is Defective.

2.4.1    The Assignment of the Deed of Trust identified in ¶ 2.3, above, was ineffective

to assign anything to Defendant Deutsche because of the provisions of the ...NC4 Trust

documents that provided that the deposits of loans into the trust closed effective June

20th, 2007,[2] and such deposits into the Trust were to be made by Morgan Stanley ABS Capital

I Inc., the designated depositor, not MERS.  MERS had no authority to act on behalf of Morgan

Stanley ABS Capital I, Inc.

2.4.2    However, this Assignment is recorded and therefore is a "cloud on title" on the

recorded deed of trust described in the assignment and the note secured by that deed of trust,

---

[2]  See the Morgan Stanley ABS Capital I Inc., MSAC 2007-NC4 documents filed with the SEC
Edgar filings for this trust.  The documents which contain the "closing date" for deposit of loan
are the "Pooling Agreement" and the "Prospectus Supplement." These documents can be
viewed on the Internet at http://www.sec.gov/cgi-bin/browse-edgar?company=2007-
NC4&match=contains&CIK=&filenum=&State=&Country=&SIC=&owner=include&Find=Fi
nd+Companies&action=getcompany

MUELLER & ASSOCIATES, INC., P.S.
**ATTORNEYS AT LAW**
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601)

1    and a cloud on title on the real property owned by Plaintiff described in the DoT #1.

2        2.4.3   This Assignment was signed by a person named Bethany Hood as Vice

3    President of Mortgage Electronic Registration Systems, Inc. (MERS) "as Nominee for its

4    successors and assigns" (sic) on November 5th, 2008.  Bethany Hood is not an employee of

5    MERS.

6        2.4.4   Defendant MERS has admitted that Bethany Hood is not an employee of MERS

7    in its answer to an adversarial complaint in a bankruptcy case in Indiana, named *Kootnz v.*

8    *Everhome, et. al.* Case # 10-3005. A copy of that answer is attached hereto, marked **Exhibit**

9    **2AC5,** and incorporated by reference as if fully set forth here.  The statement referenced above

10   is in **Exhibit 2AC5** at page 6, Item 30, and is highlighted in yellow for easy reference.  In fact,

11   Bethany Hood was at that time, and may still be an employee of a company named Lender

12   Processing Services, Inc., (hereinafter LPS) a fact known to MERS and probably known to

13   Deutsche Bank Trust Company.

14       2.4.5   Her signature was notarized by James C. Morris, a notary in Dakota County,

15   Minnesota.  James C. Morris was an employee of LPS at that time, (and may still be.)  His

16   acknowledgment states that Bethany Hood had personally appeared before him and was either

17   personally known to him or had proved to him on the basis of satisfactory evidence that she was

18   authorized to execute the instrument on behalf of MERS as Vice President of MERS.  As

19   admitted by MERS in the Koontz case, Bethany Hood is not an employee of MERS. The

20   document and the acknowledgment are false.

21       2.4.6   Plaintiff also asserts (1) that MERS did not receive a "beneficial Interest" in the

22   deed of trust at the time of the closing of the loan when MERS was named "nominee" of the

     original lender, and (2) MERS never acquired a beneficial interest in the deed of trust at any

**Second Amended Complaint**       **- Page 8 -**

time thereafter. Plaintiff's assertion is based on the following facts:

(1) MERS paid nothing to anyone for a beneficial interest in the DoT #1.

(2) MERS never received any kind of interest in or possession of the Note for $260,000.00, payment of which was secured by the deed of trust (DoT #1.)

(3) MERS originally received only the Lender's "legal title" to the deed of trust (DoT #1) as nominee of the original "lender and its successors and assigns."

These assertions of fact are based on the DoT #1 and the known MERS business model and statements and admissions of MERS in prior litigation as explained in the following subparagraph.

2.4.7 In MERS's business model MERS is reputed to be the "nominee for the lender, its successors and assigns" in millions of deeds of trust and mortgages throughout the United States. MERS has claimed and admitted in prior litigation that it is never the holder of any note the payment of which is secured by the related deed of trust or mortgage in which MERS is named "nominee" of the lender. MERS is never entitled to any payment from the note. Therefore MERS has no interest in the note to assign, and does not have any equitable beneficial interest in the deeds of trust or mortgages in which it has been made "nominee" of the lender.[3] Thus in the MERS standard business model MERS has nothing of beneficial value in the deed of trust that it can assign. In addition, MERS has no authority as "nominee" to assign the deed of trust without instructions from its principal. The circumstances in this instant case are identical to the standard business model of Defendant MERS in which MERS

---

[3]  See *Landmark National Bank v. Kesler,* 289 Kan 528, 538, 539, 216 P.3d 158 (2009); also see *Mortgage Electronic Registration systems, Inc. v. Nebraska Dept of Banking, etc.,* 270 Neb. 529, 704 N.W. 2d 784 (2005).  In addition, see Court's Memorandum Opinion in *In re Agard,* Case No. 810-77338-reg;  U.S. Bankruptcy Court, E.D.of New York

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601)

has no interest in the Note to assign, and no equitable beneficial interest in the DoT #1 to assign.

     2.4.8   Furthermore, there is no evidence of MERS ever obtaining any interest in the NOTE from the Defendant "New Century Mortgage Corporation", the original named Lender.

     2.4.9   Due to the facts described above Plaintiff claims that the "Assignment of Deed of Trust" described above is a false document and should be held to be void.  Plaintiff claims in the alternative that the assignment is voidable, and should be voided: and that in any event the document has no legal effect, except to provide evidence by inference that the Defendants knew that no prior document existed that showed an "assignment" of the Note and Deed of Trust signed by Plaintiff into the "… NC4 Trust during the time when that trust was authorized by its documentation to accept loans, and therefore this document was created in an attempt to provide evidence of an assignment when no prior evidence of an assignment existed, and no assignment had previously occurred.

**2.5**    <u>Recorded Appointment of Successor Trustee, Recording Date 11/07/2008</u>

     On November 7th, 2008 a document entitled Appointment of Successor Trustee was recorded on behalf of Defendant Deutsche in King County Records, Recording No. 20071107001077.  A copy of this Appointment of Successor Trustee document is attached hereto, marked **Exhibit 2AC6**, and incorporated herein by reference as if fully set forth here.

     2.5.1   This document purportedly appointed Defendant RTS as Successor Trustee.

     2.5.2   The second paragraph in the document recites that Defendant Deutsche as Trustee, for the …NC4 Trust is the "present beneficiary" by whom the purported Appointment of Successor Trustee was made.  The statement was false, as explained below.

**Second Amended Complaint**       **- Page 10 -**

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601)

2.5.3   Defendant Deutsche as Trustee of the "…NC4 Trust" in fact never obtained an ownership/holder interest in the Note or the beneficial interest in DoT #1 as a result of the Assignment of Deed of Trust reputedly signed by MERS (but in fact signed by Bethany Hood, an employee of LPS.)  Nor did Deutsche acquire the Note and beneficial interest in DoT #1 by any other reputed means.   The facts on this subject are stated above in ¶ 2.3 and ¶ 2.4 and its subparagraphs of this Complaint.   Because Defendant Deutsche was not the owner of the Note and the real beneficiary of DoT #1, it had no authority to sign the Appointment of Successor Trustee.   Only the beneficiary of a deed of trust has authority to appoint a successor trustee.[4]

2.5.4   This Appointment of Successor Trustee document was signed on November 5th, 2008 (the same day the Assignment of Deed of Trust was signed by Bethany Hood) by a person named Scott Walter, who is reputed by the document to be the "AVP" of Saxon Mortgage Services, Inc., as Attorney-in-Fact for Defendant Deutsche.  Scott Walter is another employee of Lender Processing Services, Inc. (LPS), and is not employed by Saxon Mortgage Services, as will be explained in sub-¶ 2.5.6, below.

2.5.5   The signature was notarized by Mark Bischof, a notary in Dakota County Minnesota (in the same county where Bethany Hood signed) stating that Scott Walter had personally appeared before him and was either personally known to him or had proved to him on the basis of satisfactory evidence that he was in fact an "AVP" of Saxon Mortgage Services, Inc., and that Saxon Mortgage Services, Inc. was attorney in fact for Deutsche Bank Trust Company and authorized to execute the instrument on behalf of Deutsche.  Mark Bischoff, the notary, was at that time an employee of Lender Processing Services, Inc. (LPS), and may still be.

---

[4] See RCW 61.24.010(2).

**- Page 11 -**

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601)

2.5.6    According to a Deposition of Scott Walter taken January 13, 2010 as part of

case # 07-13346-KAO[5] he is a supervisory employee of Lenders Processing Services Inc  (LPS)

A copy of the Deposition is attached hereto, marked **Exhibit 2AC7** [6] and hereby incorporated

by reference as if fully set forth here.  The deposition testimony of Scott Walter shows that at

the time his deposition was taken he was vice-president of operations for LPS, and managed a

staff of over 80 persons. (Walter Deposition, p. 9, line 22 through p.10, line 9.)   Beginning

sometime in 2003 Mr. Walter has worked continuously up to the date of his deposition for a

division of Fidelity National Financial, which division later became known as Lenders

Processing Services Inc., (Walter Dep., p.7, line 22 through p 9, line 15.)   The group of people

Mr. Walter manages for LPS provides services to customers, including the preparation and

signing of at least two kinds of documents needed for legal purposes, namely assignments of

deeds of trust and appointments of successor trustees.  (Walter Dep., p.11, line 1 through p.22,

line 12.)  The notaries used by LPS to notarize Mr. Walter's signature, and those of his staff

who also sign documents on behalf of LPS customers, are employees of LPS, but not part of the

group managed by Mr. Walter. (Walter Dep., p.19. lines 3-8, and p20, line 17 through p. 22,

line 4.) Mr. Walter executes documents once a day. (Walter Dep. p.18, lines 6-8)  Scott Walter

did not recall whether he signed in front of a notary when he signed a document that was an

exhibit in his deposition. (Walter Dep. p. 20, line17 through p, 22, line 4.)

