1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

PHIMPHA THEPVONGSA,

Plaintiff,

No. C10-1045RSL

10

v.

11

REGIONAL TRUSTEE SERVICES
CORPORATION, *et al.*,

12

Defendants.

13

ORDER GRANTING DEFENDANTS
OCWEN, MERS, AND DEUTSCHE
BANK'S MOTION FOR SUMMARY
JUDGMENT

14

15    This matter comes before the Court on "Ocwen, [] MERS and DBNTC as

16    Trustee's Motion for Summary Judgment."  Dkt. # 88.  Plaintiff asserts that defendants

17    Mortgage Electronic Services, Inc. ("MERS"),  Deutsche Bank National Trust Company

18    ("Deutsche Bank"), and Ocwen Loan Servicing, LLC ("Ocwen") violated various state and

19    federal laws in connection with attempts to foreclose on plaintiff's property.  Plaintiff seeks

20    damages as well as declaratory and injunctive relief.  Having reviewed the memoranda,

21    declarations, and exhibits submitted by the parties[1] and having heard the arguments of counsel,

22    the Court finds as follows:

23

24

25    [1]  Plaintiff's request for judicial notice (Dkt. # 97 at 2 n.2) is GRANTED in part.  The Court has
considered only the highlighted portions of the Deposition Transcript of Ronaldo Reyes provided by plaintiff.
26    Dkt. # 98-1.  In the absence of pinpoint citations to the relevant testimony, the Court will not scour the record to
find evidence that supports the parties' arguments.

**BACKGROUND**

On January 19, 2007, plaintiff obtained two loans from defendant New Century Mortgage Corporation ("New Century"). Only the larger of the two loans is at issue in this litigation. Plaintiff executed a deed of trust[2] in favor of New Century, identifying plaintiff as the borrower, New Century as the lender, Old Republic Title as the trustee, and MERS as the "beneficiary" and the lender's "nominee."

Although MERS remained the designated "beneficiary" of the debt instrument, defendant Deutsche Bank took actual, physical possession of the original promissory note on January 29, 2007. Plaintiff defaulted on the loan in mid-2008. On November 5, 2008, an "Assignment of Deed of Trust" was recorded, purporting to transfer whatever beneficial interest MERS had in the loan to Deutsche Bank National Trust Company "as Trustee for Morgan Stanley ABS Capital I Inc., MSAC 2007-NC4." Plaintiff alleges that this assignment was invalid for a number of reasons, including MERS' lack of any beneficial interest in the loan, the lack of authority on the part of the signer, and the impossibility that Deutsche Bank was acting as trustee for the identified fund.[3] On the same day of the purported transfer from MERS to Deutsche Bank, Deutsche Bank appointed Regional Trustee Services ("RTS") as the

---

[2] A deed of trust is, in essence, a three-party mortgage through which the borrower gives a third party a lien on the real property to hold in trust as security until the obligation to the lender is discharged. H.R. Rep., 2008 Reg. Sess. S.B. 5378 (Wash. March 6, 2008). The third party is called the trustee, and the lender is generally identified as the beneficiary of the trust. Through this arrangement, title to the real property passes to the borrower, but the lender is protected under the trust agreement. If the borrower defaults on his loan, the beneficiary need not file a civil suit to foreclose on the mortgage. Pursuant to the DTA, the beneficiary may direct the trustee to initiate non-judicial foreclosure proceedings. The beneficiary may also replace the trustee with a successor trustee to handle the foreclosure. RCW 61.24.010(2). As long as the trustee complies with the DTA's requirements, the lender can foreclose on the property inexpensively and efficiently. If the borrower objects, the burden is on him or her to seek judicial protection from wrongful foreclosure.