---

[5]   The case was in U.S. Bankruptcy Court, Western District of Washington at Seattle.  A
   checking of the court file shows that Deutsche Bank Trust Company, as trustee of another
   securitized investment trust, was attempting to lift the automatic stay in that bankruptcy case
   so that Deutsche could foreclose on a deed of trust on the debtors' home. The Chapter 7
   Trustee brought an adversary proceeding and challenged Deutsche's claim of right to
   foreclose. This deposition was taken by the Chapter 7 Trustee's attorney.

[6]   The copy of the Deposition of Scott Walter is a condensed version with four deposition
   pages on each letter-sized sheet.

**Second Amended Complaint**          **- Page 12 -**

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601)

**2.6**    First Notice of Trustee Sale Recorded by Defendant Regional Trustee Services; Recording Date 12/05/08.

2.6.1    On December 5th, 2008 Defendant RTS recorded a first Notice of Trustee Sale (hereinafter "NoT #1") under King County Records Recording No. 20081205000848. A copy of this first Notice of Trustee Sale is attached hereto, marked **Exhibit 2AC8,** and incorporated herein by reference as if fully set forth here.

2.6.2    This NoT #1 stated a scheduled sale date of March 6th, 2009 at 10:00 am at the 4th Avenue Entrance of the King County Administration Building, 500 4th Avenue, Seattle, WA.

2.6.3    The NoT #1 describes the beneficiary of DoT #1 as Defendant MERS and the "present beneficiary" as Defendant Deutsche.

2.6.4    Deutsche is not the beneficiary of DoT #1 due to the facts described in ¶ 2.2 through ¶ 2.4 and its subparagraphs above. Thus, the recital of that "fact" in NoT #1 is false.

2.6.5    This NoT #1, p. 2, describes various charges totaling $16,956.35 as the amounts in arrears including Delinquent payments from June 1, 2008 to December 5th, 2008, which were reported as 1 payment of $2,151.92 and 6 payments of $2,221.57, plus late charges, and other costs, one of which was "Beneficiary Advances" in the amount of $346.17. The "Beneficiary Advances" have not been described to Plaintiff at any time even though Plaintiff has requested an explanation and an accounting, which has not been provided. These are believed by Plaintiff to be in the nature of unearned service fees. Therefore, the charge and the amount of the charge is disputed. Defendants who assert the right to the charges have the burden of proving they are earned.

//

**Second Amended Complaint**          - Page 13 -

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601

2.6.6   The NoT #1 states "The sum owing on the obligation secured by the Deed of Trust is: Principal $258,768.44.

2.6.7   Plaintiff claims that amount is inaccurate and as such is disputed. There is a discrepancy between the amount stated as owed in the copy of the Note provided by Defendant Ocwen in response to Plaintiff's Dispute & Validation Letter and the amount of the payments shown as owed by Defendant RTS on the NoT #1. According to the Note provided by Defendant Ocwen in response to Plaintiff's Dispute & Validation Letter, the monthly payments due were $1,871.52. According to the Note the interest rate in the payments were fixed for two years.   According to Defendant RTS on NoT #1 the monthly payments due were shown as two different amounts -- $2,151.92 and $2,222.57, which according to the NoT #1 were due during seven months that were within the first two years of the Note.

2.6.8   According to NoT #1 and Plaintiff's records, at least 15 payments equaling at least $28,072.80 ($1,871.52 X 15) were made between the date Plaintiff signed the Note and June 2008. Defendant RTS in NoT #1 is showing less than $1,500 has been paid to reduce principal.  Plaintiff disputes the accuracy of the payment amounts shown on NoT #1 and the total amount shown as owing at that time.  Plaintiff has requested a verified accounting in the Dispute & Validation Letter, which accounting has not been produced.

2.6.9   The Trustee's Sale set in NoT #1 was never completed.

**2.7**   **Second Notice of Trustee Sale Recorded by Defendant Regional Trustee Services; Recording Date 12/31/09.**

2.7.1   On December 31, 2009 Defendant RTS recorded a second Notice of Trustee Sale (hereinafter "NoT #2") under King County Records Recording No. 20081205000848. A copy of this second Notice of Trustee Sale is attached hereto,

**Second Amended Complaint**          **- Page 14 -**

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601)

marked **Exhibit 2AC9,** and incorporated herein by reference as if fully set forth here.

2.7.2    This NoT #2 stated a scheduled sale date of April 2nd, 2010 at 10:00 am at the 4th Avenue Entrance of the King County Administration Building, 500 4th Avenue, Seattle, WA.

2.7.3    The NoT #2 describes the Beneficiary as Defendant MERS (as nominee for New Century Corporation, which is different than NoT #1 which stated "as nominee for its successor and assigns" meaning as nominee for the successor and assigns of MERS) and the "present beneficiary" is stated to be Defendant Deutsche. Plaintiff disputes that Defendant Deutsche is the Beneficiary of DoT1 because of the facts described in ¶ 2.2 - ¶ 2.4 above.

2.7.4    The NoT #2 describes various charges totaling $51,518.09 as the amounts in arrears including delinquent payments from June 1, 2008 to January 1st, 2010, late charges, and other costs one of which was "Beneficiary Advances" in the amount of $4,749.77. The "Beneficiary Advances" have not been described to Plaintiff at any time even though Plaintiff has requested an explanation and an accounting, which has not been provided. These are believed by Plaintiff to be in the nature of unearned service fees. Therefore, the charge and the amount of the charge is disputed. Defendants who assert the right to the fees have the burden of proving they are earned.

2.7.5    The NoT #2 states "The sum owing on the obligation secured by the Deed of Trust is: Principal $258,768.44..." This amount, just as in NoT #1, appears to Plaintiff to be inaccurate and is disputed. The kind of discrepancy described in NoT #1 is repeated in NoT #2, but the error is greater. In NoT #2 Defendant RTS states 4 different monthly payment amounts listed in NoT #2; which were one (1) payment of $2,151.92 , (eight (8) payments of $2,222.57, four (4) payments of $2,221.29, and  seven (7) payments of $2,230.29.   Plaintiff

**Second Amended Complaint**          **- Page 15 -**

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601)

disputes that any of the payment amounts shown on NoT #2 or the total amount owing are accurate and has requested a verified accounting in the Dispute & Validation Letter.  None of the defendants to whom the Dispute & Validation Letter was addressed has responded.

2.7.6   Defendant RTS postponed this second Trustee sale several times and eventually it was completely discontinued.

**2.8    Plaintiff Made Attempts to Obtain Validation of the Accounting and Proof of the Identification and Rights of the Owner/Holder of the Note and/or Beneficiary of the Deed of Trust.**

2.8.1   Due to the flurry of media attention on "Foreclosure Fraud," Plaintiff began researching foreclosure fraud and making inquiries to determine if he had been victim of foreclosure fraud and/or predatory lending that has occurred to many others in the United States during the past several years.

2.8.2   Plaintiff made multiple attempts to obtain a validation of the accounting and proof of the identity of Owner/Holder of the Note and Beneficiary of the DoT #1 from the Defendants RTS, Ocwen, and New Century, (who were at the time the only parties involved with the loan of which Plaintiff was aware.)  The combined "Qualified Written Request, (QWR), Dispute of Debt (Dispute) and Debt Validation Letter," was sent via U.S. Mail, postage prepaid, certified, return receipt requested.  Plaintiff has signed receipts of the mailings. Plaintiff also recorded a copy of the QWR, Dispute and Debt Validation Letter in the public records at the King County Recorder's office on March 22, 2010, to provide notice to any then unknown parties, like Defendant Saxon,  Saxon claims it was not and is not required to respond to the QWR, Dispute and Debt Validation letter.  Plaintiff asserts that Defendant Saxon had and has a duty to respond to the QWR, Dispute and Debt Validation letter. The QWR clearly stated "Notice to Agent is Notice to Principal" on page 2.  Defendant Saxon utilized Defendant RTS

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601)

1    as its agent to issue the first Notice of Trustee Sale prepared and recorded during the timeframe

2    during which Saxon purportedly was the servicer of Plaintiff's loan, according to the timeline

3    provided in their Motion to Dismiss and attached Exhibits [Dkt # 24 & 25],   Plaintiff further

4    provided to Defendant RTS, Defendant Ocwen, Defendant MERS, and Defendant New Century

5    multiple letters objecting to the Trustee Sale.  The only result that any of the delivery of above

6    described demands, requests, or objections was that Plaintiff received a nominal response letter

7    from Defendant Ocwen dated April 20, 2010, attached as Plaintiff's **Exhibit 2AC10** and

8    incorporated herein by reference as if fully set forth here.  Plaintiff has several concerns with

9    regard to Defendant **Ocwen's Response** including:

10              2.8.2.1 The loan # listed in Ocwen's response as 70932199 which number is

11   completely different from the descriptive numbers on the Note, 1011755184 and MIN

12   100488910117551845.

13              2.8.2.2  The Ocwen Response enclosed a reproduction of a copy of Plaintiff's

14   Note which appears to have been stamped as a certified and true copy by the original Trustee

15   named on DoT # 1 (Old Republic Title.)  Plaintiff has learned by investigation that this stamp

16   is normally made prior to the disbursement of the loan funds by the closing escrow officer (who

17   was a part of "Old Republic Title Escrow.")  The escrow closing officer normally sends that

18   certified copy of the signed note to the lender as proof that the closing escrow agent has the

19   signed note in possession so that the lender will then send funds to the closing agent so that

20   loan can be closed.   This document or a copy of it was not and is not evidence of a certification

21   made of a true copy of the original note at the time the original note was in the possession of

22   Defendant Ocwen or Defendant Deutsche.  Furthermore, the Declaration of Mary Gutierrez

     does not report that the signed original Note was ever in the possession of Defendant Saxon,

**Second Amended Complaint**          - Page 17 -

which company reputedly claims to have been the servicer immediately prior to Defendant

Ocwen.  In short, as of now none of the defendants has claimed to possess the original note

signed by the Plaintiff.