[3] As a preliminary matter, the Court finds that matters related to the Morgan Stanley investment do not affect the outcome of this motion. Deutsche Bank's authority to act under the DTA will be determined based on whether Deutsche Bank, in whatever capacity, had actual physical possession of the note during the relevant time period and properly acted as the beneficiary. Whether Deutsche Bank possessed the note as a trustee for a third-party does not alter the analysis.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT  - 2

successor trustee.  The day before the assignment and appointment were executed, RTS had issued a Notice of Default to plaintiff, representing itself as "Trustee and/or Agent for the Beneficiary."

RTS recorded a Notice of Trustee's Sale on December 5, 2008, which identified Deutsche Bank as the beneficiary and asserted that the outstanding debt was $16,956.35, including $346.17 in "Beneficiary Advances."  Plaintiff alleges that this first Notice of Trustee's Sale was invalid because Deutsche Bank was not properly assigned the beneficial interest in the loan, that RTS had not been properly appointed as successor trustee, that the "Beneficiary Advances" are unjustified fees, and that the pay-off amount was incorrect.  The sale was discontinued and ultimately cancelled.

Effective November 16, 2009, the servicing of plaintiff's loan was transferred from Saxon Mortgage Services, Inc., to Ocwen.  Ocwen notified plaintiff of the transfer within two days.  At the time of the transfer, Saxon reported that it had accrued fees in the amount of $4,749.77 while servicing the loan.

A second Notice of Trustee's Sale was recorded on December 31, 2009.  RTS again identified Deutsche Bank as the beneficiary, but this time the outstanding amount had increased to $51,518.09 including $4,749,77 in "Beneficiary Advances."  Plaintiff contests RTS' power to issue the Notice, the validity of the "Beneficiary Advances" charge, and the total amount due.

In March 2010, plaintiff served a combined Qualified Written Request, dispute of debt, and debt validation request on Ocwen, RTS, and New Century.  Plaintiff also recorded the document in the King County property records.  On April 20, 2010, Ocwen confirmed that it was the loan servicer, indicated that no payments had been made since November 2009 and that the loan was in foreclosure, and provided a copy of the note and loan application as well as a settlement statement.  Ocwen declined to respond to any of the other inquiries because "[t]he

1 additional information you requested is not required to be provided . . . ." Dkt. # 57-3.  Ocwen

2 invited plaintiff to request information again, in writing, if he believed Ocwen had improperly

3 failed to provide information relating to loan servicing.  In light of the plaintiff's demand for

4 debt validation, RTS postponed and ultimately canceled the foreclosure sale.  No additional

5 steps to foreclose on plaintiff's property have been taken.

6 <center>**DISCUSSION**</center>

7    Summary judgment is appropriate when, viewing the facts in the light most

8 favorable to the nonmoving party, there is no genuine dispute as to any material fact that would

9 preclude the entry of judgment as a matter of law.  <u>L.A. Printex Indus., Inc. v. Aeropostale,</u>

10 <u>Inc.</u>, 676 F.3d 841, 846 (9th Cir. 2012).  The party seeking summary dismissal of the case

11 "bears the initial responsibility of informing the district court of the basis for its motion"

12 (<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)) and identifying those portions of the

13 materials in the record that show the absence of a genuine issue of material fact (Fed. R. Civ. P.

14 56(c)(1)).  Once the moving party has satisfied its burden, it is entitled to summary judgment if

15 the non-moving party fails to identify specific factual disputes that must be resolved at trial.

16 <u>Hexcel Corp. v. Ineos Polymers, Inc.</u>, 681 F.3d 1055, 1059 (9th Cir. 2012).  The mere

17 existence of a scintilla of evidence in support of the non-moving party's position will not

18 preclude summary judgment, however, unless a reasonable jury viewing the evidence in the

19 light most favorable to the non-moving party could return a verdict in its favor.  <u>U.S. v.</u>

20 <u>Arango</u>, 670 F.3d 988, 992 (9th Cir. 2012).

21   **A.  Deed of Trust Act, RCW 61.24.005** *et seq*.

22    Plaintiff alleges that MERS and Deutsche Bank violated the DTA by causing

23 RTS to issue faulty notices of default and trustee's sale.  Plaintiff also alleges that the deed of

24 trust was an illegal and unenforceable contract because MERS was identified as the

25 beneficiary.  Each contention is considered below.