2.8.2.3 Plaintiff also has concerns about the loan application contained in

Defendant Ocwen's response **(Exhibit 2AC10.)**  Plaintiff does not possess a copy of his

original loan application, and does not know what, if anything, was altered on the substituted

pages – but the fact that some pages were substituted is indicative that someone substituted the

pages Plaintiff had initialed in the loan application for a reason probably related to the contents

of those prior pages that were replaced.

2.8.2.4   Defendant RTS did postpone the sale several times either after receipt

of one of the above listed Objections or the filing of this lawsuit. On 8-10-2010 the sale was

discontinued.

**2.9      Duplicate Reporting of Different Information to Credit Bureaus in Reference to
         The Loan.**

Due to Defendant(s) refusal to work with Plaintiff or respond to Plaintiff's requests for

information, Plaintiff began to research this particular loan to see if this may be a case of

misrepresentation and possible "fraudulent" foreclosure.  As a result of that investigation

Plaintiff discovered that there were two different reputed "lenders" reporting to the credit

bureaus in reference to the same Loan.  Plaintiff did not understand why there were two

different creditors filing reports with the three credit reporting agencies during essentially the

same time periods when Plaintiff had only one loan that could possibly fit the descriptions in

the reports. Furthermore, the reports were inaccurate and conflicting.

//

**Second Amended Complaint**          **- Page 18 -**

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601)

2.9.1  Defendant(s) Ocwen & Saxon continue to report conflicting information to the national credit bureaus (Experian, Equifax, and TransUnion) in regard to the Loan to Plaintiff even as this lawsuit continues.

2.9.2  On Plaintiff's Credit Report pulled on June 10, 2010, which was the basis for Plaintiff's initial complaint, Defendant Saxon reported to Equifax that a mortgage with account # 200027XXXX, was opened 1/1/2007 (which date is 18 days before the loan was made), with a High Balance of $260,000, and monthly payments of $2,151, with a current balance owed of $0.00, and no amount shown as past due.  Nevertheless, the Saxon report to Equifax also included negative reporting of past due payments (presumably of the monthly payment of $2,151.00) on 12/07, 2/08-10/08, 09/09, 10/09.  The Saxon reports to Experian show the account was opened 1/1/07, and did not show any dollar amounts in any category, but showed default in payments beginning 12/07 and 2/08-10/08 inclusive, and foreclosure as of 11/08-10/09 inclusive.  The Saxon reports do not show that the sale was discontinued.  The Saxon reports to TransUnion show that the account was opened 1/19/07, with a High Balance, monthly payments and current balance information reported as the same as the Saxon report to Equifax.  Saxon had not (and still has not) reported to any of the credit reporting agencies that the account was disputed by the consumer/debtor.

2.9.3 On the same Credit Report pulled on June 10, 2010 Defendant Ocwen reported to Equifax that a mortgage with account # 7093XXXX was opened 1/1/2007, with a  High Balance of $260,000, and monthly payments of $2,152, a current balance of $258,768.00, and a past due balance if $64,102.00.   The Ocwen report included "*" reporting between 04/08-12/10 and negative reporting 01/10-03-10.  It is unclear what the "*" means to Plaintiff however the same appears for on time payments through the remainder of Ocwen's report.

**Second Amended Complaint**          **- Page 19 -**

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601)

2.9.4  The only loan Plaintiff had commencing in January 2007 was opened 1/19/07 with an opening balance of $260,000, and is the loan that is a subject of this lawsuit.  The differing information reported by two different "creditors" with two different loan numbers makes it appear that Plaintiff owed two different loans, each with an opening balance of $260,000.00, and each loan in default.  Furthermore the reported information by each creditor was inaccurate and false.

2.9.5  Plaintiff mailed a dispute of the information provided by Defendant(s) Ocwen & Saxon directly to the credit reporting agencies on Nov. 24th, 2010, after receiving Defendant Saxon's Motion to Dismiss which provided the information that this pre-requisite is required. At the time of this Court issued its order on Defendant's Motion to Dismiss (Dkt # 32) on January 27, 2011.  Plaintiff had not yet received responses from the credit bureaus or Defendant Ocwen at that time. .

2.9.6  Plaintiff did receive a letter from Defendant Saxon dated December 23, 2010, requesting that Plaintiff complete an identify theft packet which was enclosed.  A copy of that letter and enclosure is attached hereto as Plaintiff's **Exhibit 2AC11** and incorporated herein by reference as if fully set forth here.  Plaintiff never knowingly reported any claim for identity theft or fraud to the credit bureaus.   This request is puzzling because Defendant Saxon had been told what the dispute was about, namely misleading filings of information by Saxon and Ocwen.   Saxon has and had adequate information to send reports to the credit agencies in regard to Plaintiff's loan. Defendant Saxon knows who Plaintiff is and should have a file containing supporting evidence of the debt and the dispute.

2.9.7  Plaintiff again pulled his credit report from the bureaus on Feb. 15, 2011 Defendant Saxon continues reporting to Equifax is as follows:

**Second Amended Complaint**              **- Page 20 -**

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601

2.9.7.1 A Mortgage with account # 200027XXXX, opened 1/1/2007, *latest reporting 12/2010*, High Balance of $260,000, monthly payments of $2,151. This reporting included negative reporting of past due payments on 12/07, 2/08-10/08, *in Foreclosure 11/08-08/09*, 09/09, 10/09, *11/09 the reporting between 11/09-12/10 is simply "*"*.  Saxon still fails to report that the foreclosure was discontinued.

**[bolding and emphasis supplied by Plaintiff to point out differences]**

2.9.7.2 It is unclear to Plaintiff what the "*" means however the same appears for on time payments through the remainder of the report.

**2.9.7.3** The account is NOT reported as reviewed, investigated or disputed in anyway.

2.9.8    In the Plaintiff's credit report from the bureaus on Feb. 15, 2011 Defendant Ocwen continues reporting on Plaintiff's credit to Equifax as follows:

2.9.8.1 A Mortgage with account # 7093XXXX, opened 1/2007, High Credit of $260,000, *latest reporting 12/2010, balance $258,768; past due $78,898,* monthly payments of $2,152. This reporting included "*" reporting between 01/07-12/09 and negative reporting 01/10-*10/10 the reporting between 11/10 is simply "*" and 12/10 is blank.*

**[bolding and emphasis supplied by Plaintiff to point out differences]**

2.9.8.2    The account is NOT reported as reviewed, investigated or disputed in any way.   This is a failure of Defendant Ocwen to report the dispute, and violates 15 U.S.C.§ 1681i.

2.9.9    The above described actions of reporting information to Plaintiff's private credit file are "willful noncompliance with its requirements under subsection (b)" of the Fair Credit

**Second Amended Complaint** - Page 21 -

1    Reporting Act 15 U.S.C. § 1681 et. seq.; a violation of the Fair Debt Collection Practices Act

2    15 U.S.C. § 1681 et. seq.; or a violation of Plaintiff rights provided by Gramm-Leach-Bliley

3    Act 15 U.S.C. § 1601-6809 and a violation of the FTC privacy regulation at 16 CFR parts 313-

4    314. Which of those violations has occurred is dependent upon Defendant Saxon's and

5    Defendant Ocwen's actual roles in relation to Plaintiff's Loan which remains uncertain due to

6    the Defendant(s) failure to appropriately respond to Plaintiff's inquires, demands, disputes, and

7    validation requests as described above.

8    **2.9.10   Determination of the Role of Defendants Saxon and Ocwen with Respect to Plaintiff's Loan.**

9    Plaintiff made a good faith effort as a Pro-Se litigant to appropriately comply with all

10   pre-requisites of the FDCPA statute. It appears from the information available now that there

11   are 3 possibilities of Defendant(s) Ocwen & Saxon's role in relation to the Loan in question.

12   The alternatives are:

13   2.9.10.1   Defendant(s) Ocwen & Saxon are Debt Collector(s) as specified in the

14   Fair Debt Collection Practices Act 15 U.S.C. § 1692 et. seq and therefore subject to the

15   requirements and protections provided to Plaintiff as specified in that statute such as ceasing

16   collection of the debt after receiving Plaintiff's Dispute Letter and Validation Letter, and have

17   violated the FDCPA;  Or

18   2.9.10.2   In the alternative, Defendant(s) Ocwen & Saxon are Creditor(s) as

19   specified in the Fair Credit Reporting Act 15 U.S.C. § 1681 et. seq. and therefore subject to the

20   requirements and protections provided to Plaintiff in that statute, and have violated the FCRA..

21   2.9.10.3   In the event that neither of the 2 above options applies to Defendant(s)

22   Ocwen and/or Saxon then they do not have a permissible purpose in obtaining or reporting

**Second Amended Complaint**          - Page 22 -

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601)

1    Plaintiff's credit information as defined by the FCRA and therefore are violating the

2    requirements of the Gramm-Leach-Bliley Act 15 U.S.C. § 1601-6809 and the FTC privacy

3    rules at 16 CFR parts 313-31 by obtaining Plaintiff's credit information and causing it to be

4    disclosed.

5            2.9.10.4    Assuming for purposes of stating claims, without conceding, that

6    Defendants Saxon and Ocwen were either servicers of Plaintiff's loan or the successor creditor

7    that owns Plaintiff's signed original Note and the beneficial interest in DoT #1, then Plaintiff

8    claims in this lawsuit that Defendants Saxon and Ocwen have committed continuing "willful

9    noncompliance" with the requirements to report accurate information and identify inaccurate

10    information as disputed to the credit reporting agencies, in violation of 15 U.S.C. §1681n after

11    being notified by both the Plaintiff and the Credit Reporting agency that the credit information

12    supplied by each, Saxon and Ocwen, was disputed.  Even if Defendants Saxon and Ocwen did

13    not violate 15 U.S.C. 1681n, nevertheless each of them did not comply with the requirements of

14    15 U.S.C. 1681i, entitled "Procedures in Case of Disputed Accuracy" and thereby violated 15

     U.S.C. 1681o, entitled "Civil Liability for Negligent Noncompliance.