26

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT  - 4

**1. RTS' Actions**

Pursuant to the DTA, the written notice of default must be provided by the beneficiary or the trustee (RCW 61.24.030(8)), and only the beneficiary has the power to appoint a trustee or successor trustee (RCW 61.24.010(2)).  Deutsche Bank obtained physical possession of the promissory note shortly after the closing date in January 2007[4] and was therefore the "beneficiary" for purposes of the DTA on November 5, 2008, when RTS issued the original notice of default.  At the time, RTS was acting as Deutsche Bank's agent.  RTS was subsequently appointed as successor trustee, in which capacity it was authorized to issue the two Notices of Trustee's Sale.  Because Deutsche Bank had physical possession of the original promissory note, plaintiff's DTA claims against it fail as a matter of law.

**2. Validity of the Deed of Trust**

Plaintiff argues that MERS' identification as beneficiary in the deed of trust invalidates the deed.  Bain v. Metropolitan Mortg. Group, Inc., 175 Wn.2d 83 (2012), the case on which plaintiff relies, made clear that MERS could not be the "beneficiary" as that term is used in the DTA unless it had actual physical possession of the note.  The Supreme Court did not, however, invalidate the subject deed of trust because of this misdesignation of MERS as the beneficiary.  Neither an incorrect statement of fact in a contract nor even an outright misrepresentation automatically invalidates the parties' undertaking or otherwise makes a contract illegal and unenforceable under Washington law.  Given the Bain court's unwillingness to invalidate the deed of trust at issue in that case, plaintiff's argument is unpersuasive.

---

[4]  Although plaintiff argues that Deutsche Bank may not have taken possession of the note on January 29, 2007, and suggests that Deutsche Bank was holding the note as the agent of another entity, he presents no evidence in support of these contentions.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT  - 5

**B.  Real Estate Settlement Procedures Act**

### 1.  Beneficiary Advances, 12 U.S.C. § 2607(b)

Plaintiff alleges that Deutsche Bank and Ocwen violated § 2607(b) of RESPA when they caused RTS to include a demand for "Beneficiary Advances" in the Notices of Trustee's Sale.  Section 2607(b) reads:

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

RESPA was intended to reform the real estate settlement process (*i.e.*, the closing of loans) by, in relevant part, eliminating kickbacks and referral fees that unnecessarily increased the costs of services obtained to close the transaction.  12 U.S.C. § 1601.  Plaintiff has not alleged that the "Beneficiary Advances" were charged in connection with the settlement of his loan or provided any evidence (such as a copy of his settlement statement) that would support such an inference.  Nor has plaintiff alleged that Deutsche Bank or Ocwen provided any settlement services or had any role in the closing.  Costs and expenses assessed after closing are not the type of "real estate settlement services" to which RESPA generally or § 2607(b) specifically apply.  Bloom v. Martin, 77 F.3d 318, 320-21 (9th Cir. 1996) (failure to disclose and fee-splitting claims apply only to charges for services necessary for closing:  claims related to charging of reconveyance fee when plaintiff repaid the loan were not cognizable under RESPA).

### 2.  Qualified Written Request, 12 U.S.C. § 2605(e)

RESPA requires lenders and loan servicers to timely respond to Qualified Written Requests ("QWRs") from borrowers.  Within 60 days after receiving a QWR, the

servicer must provide the borrower with a written response that includes the information requested by the borrower or an explanation of why the information is unavailable or cannot be obtained by the servicer.  12 U.S.C. § 2605(e)(2)(C).[5]