15            2.9.10.5    Plaintiff also claims in the alternative that in the event that based on

16    the evidence presented in this case either at trial or dispositive motion. the Court determines

17    that either or both Defendant Saxon and/or Defendant Ocwen (a) did not represent the owner of

18    the signed original Note as servicer of the loan, and (b) also did not own the original Note

19    signed by Plaintiff, then such defendant did not have a permissible purpose to access and use

20    Plaintiff's credit report information as defined in 15 U.S.C.§ 1681b(a)(3), and thus violated

21    Plaintiff's right to privacy under  the Gramm-Leach-Bliley Act 15 U.S.C. § 1601-6809 and the

22

**Second Amended Complaint**          **- Page 23 -**

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601)

1  FTC privacy rules at 16 CFR parts 313-31 by obtaining Plaintiff's credit information and

2  causing it to be disclosed.

3  **2.10**  **Defendants Saxon and Ocwen Have Provided Conflicting Information in Violation of their Obligation to Disclose the Owner of the Note and DoT #1 to Plaintiff.**

4        Defendant(s) Saxon and Ocwen  have provided conflicting information about their

5  respective roles in their efforts to collect on the loan they claim is owed by plaintiff without

6  being willing to specifically name the current owner of the signed original Note secured by

7  DoT #1, thereby  the 3 above options applies to each of the named Defendant(s) in this action.

8  Plaintiff may find it necessary to move to amend this complaint to add parties or claims upon

9  finally obtaining the needed and requested validation of the disputed debt itself and each

10  Defendant's actual role in reference to Plaintiff's Loan.

11  **2.11**  **Research Related to The Loan and the Investment Trust Named Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS Capital I Inc.,**

12  **MSAC 2007-NC4**

13        **2.11.1**    As Plaintiff continued with additional research into the particular

14  circumstances surrounding Plaintiff's Loan it became clear that there were and are multiple

15  issues of credibility and inadequacy of disclosure of required facts with respect to the

16  representations made by the Defendant(s) concerning who is the owner of the signature original

17  Note signed by Plaintiff, and the real beneficiary of DoT #1.  Based on information available at

18  this time it is highly probable that this is a case of misrepresentation if who has the right to

19  foreclose the deed of trust that secures payment of the note, and is an attempted "fraudulent" or

20  at least unlawful non-judicial foreclosure under RCW 61.24. et seq.

21        **2.11.2**    As described above the recorded documents by Defendant MERS are void or

22  voidable and that in any event the "Assignment of Deed of Trust" document **(Exhibit 2AC 4)**

**Second Amended Complaint**          **- Page 24 -**

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601

has no legal effect, except to provide evidence by inference that the Defendants knew that no prior document existed that showed an "assignment" of the Note and Deed of Trust. Even if MERS is able to prove its authority to assign whatever interest it held in the deed of trust, MERS has not disputed anything with regard to the pleading that it has no rights, authority or interest in the Note to assign. Yet Defendant MERS attempted to assign that Note to Defendant Deutsche as Trustee for the ...NC4 Trust.  That was an attempt to create a false paper trail.

      **2.11.3**    Plaintiff has located the publicly filed documents[7] concerning the ...NC4 Trust which documents disclose at least one additional party who may be responsible to the trust for any loss from the underlying loans that secure the certificates issued by the trust, and at least two additional parties in the necessary chain of title to the note and deed of trust, which facts have not at anytime been disclosed to the Plaintiff but should have been disclosed when requested both prior to and during the pendency of this lawsuit.   The information that was gleaned from the trust documents is described briefly in the following paragraphs, together with the possible relevance of the information in the case at bar.

      **2.11.3.1**    Financial Guaranty Insurance Company is the Certificate Insurer, the party identified in the  PSA as the entity that issued the Certificate Insurance Policy No. 07030039. The insurance policy apparently provides $875,825,000 of coverage for any "Deficiency Amount" or "Preference Amount" as described in the policy attached to the PSA as Exhibit "Z".   The total value of the Certificates issued by the Trust is $781,761,000.00, thus the policy coverage value exceeded the value of the certificates. The Certificate Insurance Policy appears to provide for subrogation rights in the event

---

[7] Filed with the SEC – See f.n. 1 on Page 7 of this Secpnd Amended Complaint and reference to SEC website.

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601)

of payment of a loss under the policy.  Assuming that Plaintiff's Loan became part of

the assets of the trust by the Assignment of Deed of Trust from MERS to Deutsche as

Trustee for the …NC4 Trust (**Exhibit 2AC 4**) as claimed by Defendant Deutsche, an

assumption and claim that Plaintiff denies is true, then the right to enforce the Note and

foreclose on the deed of trust may belong to Financial Guaranty Insurance Company

(who is not a party in this case), and not Deutsche.   This Policy was not made known to

Plaintiff.

　　　　2.11.3.2    Morgan Stanley ABS Capital I Inc., the Depositor into the Trust, is

identified in the Pooling & Servicing Agreement of the …NC4 Trust as the entity that

"**…sells, transfers, assigns, sets over and otherwise conveys to the Trustee for the**

**benefit of the Certificate Holders and the Certificate Insurer, without recourse, all**

**the right, title and interest of the Depositor.**" Thus Morgan Stanley ABS Capital I

Inc. is <u>an essential party</u> in the chain of title of the ownership of the Note and <u>an</u>

<u>essential party</u> in the chain of title in the deed of trust that secures the note, if Plaintiff's

Loan was "deposited" into the Trust.

　　　　2.11.3.3    Morgan Stanley Mortgage Capital Holdings LLC, the Sponsor of the

Trust, is identified in the PSA  "as seller of the Mortgage Loans to the Depositor."  Thus

Morgan Stanley Mortgage Capital Holdings LLC is <u>an essential party</u> in the chain of

title of the ownership of the Note and <u>an essential party</u> in the chain of title in the deed

of trust that secures the note, if Plaintiff's Loan was "deposited" into the Trust.

　　　　2.11.3.4    Therefore, for Plaintiff's loan to be validly "deposited" into the

…NC4 Trust the original signatory Note would have had to have been properly indorsed,

sold, assigned and transferred (delivered) **at least a bare minimum of three (3) different**

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601

times. The original indorsement(s) and minimum transfers would have been (1) from the originally named Lender, New Century, to the Sponsor, Morgan Stanley Mortgage Capital Holdings LLC, then (2) from Morgan Stanley Mortgage Capital Holdings LLC, to the Depositor, Morgan Stanley ABS Capital I Inc., and then (3) from Morgan Stanley ABS Capital I Inc., to Deutsche as Trustee of the ...NC4 Trust before the Trustee, Defendant Deutsche, could possibly have any authority to appoint a successor trustee or order for the successor trustee to foreclose on Plaintiff's home. Defendants still have not provided Plaintiff a complete chain of title or any evidence to support that these are the only remaining unidentified parties who may at some point claim to have an interest in Plaintiff's loan.)

**2.12** **Plaintiff Has Reason to Believe That Loan. No. 1011755184 Has Not Been "Securitized" in the Trust Named in this Second Amended Complaint.**

**2.12.1** If the Assignment of Deed of Trust document recorded by Defendant MERS, as nominee (agent) for Defendant New Century is believed to have significance, as impliedly represented by Defendant MERS's recording of it, then it appears that the Note & DoT #1 (and Loan. No. 101175184) referenced above may have been "securitized" as have millions of mortgage loans (notes and deeds of trust) entered into over the past 10-20 years. Plaintiff has reason to believe the Plaintiff's Loan has not been "securitized" for the following reasons:

**2.12.2** Plaintiff has checked the publicly published information on the ...NC4 Trust and as described above, according to the PSA for the investment trust, the closing date for deposit of loans into the trust was June 20th, 2007. The "Assignment of Deed of Trust" reputedly made by Defendant MERS into that the ...NC4 Trust was dated November 7th, 2008. That assignment was reputedly made more than 15 months after Trust administered according to

Second Amended Complaint                    - Page 27 -

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601)

the Pooling & Servicing Agreement closed on June 20 2007.  In addition, by the time the Assignment of Deed of Trust was signed (November 7, 2008) Plaintiff's loan was in default for five months (since June 2008), and the transfer of a defaulted loan into the trust would have violated other provisions of the trust documents.  Only loans that are warranted as performing can be assigned into the trust.

        2.12.3        Each and every one of those transfers would need to have been made in strict compliance with all applicable state and federal statutes.

        2.12.4        Each and every one of those transfers would need to have been made in strict compliance with the governing documents of the trust, which require the following:

- Deposit of Loans completed by June 20th, 2007 [PSA pg. 34, (see Definitions, Closing Date.)

- The Depositor has delivered or caused to be delivered to the Trustee
    - the original Mortgage Note bearing all intervening endorsements,
    - the original of any guaranty executed in connection with the Mortgage Note
    - the original Mortgage and all intervening assignments of Mortgage evidencing a complete chain of Title to the last endorsee with evidence of recording.
    - the original mortgagee title insurance policy,
    - the original of any security agreement

        2.12.4        Plaintiff has requested from Defendants RTS, Saxon and Ocwen the validation of the complete chain of title of the signed original Note and the beneficial interest in

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601)

1   DoT #1 several times as described above.  The Defendants RTS, Saxon and Ocwen have failed

2   to provide such validation information.

3       2.12.5    It is undisputed by any of the Defendants in documents filed with the Court

4   that Defendant MERS never obtained any kind of interest in the Note.

5       2.12.6    Furthermore, Plaintiff has reviewed the list of loans included in the …NC4

6   Trust by reference to loan number, Loan. No. 1011755184 does not appear to be included in the

7   list of loans deposited in this trust, but even if the loan were listed, the deposit of the particular

8   loan is not complete unless, the conditions stated in sub-paragraph 2.12.4 are fulfilled.

9       2.12.7    Given the facts just recited, Plaintiff has reason to believe that Loan No.

10  1011755184 is not a part of the …NC4 Trust.  Who really holds the note and is the true

11  beneficiary of the deed of trust, if anyone, remains to be proven, and the burden of proof is on

12  the party who claims to own or hold the note and deed of trust, not the Plaintiff.