On or about March 22, 2010, plaintiff sent a written request for information to Ocwen.  Dkt. # 98-5.  Plaintiff specifically identified the request as a "Qualified Written Request" under RESPA, indicated that he was attempting to ensure that he had not been or was not then the victim of a fraud, and demanded "absolute first-hand evidence from you and/or your legal department with regard to the original signed promissory note," as well as a chain of custody for the note.  Plaintiff requested that Ocwen conduct their own *de novo* investigation to assure themselves of the existence and accuracy of the claimed indebtedness.  Plaintiff specifically requested 198 different documents or categories of documents related to his loan.  Although the sheer number of requests is daunting, some of them are directly relevant to the issues with which RESPA is concerned, namely the servicing of the loan.[6]

On April 20, 2010, Ocwen responded to plaintiff's letter, providing very little information other than that which was reflected in its computerized records and a copy of the promissory note and other loan documents.  Ocwen apparently took the position that plaintiff's request was not a QWR.  For purposes of RESPA, a QWR is "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that --

(i)  includes, or otherwise enables the servicer to identify, the name and account of the

---

[5]  The Dodd Frank Act, Pub. L. 111-203, Title XIV, § 1400(c) and § 1463(b) (July 21, 2010), shortened the time periods in which the lender had to respond from 60 days to 30 days.

[6]  "Servicing" is defined in the statute as "receiving any scheduled periodic payment from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT  - 7

1

borrower; and

2

3

(ii)  includes a statement of the reasons for the belief of the borrower, to the extent

4

applicable, that the account is in error *or* provides sufficient detail to the servicer

5

regarding other information sought by the borrower."

6

12 U.S.C. § 2605(e)(1)(B) (emphasis added).  Although there is no indication that plaintiff was

7

aware of a particular error in his account, he clearly identified documents and categories of

8

documents (*i.e.*, "other information" in the parlance of § 2605(e)(1)(B)) that he sought from the

9

servicer.  Courts in this district disagree on whether a request for documents or information

10

regarding the servicing of a loan constitutes a QWR in the absence of a claim of error.  See

11

Eifling v. Nat'l City Mortg., 2011 WL 893233, at *2-3 (W.D. Wash. Mar. 15, 2011) (a

12

defaulted borrower's written inquiry regarding late fees and charges coupled with a request for

13

22 categories of documents is not the type of request RESPA was designed to cover); Moon v.

14

GMA Mortg. Corp., 2009 WL 3185596 at *4 (W.D. Wash. Oct. 2, 2009) (a widow's written

15

request for copies of "all the loan documents" is a QWR).

16

17

The Eifling court was concerned that borrowers who had defaulted on their loans

18

could "flood their lender with documentation requests, on the hope that a failure to timely

19

comply will lead to an affirmative cause of action, or a defense to a collection or foreclosure

20

action."  Eifling, 2011 WL 892322, at *3.  RESPA has built-in procedures and requirements

21

that will, for the most part, forestall the feared flood.  A request for documents must be specific

22

and it must relate to the servicing of the loan.  Assuming a proper request is made, the lender's

23

failure to appropriately respond does not provide a defense against foreclosure, but merely

24

gives rise to a claim for actual damages (unless the violations amount to a pattern and practice,

25

in which case statutory damages may be available).  The upside of filing unnecessary QWRs is

26

therefore rather limited.  RESPA was enacted in large part because lenders and servicers were not responding to legitimate inquiries from their borrowers.  The legislature specifically determined what was and was not a "qualified written request" that would trigger the lender's duty to respond.  If the requirements established by Congress are met, the lender has a statutory duty to act:  the Court will not second-guess the wisdom of the legislature's policy choice.

In this case, plaintiff's requests were not made on a payment coupon or other payment medium supplied by the lender or servicer.  The March 22, 2010, communication provides plaintiff's name and loan number and specifically describes the documents and information requested.  Having reviewed the communication, it is clear that a number of the requests relate to the servicing of plaintiff's loan.  Because 12 U.S.C. § 2605(e)(1)(B)(ii) is written in the disjunctive, the Court finds that neither the language of the statute nor Congressional intent required plaintiff to allege an accounting error in order to obtain information from the servicer.  Plaintiff provided sufficient detail to the servicer regarding the "other information" he sought, thereby satisfying the final requirement of a QWR for purposes of RESPA.  While Ocwen may have been justified in ignoring requests for information that were unrelated to the servicing of plaintiff's loan, its refusal to respond to inquiries that go to the heart of RESPA violated 12 U.S.C. § 2605(e)(2).