13  **2.13**    **Plaintiff Requests Strict Proof of Any Defendant's Claims of Right to Foreclose**.

14      2.13.1    Plaintiff requests strict proof from any Defendant who claims the right to

15  foreclose, which proof should meet the following requirements:

16      2.13.2    The indorsements[8] of the signature original promissory note were made by the

17  proper entities at the proper time and in the proper sequence to show the history of transfers

18  from the original lender/payee named on the note through to the current holder/owner of the

19  note, all pursuant to applicable Washington State negotiable instruments law and the governing

20  documents of the …NC4 Trust.

---

[8]   This is the spelling used by the Washington State UCC, Negotiable Instruments Law,
RCW 62A.3-101 et seq.

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601)

2.13.3 ⸱⸱⸱⸱    Any and all documentation related to the transfer, sale, assignment of any interests in Plaintiff's Note and/or DoT #1, whether between MERS members, and therefore only available in the MERS system, or involving a non-MERS member and therefore transferred by some other type of documentation including any recorded or publicly available information.    The documentation described in this sub-paragraph should meet the following requirements:

2.13.3.1    That any assignments of the beneficial interest in the deed of trust were made to the same entities at the same time as any indorsements of the note secured by the deed of trust, so that the beneficial ownership of the deed of trust was not separated from the rightful ownership of the note.

2.13.3.2    That the person who claims the right to foreclose the deed of trust is either the real party in interest who owns and holds both the note and the deed of trust for its own benefit, or is a representative of the real party in interest that has authority to act and is acting for the rightful owner(s) and holder(s) of the note and the beneficial interest in the deed of trust, whomever that may be.

### III.    Plaintiff's Claims.

**3.1    Claim of Violation of Deed of Trust Act RCW 61.24 et. Seq.**

**3.1.1 Plaintiff Realleges Paragraphs 1.1 through 2.13 of Second Amended Complaint.**

Plaintiff realleges Paragraphs 1.1 through 2.13, including all subparagraphs thereof, as if fully and completely set forth here.

**3.1.2    Defendant RTS has violated RCW 61.24.et seq**

Plaintiff claims that Defendant RTS has violated RCW 61.24 *et seq*. by proceeding to

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601)

issue and record in the King County Records multiple Notices of Trustee Sale without first being certain that the reputed beneficiary named in the Notices of Trustee Sale has the right and authority to foreclosure. Defendant RTS has been previously warned of its responsibilities to determine if a reputed beneficiary has the necessary documentation to prove the right to foreclose and has been warned that a failure to have obtained copies of the necessary documents is a failure to fulfill its responsibilities to any borrower against whom foreclosure is sought. This warning came from no less than the Washington State Attorney General's office.

**3.1.2.1**    Rob McKenna, the Washington State Attorney General, (hereinafter "AG Letter") sent to many Trustees who perform foreclosure activities in Washington State including Defendant RTS.  A copy of that letter is attached hereto, marked as Plaintiff's **Exhibit 2AC12** and incorporated herein by reference as if fully set forth here.  A copy of the list of Trustee recipients (hereinafter "AG Trustee List") is attached hereto marked as Plaintiff's **Exhibit 2AC13** and incorporated herein by reference as if fully set forth here.  Among the relevant warnings in the letter is the following:

> "… Trustees must be sure that the lender has the authority to foreclose and that the documents which create the chain of ownership are accurate."

**3.1.2.2**    Plaintiff claims that RTS failed to fulfill its good faith duties as a successor trustee as described above, and required by RCW 61.24.010 et seq.

**3.1.3**    Plaintiff also claims that Defendant RTS has violated RCW 61.24 *et seq.* by not complying with all of the prerequisites of RCW 61.24.030 including but not limited to subsection (7)(a) prior to issuing a Notice of Trustee Sale.  That subsection states:

> "…before the notice of trustee's sale is recorded, transmitted, or served, the trustee shall have proof that the beneficiary is the owner of any promissory note."

Second Amended Complaint                    - Page 31 -

1   As described above, Plaintiff has requested this ownership information several times from

2   Defendant RTS and has yet to receive any such proof.

3       3.1.4    Plaintiff also claims that Defendant RTS has violated its statutory duty as stated

4   in the AG letter when it filed the multiple Notices of Trustee sale prior to Plaintiff performing

5   that duty.  The AG letter reads in that relevant part as follows:

6       "As a trustee responsible for conducting non-judicial foreclosures, **you have
        a statutory duty to perform all foreclosures in good faith and you owe
        that duty to both the homeowner and the lender. Your duty includes**
7       assuring that every procedural step, every legal notice, and all mandated
        mediation opportunities **are provided to homeowners facing foreclosure in
8       fullest conformance with the law."**

9       **[bolding and emphasis supplied by Plaintiff]**

10      3.1.5    Until a complete chain of title ownership of the original signatory note coupled

11  with a proper simultaneous assignment of the Deed of Trust that secures the payment of the

12  Note can be proven it is not possible to determine which if any of the named Defendant(s) have

13  the rights and authority to collect on the loan or foreclose on Plaintiff's real property.

14  **3.2    Plaintiff Claims that Defendant(s) MERS, & Deutsche Violated RCW. 61.24. _et seq._**

15          **3.2.1 Plaintiff Realleges Paragraphs 1.1 through 2.13 of Complaint.**

16      Plaintiff realleges Paragraphs 1.1 through 2.13, including all subparagraphs thereof, as if

17  fully and completely set forth here.

18          **3.2.2 Defendants Who Acted to Prepare for and Support Foreclosure were
            Complicit in the Violation of RCW 61.24, et. seq**

19      Plaintiff claims that Defendant(s) MERS, & Deutsche separately and together violated

20  RCW 61.24 _et seq._ by acting to prepare for, supporting and causing Defendant RTS to initiate

21  non-judicial foreclosure proceedings against the real property described above, when they knew

22  or should have known that the proper procedures had not been followed to:

**Second Amended Complaint**          **- Page 32 -**

(A) provide Defendant RTS with accurate information concerning the status of ownership of the signed original Note and related beneficial interest in DoT # 1 necessary to provide Defendant RTS with the authority to issue notice of foreclosure actions of a Successor Trustee in relation to Plaintiff's DoT #1;

(B) provide Defendant MERS any interest at all in Plaintiff's signed original Note so as to enable MERS to sell, transfer, and assign the note to anyone;

(C) provide Defendant Deutsche with the appropriate rights & authority to be deemed the owner of the signed original Note and become the beneficiary of Plaintiff's DoT #1 and therefore have the authority to appoint Defendant RTS, or any party, as a successor Trustee in relation to Plaintiff's DoT #1; or

(D) provide Defendants Saxon and/or Ocwen with the appropriate rights and authority to instruct Defendant RTS to conduct a non-judicial Trustee Sale.

**3.2.2.1**      Defendant Deutsche appears to have authorized the preparation and recording of false statements when it authorized the preparation and recording of Appointment of Successor Trustee and its recording, described above in ¶ 2.5 as it appears that Plaintiff's loan has not been securitized as further described above in ¶ 2.11 and 2.12. Therefore, Defendant Deutsche did not have and does not have the proper authority and/or beneficial rights to appoint any party as a Successor Trustee in relation to Plaintiff's Note and DoT #1.

**3.2.2.2**      Defendant MERS made false statements in ¶ 2 of the "Assignment of Deed of Trust" as further described above, including the purported assignment of the signed original Note. See the language which reads:

*"Together with the Note or Notes therein described or referred to...."*

Second Amended Complaint                    - Page 33 -

1  Defendant MERS had no interest in the Note to assign to any party, and it knew that

2  fact. See ¶ 2.4 and its subparagraphs above at p. 7, line 10 through   p.10, line 9

3  inclusive, above.

4  **3.3**   **Plaintiff Claims Damages Against Defendants MERS, Deutsche, & RTS for**
      **Violation of RCW 61.24. *et seq.***

5       Plaintiff claims damages against Defendants MERS, Deutsche, & RTS, jointly and

6  severally, for violation of RCW 61.24.*et seq.* in an amount to be proven at time of trial or

7  dispositive motion, plus an award for attorney's fees and costs and expenses incurred in

8  presenting this claim.

9  **3.4**   **Claim for Violation of Real Estate Settlement Procedures Act (RESPA) 12 U.S.C.**
      **§2605 et. seq. & §2607 et. seq.**

10    **3.4.1**   **Plaintiff Realleges Paragraphs 1.1 through 2.13 of Complaint.**

11       Plaintiff realleges Paragraphs 1.1 through 2.13, including all subparagraphs thereof, as if

12  fully and completely set forth here.

13    **3.4.2**   **Plaintiff claims Defendant(s) RTS, Saxon & Deutsche Violated RESPA 12**
         **U.S.C § 2607 et. seq.**

14

15       Plaintiff claims that Defendant(s) RTS, Saxon & Deutsche, separately and together,

16  violated the RESPA 12 U.S.C § 2607(b) when they charged "Beneficiary Advances" in NoT1

17  ($346.17) when "no service was performed in exchange for money" and for other errors

18  in the representation of the amounts due and payable to cure the defaults as described

19  above in ¶2.6.5 - ¶ 2.6.8.

20    **3.4.3**   **Plaintiff claims Defendant(s) RTS, Ocwen & Deutsche Violated RESPA 12**
         **U.S.C § 2607 et. seq.**

21       Plaintiff claims that Defendant(s) RTS, Ocwen & Deutsche separately and together

22  violated the RESPA 12 U.S.C § 2607(b) when they charged "Beneficiary Advances" in NoT2

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601

($4,749.77) when "no service was performed in exchange for money" and for other errors in the representation of the amounts due and payable to cure the defaults as described above in ¶2.7.4 - ¶ 2.7.5.