Nevertheless, plaintiff's RESPA claim fails as a matter of law.  In a case brought by an individual, a failure to comply with the requirements of RESPA makes the servicer liable for "an amount equal to the sum of --

(A)  any actual damages to the borrower as a result of the failure; and

(B)  any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed

1    $1,000."

2    12 U.S.C. § 2605(f)(1).  Plaintiff has not identified actual damages suffered as a result of

3    Ocwen's failure to respond adequately to the QWR.  The lack of information did not cause

4    plaintiff to send his payments to the wrong entity, for example, or result in the accrual of late

5    fees or penalties that could have been avoided had defendants timely responded:  plaintiff was

6    already in default when the QWR was sent.  Nor has plaintiff shown a pattern or practice of

7    violating § 2605(e)(3).  The evidence reveals only a single wrong: the failure to treat plaintiff's

8    letter as a QWR.[7]  Plaintiff's RESPA claims against Deutsche Bank and Ocwen fail as a matter

9    of law.

10

11    **C.  Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*.**

12         Ocwen began servicing plaintiff's loan after it was already in default and is a debt

13    collector for purposes of § 1692f(6).[8]  Section 1692f(6) prohibits a debt collector from taking

14    or threatening to take "non-judicial action to effect dispossession or disablement of property if -

15

16    _____

17    [7] Plaintiff has abandoned his claim that Ocwen violated § 2605(b) of RESPA "when it failed to provide Plaintiff with notice that it had acquired servicing of Plaintiff's . . . ." Dkt. # 57 at ¶ 3.4.5.

18    [8] The current trend among district courts in the Ninth Circuit is to find that, at least insofar as defendant confines itself to actions necessary to effectuate a nonjudicial foreclosure, only § 1692f(6) of the FDCPA
19    applies.  See, e.g., McDonald v. Onewest Bank, FSB, __ F. Supp.2d __, 2013 WL 858178, at *12 (W.D. Wash. Mar. 7, 2013); Jara v. Aurora Loan Servs., LLC, 2011 WL 6217308, at * 5 (N.D. Cal. Dec. 14, 2011); Pizan v.
20    HSBC Bank USA, N.A., 2011 WL 2531104, at *3 (W.D. Wash. June 23, 2011); Lettenmaier v. Fed. Home Loan Mortg. Corp., 2011 WL 1938166, at *11-12 (D. Or. May 20, 2011); Armacost v. HSBC Bank USA, 2011
21    WL 825151, at * 5-6 (D. Idaho Feb. 9, 2011); Long v. Nat'l Default Servicing Corp., 2010 WL 3199933 at *4
22    (D. Nev. Aug. 11, 2010).  See also Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50108 (Dec. 13, 1988) (relying on the two-part definition of
23    "debt collector" to find that, if a party falls only within the security interest provisions of the definition, then they "are subject only to this provision [§ 1692f(6)] and not the rest of the FDCPA.'").  While this analysis has
24    not been universally accepted (see, e.g., Gillespie v. Countrywide Bank FSB, 2011 WL 3652603, at *2 (D. Nev. Aug. 19, 2011) (stating without analysis that "activities undertaken in connection with a nonjudicial foreclosure
25    do not constitute debt collection under the FDCPA") and Wilson v. Draper & Goldberg, P.L.L.C., 443 F.3d 373, 376 (4th Cir. 2006) (noting that plaintiff's "'debt' remained a 'debt' even after foreclosure proceedings
26    commenced," such that actions "surrounding foreclosure proceeding were attempts to collect that debt" under the FDCPA)), the Court finds it persuasive based on both the language of the statute and its policy implications.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT  - 10

- (A) there is no present right to possession of the property claimed as collateral through an

enforceable security interest; (B) there is no present intention to take possession of the

property; or (C) the property is exempt by law from such dispossession or disablement." 15

U.S.C. § 1692f(6).  Ocwen, acting as the loan servicer for Deutsche Bank, apparently

authorized RTS to issue the second Notice of Trustee's Sale on December 31, 2009.  Because

Deutsche Bank was the holder of the promissory note at that time, defendants had the right to

effect dispossession of plaintiff's property.  Plaintiff has not, therefore, raised a genuine issue

of fact regarding his FDCPA claim.