### 3.4.4    Plaintiff Claims Defendant Saxon Violated RESPA 12 U.S.C § 2605 et. seq.

Plaintiff claims that Defendant Saxon violated RESPA 12 U.S.C § 2605 when it failed to provide Plaintiff with notice that the servicing of Plaintiff's loan had been sold, assuming Saxon was the authorized servicer of the loan at that time.  However, Plaintiff is in no way conceding that Defendant Saxon ever had any rights to assign and/or sell the servicing rights, or ever held such servicing rights to the loan to Plaintiff; but does concede that Saxon apparently claimed to have the right to collect payments on the loan to Plaintiff, although Plaintiff does not know in what capacity.

### 3.4.5    Defendant Ocwen Violated RESPA 12 U.S.C § 2605 et. seq.

Plaintiff claims that Defendant Ocwen violated RESPA 12 U.S.C § 2605 when it failed to provide Plaintiff with notice that it had acquired servicing of Plaintiff's loan however Plaintiff is in no way conceding that Defendant Ocwen ever received any rights to service Plaintiff's Loan.  According to RESPA U.S.C § 2605 (c) (1):

> "Each transferee servicer to whom the servicing of any federally
> related mortgage loan is assigned, sold, or transferred shall notify
> the borrower of any such assignment, sale, or transfer."

### 3.4.6    Defendant Ocwen Violated RESPA 12 U.S.C. § 2605 et. seq.

Plaintiff claims Defendant Ocwen violated RESPA 12 U.S.C § 2605 when it failed to timely and adequately respond to Plaintiff "Qualified Written Request" inquiries.

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601)

**3.4.7**   **Plaintiff Claims Defendant Saxon Violated RESPA 12 U.S.C § 2605 et. seq.**

Plaintiff claims Defendant Saxon violated RESPA 12 U.S.C § 2605 when it failed to timely and adequately respond to Plaintiff "Qualified Written Request" inquiries.

**3.5**   **Plaintiff Claims Damages Against Defendants Saxon, Ocwen, Deutsche, & RTS for Violation of RESPA 12 U.S.C § 2605 & 2607 et. seq.**

**3.5.1**   Plaintiff claims damages against Defendants Saxon, Ocwen, Deutsche, & RTS for violations of RESPA 12 U.S.C § 2605 & 2607 et. seq.  The amount will be proven at time of trial or dispositive motion, plus an award of treble damages, plus an award for attorney's fees and costs and expenses incurred in presenting this claim.

**3.6**   **Plaintiff Claims Violations of Fair Debt Collections Practices Act 15 U.S.C 1692 et. seq. Against Defendants RTS, Ocwen, & Saxon.**

**3.6.1 Plaintiff Realleges Paragraphs 1.1 through 2.13 of Complaint.**

Plaintiff realleges Paragraphs 1.1 through 2.13, including all subparagraphs thereof, as if fully set forth here.

**3.6.2**   **Plaintiff claims Violations of Fair Debt Collection Practices Act (FDCPA) 15 U.S.C 1692 et. seq. against Defendant RTS.**

Defendant RTS is a Debt Collector.  RTS states as much in the notices it issues, and in the recorded introductory messages it places on its telephone system.  Defendant RTS violated 15 U.S.C. § 1692 of the FDCPA when it continued to perform Debt Collection activities on behalf of Defendant Ocwen after Plaintiff had sent RTS various dispute and validation letters as further described above without properly validating the Debt in Dispute, before proceeding with further collection activities..  Defendant RTS made multiple attempts to collect the purported debt via the mails as described above plus the multiple scheduling of the above referenced Trustee Sales.

Second Amended Complaint                    - Page 36 -

**3.6.3  Plaintiff claims Violations of Fair Debt Collection Practices Act (FDCPA) 15 U.S.C 1692 et. seq. against Defendant Ocwen.**

Defendant Ocwen is a debt collector and is licensed as a collection agency in Washington State. It claims to be a debt collector in the notices it sends to debtors. It states as much in the recorded introductory messages on its telephone system. Defendant Ocwen violated 15 U.S.C. § 1692 of the FDCPA when it continued to perform Debt Collection activities after Plaintiff had sent Ocwen various dispute and validation letters as further described above, and Ocwen failed to properly validate the debt in dispute before proceeding with further collection activities.. Instead, Defendant Ocwen made multiple attempts to collect a debt via the mails when it continued to send to Plaintiff (a) monthly collection notices, (b) Notice(s) of Default, and (c) failed to properly validate the accounting and amounts it was attempting to collect from Plaintiff, (d).failed to properly validate the interests, rights and/or authority it had in reference to Plaintiff's Loan, (e) continued reporting to Plaintiff's private credit file as further described above without reporting that the account is in Dispute, and (f) caused Defendant RTS to conduct non-judicial trustee sale actions in relation to Plaintiff's real property as described above.

**3.6.4  Defendant Saxon Violated the Fair Debt Collections Practices Act (FDCPA) 15 U.S.C 1692 et. seq.**

Defendant Saxon is a Debt Collector. It claims to be a debt collector in the notices it sends to debtors. It states as much in the recorded introductory messages on its telephone system. Defendant Saxon violated the FDCPA when it continued to perform Debt Collection activities after Plaintiff had provided constructive notice of Plaintiff's dispute via Saxon's Agent Defendant RTS and publicly recorded Plaintiff's Dispute Letter as described above in ¶ 2.8.2. Furthermore Plaintiff directly provided Defendant Saxon with Notice of the

Second Amended Complaint        - Page 37 -

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601)

1    dispute and requested validation in reference to the reporting of inaccurate information as

2    further described above in ¶ 2.9.5, to which Defendant Saxon has failed to provide a

3    meaningful response.  Defendant Saxon made multiple attempts to collect the debt via the mails

4    by continuing to send to Plaintiff (a) monthly collection notices, and (b) notices of default; and

5    (c) failed to properly validate the accounting and amounts it was attempting to collect from

6    Plaintiff, (d) failed to properly validate the interests, rights and/or authority it had in reference

7    to Plaintiff's Loan, and (e) continued to report to the credit bureaus regarding Plaintiff's credit

8    without properly reporting that the debt was in dispute. Each and all of the activities described

     in the prior two sentences is also a violation of the FDCPA each time it occurred.

9

10        **3.6.5    Plaintiff Claims Damages Against Defendants RTS, Saxon & Ocwen  for
                      Violation of Fair Debt Collections Practices Act (FDCPA) 15 U.S.C
11                    1692 et. seq.**

12              Plaintiff claims damages against Defendants RTS, Saxon and Ocwen for

13    violation of Fair Debt Collections Practices Act (FDCPA) 15 U.S.C 1692 et. seq.   The

14    amount will be proven at time of trial or dispositive motion.  Plaintiff also claims a right to an

     award for attorney's fees and courts costs and expenses incurred in bringing this claim.
15

16    **3.7    Plaintiff Claims That Defendants Saxon and Ocwen Violated the FCRA,
              15 U.S.C.§ 1681s-2.**

17              Defendants Saxon and Ocwen each furnished information to one or more of the credit

18    reporting entities, Experian, Equifax and/or TransUnion that was inaccurate or incomplete, as

19    stated in ¶ 2.9, and its subparagraphs, above at p.18, line 12 through p. 22, line 20 inclusive.

20    Plaintiff notified Defendant Saxon and Defendant Ocwen of the inaccurate or incomplete

21    information, and that Plaintiff disputed the accuracy of the information.   After being so

22    notified, Defendant Saxon failed to correct or complete its reports and failed to notify any of the

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601)

credit reporting agencies that the Plaintiff disputed Saxon's reports.  After being so notified

Defendant Ocwen failed to correct or complete its reports to the credit reporting entities, but did

report to one credit reporting entity that the account was in dispute, and did not report to the

other two credit reporting entities that the account was in dispute, but instead reported

"FORECLOSURE PROCESS STARTED" even though Ocwen knew that the foreclosure

process itself was disputed by Plaintiff, and failed to make that report.  Such actions by

Defendants Saxon and Ocwen violated and continue to violate 15 U.S.C.§ 1681s-2(a),(1),(2)

and (3).   Such actions by both Defendants also were a "willful noncompliance" in violation of

15 U.S.C. §1681n.  Plaintiff claims damages against Defendants Saxon and Ocwen, jointly and

severally because each reported data as if it were its own taken from time periods when the

other was acting as either lender or servicer on Plaintiff's Loan, thus making it appear that

there were two separate loans, and two separate sets of data.   In the alternative, if joint and

several liability against both Defendants Saxon and Ocwen is not granted, nevertheless, the

damages caused by the reports of each Defendant was increased because of the duplicated

nature of the two sets of reports.   Plaintiff also claims an award of reasonable attorney's fees

and court costs for bringing this claim.

**3.8     Plaintiff Claims Violations of Washington Consumer Protection Act (CPA)
RCW 19.86 et. seq. against Defendant(s) RTS, Ocwen, Saxon, Deutsche &
MERS Separately and Together.**

   **3.8.1   Plaintiff Realleges Paragraphs 1.1 through 2.13 of Second Amended
Complaint.**

   Plaintiff realleges Paragraphs 1.1 through 2.13, including all subparagraphs thereof, as if

fully set forth here.

//

Second Amended Complaint                       - Page 39 -

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601)

**3.8.2** <u>Plaintiff claims Violations of Washington Consumer Protection Act (CPA) RCW 19.86 et. seq. against Defendant RTS.</u>

Defendant RTS committed violations of WA CPA when it attempted to conduct a non-judicial trustee sale without verifying that the Debt it was attempting to collect was valid and/or enforceable or verifying the party it was attempting to collect for had the rights and authority to collect and/or enforce the debt. The elements of at CPA claim are (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) that impacts the public interest, (4) which causes injury to the plaintiff in his or her business or property, and (5) which injury is causally linked to the unfair or deceptive act.

**3.8.2.1**   Plaintiff alleges Defendant RTS conducted (1) unfair or deceptive acts and practices when it continued to conduct actions of a non-judicial trustee sale in violation of its statutory duties, as further defined above without validating that it was being instructed by to do so by the true owner of the signature original promissory note and the true beneficiary of the DoT # 1 related to Loan. No. 1011755184.