### D.  Fair Credit Reporting Act, 15 U.S.C. § 1681s-2

Congress enacted the FCRA "to ensure fair and accurate credit reporting,

promote efficiency in the banking system, and protect consumer privacy."  Safeco Ins. Co. of

Am. v. Burr, 551 U.S. 47, 52 (2007).  Section 1681s-2 imposes two responsibilities on

"furnishers" of credit information to credit reporting agencies ("CRAs") such as Equifax,

TransUnion, and Experian.  A furnisher must not only provide accurate information to the CRA

in the first instance (15 U.S.C. § 1681s-2(a)), it must also investigate and/or correct inaccurate

information (15 U.S.C. § 1681s-2(b)).  The duty to investigate and correct arises only after the

furnisher receives notice of a dispute from the CRA.  A complaint received directly from the

consumer does not trigger the duty to investigate.  Nelson v. Chase Manhattan Mortgage Corp.,

282 F.3d 1057, 1059-60 (9th Cir. 2002) ("A private litigant can bring a lawsuit to enforce

§ 1681s-2(b), but only after reporting the dispute to the CRA, which in turn reports it to the

furnisher.").

### 1.  Furnishing Inaccurate Information, 15 U.S.C. § 1681s-2(a)

Plaintiff alleges that Ocwen provided inaccurate and incomplete information to

the CRAs.  Pursuant to 15 U.S.C. § 1681s-2(d), only federal and state agencies can enforce the

duties imposed under § 1681s-2(a).  To the extent plaintiff is asserting a claim under 15 U.S.C.

§ 1681s-2(a), the claim fails as a matter of law.

## 2.  Investigation and/or Correction, 15 U.S.C. § 1681s-2(b)

After receiving notice of a dispute from a CRA, the furnisher of credit information must conduct an investigation and correct any deficiencies or errors in the prior reports.  15 U.S.C. § 1681s-2(b)(1).  Plaintiff has failed to allege or provide evidence that he lodged a dispute related to Ocwen with the CRAs, that the CRAs notified Ocwen of the dispute, or that any of the obligations set forth in 15 U.S.C. § 1681s-2(b)(1) were triggered as to Ocwen.  In his Second Amended Complaint, plaintiff alleges only that "Plaintiff notified Defendant Saxon and Defendant Ocwen of the inaccurate or incomplete information . . . ." Dkt. # 57 at ¶ 3.7.  There is no allegation that plaintiff provided notice to the CRAs, plaintiff has not provided a copy of any such notice, and there is no evidence that the CRAs notified Ocwen of plaintiff's dispute.  While there is evidence that plaintiff disputed something to TransUnion (see Dkt. # 98-4), it is impossible to tell from TransUnion's December 24, 2010, response whether the dispute involved Ocwen, whether Ocwen was contacted, or whether any information on the credit report was altered or corrected.  Plaintiff was given the opportunity to "request a description of how the investigation was conducted along with the business name, address and telephone number of any company we may have contacted for information," but apparently chose not to do so.  Absent evidence from which a reasonable fact finder could conclude that Ocwen received notice of the dispute from a CRA, plaintiff's FCRA claim fails as a matter of law.