**3.8.2.2**   Plaintiff's entire Loan transaction, like that of any of homeowner is a part of trade or commerce.  When Defendant RTS  sends notices and schedules non-judicial Trustee Sale actions against a homeowner, that action, also meets the requirement of an action in Trade or Commerce as defined in RCW 19.86.010 which reads: *"shall include the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington."*  Defendant RTS is selling their services within Washington State to parties who are attempting to collect debts and foreclose on the real property rights of the Plaintiff and other similarly situated Washington residents.

**Second Amended Complaint**          **- Page 40 -**

**3.8.2.3** Defendant RTS's business activities unavoidably affects the public interest every time RTS violates the Washington Deed of Trust Act, such as the violations that have occurred with regard to Plaintiffs property in this case. RTS is very active in the business of foreclosures. It advertises for, solicits, and actively seeks foreclosures as part of its regular business activity. See its website https://www.rtrustee.com/services.aspx. The website includes the statement quoted below:

> "The members of Robinson Tait, P.S. and Regional Trustee have worked together since 1988 to provide seamless integration of "cradle to grave" foreclosure, bankruptcy, eviction and post-sale related services in Washington, Oregon, California, Nevada, Arizona, Idaho, Alaska, and Montana."

The repeated attempts of RTS to set a foreclosure sale of the Plaintiff's property when it knew or should have known that its client/customer, Deutsche as Trustee for …NC4 Trust, had not produced a properly indorsed original note with a simultaneous assignment of the beneficiary's interest in the Deed of Trust that secures payment of the Note. That omission is clearly a violation of the good faith responsibilities of a successor trustee to ensure that its client has the right to foreclose the Deed of Trust prior to proceeding with a non-judicial foreclosure. The very reliance by Deutsche as Trustee for …NC4 Trust on the purported assignment of the Deed of Trust dated November 5th, 2008 more than 16 months after the closing of the deposit period for that Trust was and is an obvious indication to any knowledgeable successor trustee that no proper indorsement with simultaneous assignment of beneficial interest in the Deed of Trust that secured repayment of the Note had been provided before. That would be especially true given the publicity and number of litigated case opinions issued during the last two and a half years.(since 2008) that have addressed the problem of the frequent failure of Trustees of

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601

1   securitized mortgage loan trusts to produce the properly indorsed original note and the related

2   robo-signing scandals.

3   ### 3.9   Plaintiff Claims Damages Against Defendant(s) RTS, Ocwen, Saxon, Deutsche, and MERS for Violation of RCW 19.86 *et seq.*

4

5       **3.9.1**   Plaintiff claims that the above described actions of Defendant RTS were done in

6   a kind of joint venture with Defendants Ocwen, Saxon, Deutsche, MERS. Defendant RTS could

7   not have prepared the NoT #1 without the active participation and flow of information from

8   both Saxon and Deutsche. The participation of both Saxon and Deutsche was made possible by

9   the Assignment by MERS and the purported assignment of the Note. Thus each of those parties

10  provided a part of the justification for the preparation of the NoT #1. The same can be said for

11  Ocwen, Deutsche and MERS with respect to the preparation by Defendant RTS of NoT #2.

12  Defendant RTS would not have violated the Deed of Trust Act without the support of the other

13  Defendants.  In connection with each of the Notices of Trustee Sale the other Defendants who

14  supported the particular trustee sale stood to benefit from its completion as their expenses and

15  fees of performing their services would come from their participation in the effort to authorize

16  and support the unlawful foreclosures. Such activities between the various Defendants were a

17  part of each Defendants regular business activities and occurred more than once. In order for

18  these supporting actors to be successful their business survival depended on further solicitation

19  and participation in such activities as a part of their regular business routine. Each of the

20  supporting Defendants were as much a part of the attempt to pursue unlawful foreclosures as if

21  they had been a part of a foreclosure team.

       **3.9.2**   Plaintiff claims damages, including treble damages, for having to bring this

22  claim for violation of RCW 19.86 *et seq.*  The amount of damages will be proven at time of trial

**Second Amended Complaint**          **- Page 42 -**

1   or dispositive motion, plus an award of treble damages, plus an award for reasonable attorney's

2   fees and court costs and expenses incurred in presenting this claim.

3   **3.10   Claim for Declaratory Judgment re: Lack of Standing to Foreclose**

4   Plaintiff realleges Paragraphs 1.1 through 2.13, including all subparagraphs thereof, as if

5   fully and completely set forth here.

6   **3.11   None of the Defendant(s) have Standing to Foreclosure or Collect upon
        Plaintiff's Loan described above.**

7   Based on the facts, claims, and allegations presented throughout this Second Amended

8   Complaint and particularly in the paragraphs in Parts II and III of this complaint. Plaintiff

9   claims the right to a Declaratory Judgment that none of the Defendant(s) in this case has the

10  standing to foreclose against Plaintiff property because none is a real party in interest who holds

11  the properly indorsed original note signed by Plaintiff simultaneous with the assignment of the

12  beneficiary's interest in the Deed of Trust that secures payment of the original Note.

13  **3.12   There are Significant Gaps in the "Chain of Title" to The Note and
        Beneficial Interest in the Deed of Trust.**

14  **3.12.1** As a part of the request for a Declaratory Judgment Plaintiff claims that there are

15  significant gaps in the chain of ownership of the Promissory Note, assuming it is no longer

16  owned by New Century Mortgage Corporation the original named payee. Plaintiff claims that

17  no Defendant named in this case claims that it holds the properly indorsed original note signed

18  by Plaintiff. Unless such a claim is made and proven no Defendant can claim the right to

19  foreclose in reliance on the DoT #1 even if such Defendant were able to demonstrate an

20  enforceable assignment of the DoT #1 without the simultaneous delivery to it of the properly

21  indorsed original note signed by Plaintiff.

22

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601)

**3.12.2** According to the Governing documents of the ...NC4 Trust several parties must have received beneficial interests in both the NOTE and DoT in a specific order prior to the closing date of the Trust for there to have been a valid transfer/deposit/sale of Plaintiff's Loan into the Trust.

**3.12.3** The original Lender on the Note was New Century Mortgage Corporation, who never made any indorsement transferring ownership of its interest in the NOTE to Defendant MERS or any other party insofar as Plaintiff knowledge. In addition,

**3.12.3.2** New Century Mortgage Corporation is no longer in business.

**3.12.3.3** Defendant MERS failed to properly assign its nominal interest in the DoT #1, as an agent of New Century.

**3.12.3.3.1** That interest would only have been valid if the party to whom Defendant MERS assigned its interest in the Deed of Trust were also the holder/owner of Plaintiff's NOTE as an interest in the DoT #1 alone is a nullity. *Carpenter v. Longan, 83 U.S. 271, 274 (1872)*

**3.12.3.3.2** Plaintiff asserts based on information and belief that Defendant MERS cannot now or at any time in the future assign its nominal legal interest in Plaintiff's DoT #1, as an agent of New Century – because MERS's Principal - New Century, is no longer active in business.

**3.12.3.4** The lack of any of the above described assignments of the Deed of Trust or indorsements and transfers of the Note leaves a gap in title to both the note and the beneficial interest in the deed of trust.

**Second Amended Complaint**          - Page 44 -

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601)

1        **3.12.3.5**    The Party, if any, who holds the properly indorsed original note

2    signed by Plaintiff together with an enforceable assignment of the DoT #1 is currently unknown

3    to Plaintiff due to the above described reasons.

4    **3.13**   **Defendant MERS Purported to Assign Plaintiff's Note even though it had NO Interest or Record Ownership of the Note.**

5        As further described above Defendant MERS purported to assign to the …NC4 Trust

6    Plaintiff's NOTE even though it never possessed the Note or any ownership interest in

7    Plaintiff's NOTE.

8    **3.14**   **Even Assuming Defendant MERS had the Right to Assign Interests and/or Ownership of Plaintiff's Note Transferring the Note directly to Defendant Deutsche**

9    **was not in compliance with the Governing Documents of the …NC4 Trust.**

10       Defendant MERS assignment of the note was invalid for multiple reasons as described

11   above (the assignment was signed by a non-employee, of MERS; MERS never had any interest

12   to assign), but even assuming that defendant MERS had an appropriate interest to transfer. Its

13   assignment directly to the Defendant Deutsche would have also been invalid because at the

14   time the transfer took place the closing date of the Trust had past, and Defendant MERS is not

15   the Depositor named in the Trust documents. The Depositor can only be sold a loan by the

16   Sponsor named in the Trust documents; therefore, Defendant MERS's assignment would have

17   violated the …NC4 Trust Governing Documents as further described above. Furthermore at the

18   time of the purported assignment the Loan was already allegedly in default.  Assignment of a

19   defaulted loan into the …NC4 Trust would violate the Trust documents, and the law related to

20   such trusts.

21   //

22   //

**Second Amended Complaint**         **- Page 45 -**

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601)

**3.15**   **Plaintiff claims Declaratory Judgment Voiding Actions of Defendant(s) RTS,**
**Deutsche, Ocwen, Saxon and Morgan Stanley**

As described above it appears that all of the Defendant parties associated with the...NC4 Trust are attempting to unlawfully collect a debt and enforce a security instrument to which they have no rightful authority to enforce, no lawful rights to collect upon, no valid beneficial interest in. Plaintiff claims the right to Declaratory Judgment that all actions of Defendant(s) RTS, Deutsche, as Trustee of the ...NC4 Trust, Ocwen as Successor Servicer to Saxon, and Saxon as Servicer, in an effort to foreclose on Plaintiff's loan should be adjudged void and of no legal effect, except to the extent that they caused said Defendants to violate applicable laws.

**3.16**   **Plaintiff's claims for Permanent Injunction.**

**3.16.1**  Plaintiff realleges Paragraphs 1.1 through 2.13, including all subparagraphs thereof, as if fully and completely set forth here.

**3.16.2**  If the Defendant(s) RTS, Ocwen, Deutsche or any other parties or other persons, such as a newly appointed Successor Trustee, Aztec Foreclosure Corporation of WA, (who is not joined as a party defendant because it has taken no action to date known to Plaintiff that would justify such joinder) who claim any right or authority to act on behalf of the ...NC4 Trust are permitted to sell the property at a non-judicial foreclosure sale, the rights of and interests of Plaintiff in the real property described above will be lost, even though Plaintiff has filed this lawsuit.