## E.  Washington Consumer Protection Act, RCW 19.86 *et seq*.

The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  RCW 19.86.020.  A private cause of action exists under the CPA if (1) the conduct is unfair or deceptive, (2) occurs in trade or

commerce, (3) affects the public interest, and (4) causes injury (5) to plaintiff's business or property.  Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780 (1986).  Plaintiff has not identified an "unfair or deceptive" act in which defendants Deutsche Bank or Ocwen participated.  Deutsche Bank had actual physical possession of the promissory note during the relevant time frame and was statutorily authorized to initiate nonjudicial foreclosure proceedings under the DTA.  Plaintiff has not identified any misrepresentation of fact or other wrongful act that could satisfy the first element of a CPA claim as to these defendants.

With regards to MERS, the Washington Supreme Court has found that characterizing a non-holder (in this case, MERS) as the beneficiary in the deed of trust when it did not have actual possession of the note has the capacity to deceive for purposes of a CPA claim.  Bain, 175 Wn.2d at 117.  The Supreme Court also found that the third element, public interest, was presumptively met because MERS "is involved with an enormous number of mortgages in the country (and our state), perhaps as many as half nationwide."  Bain, 175 Wn.2d at 118.  Both the first and third elements of plaintiff's CPA claim against MERS are, therefore, satisfied.

The issue, then, is whether plaintiff can show injury caused by MERS' misrepresentation.  Plaintiff makes no attempt to show that MERS' appearance on his deed of trust has caused injury to his business or property.  Instead, plaintiff cites to his opposition to Saxon's motion for summary judgment, in which he argues that the filing of various documents in the property records has clouded his title, interfered with his attempts to sell the property, and caused him to lose market value.  MERS had nothing to do with the identified recordings, however.  In the absence of injury causally related to the misrepresentation of MERS status as beneficiary, plaintiff's CPA claim against MERS fails.

1

**F.  Declaratory Relief**

2

Plaintiff seeks a declaration that all of defendants' actions taken thus far in

3

furtherance of nonjudicial foreclosure are void and of no legal effect.  The requested relief is

4

moot.  Defendants have abandoned all efforts to enforce or otherwise act upon the Notices of

5

Default and Notices of Trustee's Sale issued in 2008 and 2009.  These documents cannot be

6

resurrected and have no legal effect.  A declaration of this Court to that effect is unnecessary.

7

**G.  Injunctive Relief**

8

There does not appear to be any bar to defendants conducting a nonjudicial

9

foreclosure on plaintiff's property in the future.  Although plaintiff has provided evidence that

10

the November 5, 2008, appointment of RTS as the successor trustee was defective (the

11

appointment appears to have been signed by an individual who was not an employee of Saxon

12

Mortgage Services, Inc., and there is no evidence that Mr. Walter had authority to sign on

13

behalf of either Saxon Mortgage or Deutsche Bank during the relevant time period), the Court

14

assumes that defendants will be able to rectify any defects that may have occurred in the

15

assignments, appointments, and notices.  Because foreclosure remains a possibility, plaintiff's

16

request for a permanent injunction is denied.  It is undisputed that plaintiff borrowed money to

17

purchase his home and that he has defaulted on the loan.  Plaintiff has not identified any legal

18

or equitable justification for erasing the debt.  Even if defendants are ultimately unable to

19

utilize the expedited DTA procedure in the future, they would be entitled to initiate a judicial

20

foreclosure action and, if applicable, to seek a deficiency judgment against plaintiff for any

21

unrecovered amounts.  <u>Donovick v. Seattle-First Nat. Bank</u>, 111 Wn.2d 413, 420-21 (1988).

22

Defendants are entitled to summary judgment to the extent plaintiff seeks a

23

permanent injunction against all future foreclosure actions.

24

25

26

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT  - 14

1

**CONCLUSION**

2        For all of the foregoing reasons, the claims asserted against defendants Ocwen,

3   MERS, and Deutsche Bank are DISMISSED.  Defendants' motion for summary judgment

4   (Dkt. # 88) is GRANTED.

5

6        Dated this 25th day of September, 2013.

7        *MVP S Lasnik*

8        Robert S. Lasnik
         United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT  - 15