**3.16.2.1**      That will cause Plaintiff irreparable harm in the loss of the title and associated ownership rights to his real property. In addition, the extensive damage to Plaintiff's financial status and credit standing will further damage his ability to

**Second Amended Complaint**          **- Page 46 -**

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601)

recover from the unlawful action of the Defendants. Thus the Plaintiff will lose greatly by such foreclosure sale.

     3.16.2.2    Plaintiff's harm is significantly greater than that of the Defendants who appear to have no interest in Plaintiff's loan. Even if any of the Defendants do have rightful authority and interest to collect and/or foreclosure on Plaintiff's loan, the beneficial impact to the Defendants' and ultimately the ...NC4 Trust would be minimal at best as the total alleged value of the ...NC4 Trust, according to the prospectus, is $781,761,000 and there is an Insurance Policy disclosed in the trust documents providing $875,825,000 of coverage for any "Deficiency Amount" or "Preference Amount." There are also other credit enhancements and protections provided for in the trust documents that protect the trust investors from loss. Thus this investment trust will lose a "de minimus" of its value, if any, even if it never were to foreclose on any loans reputed to be in its investment portfolio.

     3.16.2.3    Furthermore a non-judicial foreclosure sale is very unlikely to produce a reasonable value that will pay off the loan so whoever (if anyone) may have a rightful interest in the note, and therefore may be entitled to foreclose, which if anyone, appears to be a currently unnamed party and not one of the current Defendants, will also suffer losses caused by the foreclosure sale conducted by any of the currently named Defendants.

     3.16.2.4    In any event, based upon the strong likelihood of Plaintiff's success based upon the merits of this Second Amended Complaint and the previous pleadings to the extent they were not dismissed, none of the Defendants are likely to be

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601

able to prove entitlement to foreclose given the evidence described through-out the

pleadings of this case.

        3.16.2.5     Public policy is in favor of granting Plaintiff this relief is

supported by rulings by Washington Courts[9] and legislature which have stated the

Washington State Deed of Trust Act must be construed in favor of the borrower.

    3.16.3   **Plaintiff Claims the Right to a Permanent Injunction Against all Defendants in Their Capacity as Agents of the ...NC4 Trust Upon Certain Conditions.**

Plaintiff claims the right of permanent injunction against Defendant(s) Deutsche, Saxon, Ocwen and RTS in the capacities as Trustee, Servicer, Successor Servicer, and Successor Trustee of Plaintiff's DoT as agents for the ...NC4 Trust if they cannot provide strict proof that (1) Defendant Deutsche holds the right as trustee on behalf of the ...NC4 Trust to foreclose the deed of trust on the property described above by proving (2) that as trustee it is the holder of the note, properly indorsed as required by Washington State's Uniform Commercial Code, Negotiable Instruments Law, and the Loan was properly deposited, transferred or sold into the ...NC4 Trust according to the Governing Documents of that trust, and (3) that the beneficial interest in the DoT was assigned to it simultaneously with the delivery of the indorsed note, all pursuant to Plaintiff's request above.

//

//

---

[9] "The Act must be construed in favor of borrowers because of the relative ease with which lenders can forfeit borrower' interests and the lack of judicial oversight in conducting non-judicial foreclosure sales." Udall v. T.D. Escrow Services, Inc., 159 Wn.2d 903, 915-16, 154 P.3d 882, 890 (2007). See also Amresco Independence Funding, Inc. v. SPS Properties, LLC, 129 Wn.App. 532, 536-37, 119 P.3d 884, 886 (2005) ("Because these statutes' remove many protections borrowers have under a mortgage, lenders must strictly comply with the statutes, and courts must strictly construe the statues in the borrower's favor").

**Second Amended Complaint**     - Page 48 -

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601

**Wherefore, Plaintiff having stated its claims against the Defendants in this Second Amended Complaint, requests relief as follows:**

4.1   For Judgment against Defendants on Plaintiff's claims for violation of the Washington State Deed of Trust Act as follows:

(A)   For Declaratory Judgment that Defendant Regional Trustee Services Corporation violated RCW 61.24.030(7)(a) and RCW 61.24.0400 by failing to have proof that the beneficiary is the owner of any promissory note . . secured by the deed of trust . . . before the notice of trustee's sale is recorded, transmitted, or served; and

(B)   For Declaratory Judgment that Defendants Mortgage Electronic Registration Systems, Inc., and Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS Capital I Inc Trust 2007-NC4 authorized the preparation and recording of documents that falsely indicated that that Deutsche Bank National Trust Company was the owner of the Note and beneficiary of the Deed of Trust that secured the Note.; and in addition,

(C)   For Judgment of damages jointly and severally against Defendants Regional Trustee Services Corporation, Mortgage Electronic Registration Systems, Inc., and Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS Capital I Inc Trust 2007-NC4 for violation of RCW 61.24.030 (7)(a) and RCW 61.24.040, together with an award of reasonable attorneys fees and court costs

4.2   For Judgment on Plaintiffs claims for Violation of Real Estate Settlement Procedures Act (RESPA) 12 U.S.C.§2605 et. seq. & §2607 et seq., against Defendants Regional Trustee Services Corporation; Ocwen Loan Servicing LLC; Saxon Mortgage Services Inc.; and Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS Capital

Second Amended Complaint          - Page 49 -

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601

I Inc Trust 2007-NC4, jointly and severally, in amounts to be proven at time of trial or dispositive motions, plus an award of reasonable attorney's fees, and court costs for bringing this action.

    4.3    For Judgment against Defendants on Plaintiff's Claims for Violations of Fair Debt Collections Practices Act, 15 U.S.C 1692 et. seq. as follows:

    Judgment against Defendants Regional Trustee Services Corporation; Ocwen Loan Servicing LLC;  Saxon Mortgage Services Inc.;  jointly and severally,  for damages in an amount to be proven at trial or dispositive motion, plus an award of reasonable attorneys fees, and court costs for bringing this action.

    4.4    For Judgment against Defendants Saxon Mortgage Services Inc and Ocwen Loan Servicing LLC, jointly and severally, for violation of the FCRA, 15 U.S.C. 1681 for damages in an amount to be proven at trial or dispositive motion, plus an award of reasonable attorneys fees, and court costs for bringing this action.

    4.5    For Judgment against Defendants Regional Trustee Services Corporation, Ocwen Loan Servicing LLC, Saxon Mortgage Services Inc., Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS Capital I Inc Trust 2007-NC4, and Mortgage Electronic Registration Systems, Inc. (MERS) jointly and severally for violations of the Washington Consumer Protection Act (CPA), RCW 19.86 et. seq. for damages in an amount to be proven at trial or dispositive motion, and trebled; plus an award of reasonable attorney's fees and court costs for bringing this action.

    4.6    For Declaratory Judgment on Plaintiff's Claims re: Lack of Standing to Foreclose as follows:  a Declaratory Judgment that none of the specifically named Defendants, in this Second Amended Complaint in this action (namely Regional Trustee Services

**Second Amended Complaint**        **- Page 50 -**

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601

Corporation; Ocwen Loan Servicing LLC; Saxon Mortgage Services Inc.; Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS Capital I Inc Trust 2007-NC4; and Mortgage Electronic Registration Systems, Inc. (MERS)) have standing to foreclosure or collect upon Plaintiff's note and deed of trust described in this Second Amended Complaint.

    4.7    For Permanent Injunction in favor of Plaintiff against Defendants Regional Trustee Services Corporation; Ocwen Loan Servicing LLC; Saxon Mortgage Services Inc. in their capacity as agents of Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS Capital I Inc Trust 2007-NC4; and against Defendant Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS Capital I Inc Trust 2007-NC4, as the purported owner of the Note and beneficiary of the Deed of Trust that secures it, prohibiting foreclosure by any of these Defendants of that certain Deed of Trust dated January 19th, 2007, and recorded in the King County Records on January 24th, 2007 under Recording No. 20070124002146.

    4.8    For such additional relief as this Court deems just and fair under the circumstances.

    Dated: June 1, 2011.

Mueller & Associates, Inc. P.S.

by: ___/s/  Edward L. Mueller_____
    Edward L. Mueller, WSBA # 264
    Attorney for Plaintiff

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601)

1

**CERTIFICATE OF SERVICE.**

2      I hereby certify that on June 1, 2011, I caused a copy of the foregoing Second

3   Amended Complaint with attached Exhibits to be electronically filed with the Clerk of the

4   Court using the CM/ECF system which will send e-mail notification of such filing to

5   following participants:

6      **Attorneys for Regional Trustee Services, Inc.**

7      **Nicolas A. Daluiso,**    e-mail:  ndaluiso@robinsontait.com
       **Phillip L. Brenneman,**    e-mail:  pbrenneman@robinsontait.com
8      **Robinson Tait, P.S.**
       **710 2nd Ave Ste 710**
9      **Seattle, WA  98104-1724**

10     **Attorneys for Saxon Mortgage Services, Inc.**

11     **David A. Weibel**    e-mail: dweibel@bwmlegal.com
       **Barbara L. Bollero**    e-mail: bbollero@bwmlegal.com
       **Bishop, White, Marshall & Weibel, P.S.**
12     **720 Olive Way Ste 1201**
       **Seattle, WA  98101-1878**
13

14     **Attorneys for Ocwen Loan Servicing, LLC,**
       **Mortgage Electronic Registration Systems Inc., and**
       **Deutsche Bank National Trust Company as Trustee for**
15     **Morgan Stanley ABS Capital 1 Inc. Trust 2007-NC7;**

16     **Robert W. Norman, Jr.**    e-mail: rnorman@houser-law.com
       **Houser & Allison, APC**
17     **9970 Research Dr**
       **Irvine, CA  92618-4309**

18

19   Dated June 1 2011.

20                          /s/  Edward L. Mueller
                            Edward L. Mueller

21

22

---

**Second Amended Complaint**         **- Page 52 -**