1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

PHIMPHA THEPVONGSA,

Plaintiff,

11

v.

12

REGIONAL TRUSTEE SERVICES
CORPORATION, *et al.*,

13

Defendants.

No. C10-1045RSL


ORDER GRANTING DEFENDANT
SAXON MORTGAGE SERVICES'
MOTION FOR SUMMARY JUDGMENT

14

15

16

17

18

19

20

21

22

23

24

25

26

This matter comes before the Court on "Defendant Saxon Mortgage Services, Inc.'s Motion for Summary Judgment."  Dkt. # 93.  Plaintiff asserts that Saxon violated the Real Estate Settlement Procedures Act ("RESPA"), the Fair Debt Collection Practices Act ("FDCPA"), the Fair Credit Reporting Act ("FCRA"), and the Washington Consumer Protection Act ("CPA") in connection with its servicing of plaintiff's loan from March 26, 2007, to November 16, 2009.  Plaintiff seeks damages as well as declaratory and injunctive relief.  Having reviewed the memoranda, declarations, and exhibits submitted by the parties and having heard the arguments of counsel, the Court finds as follows:

## BACKGROUND

On January 19, 2007, plaintiff obtained two loans from defendant New Century Mortgage Corporation ("New Century").  Only the larger of the two loans is at issue in this litigation.  Plaintiff executed a deed of trust in favor of New Century, identifying plaintiff as

ORDER GRANTING SAXON MORTGAGE
SERVICES' MOTION FOR SUMMARY
JUDGMENT  - 1

the borrower, New Century as the lender, Old Republic Title as the trustee, and Mortgage

Electronic Registration System ("MERS") as the "beneficiary" and the lender's "nominee."

Defendant Saxon began servicing plaintiff's loan on March 26, 2007, although

the identity of its then-principal is not disclosed in the records provided.  At some point in mid-

2008, plaintiff defaulted on the loan.  On November 5, 2008, an "Assignment of Deed of Trust"

was recorded, purporting to transfer whatever beneficial interest MERS had in the loan to

Deutsche Bank National Trust Company "as Trustee for Morgan Stanley ABS Capital I Inc.,

MSAC 2007-NC4."  Plaintiff alleges that this assignment was invalid for a number of reasons,

including MERS' lack of any beneficial interest in the loan, the lack of authority on the part of

the signer, and the impossibility that Deutsche Bank was acting as trustee for the identified

fund.[1]  On the same day of the purported transfer from MERS to Deutsche Bank, Deutsche

Bank appointed Regional Trustee Services ("RTS") as the successor trustee.  The day before

the assignment and appointment were executed, RTS had issued a Notice of Default to

plaintiff, representing itself as "Trustee and/or Agent for the Beneficiary."

RTS recorded a Notice of Trustee's Sale on December 5, 2008, which identified

Deutsche Bank as the beneficiary and asserted that the outstanding debt was $16,956.35,

including $346.17 in "Beneficiary Advances."  Plaintiff alleges that this first Notice of

Trustee's Sale was invalid because Deutsche Bank was not properly assigned the beneficial

interest in the loan, that RTS had not been properly appointed as successor trustee, that the

"Beneficiary Advances" are unjustified fees, and that the pay-off amount was incorrect.  The

sale was discontinued and ultimately cancelled.  On October 30, 2009, Saxon notified plaintiff

---

[1]  As a preliminary matter, the Court finds that neither MERS' designation as the beneficiary of the
original deed of trust nor matters related to the Morgan Stanley investment affect the outcome of this motion.
Saxon was not involved in the creation of or representations contained in the original deed of trust.  Its authority
to act and the legality of its conduct will be evaluated based on the applicable statutes and the law of commercial
paper.  Who held the note before Saxon's involvement and whether Deutsche Bank possessed the note as a
trustee for a third-party or in its own right does not alter the analysis.

ORDER GRANTING SAXON MORTGAGE
SERVICES' MOTION FOR SUMMARY
JUDGMENT  - 2

1   that the servicing of his loan would be transferred to Ocwen Loan Servicing, LLC, effective

2   November 16, 2009.

3         In March 2010, plaintiff served a combined Qualified Written Request, dispute of

4   debt, and debt validation request on defendants Ocwen, RTS, and New Century.  The document

5   was not sent to Saxon, but plaintiff recorded it in the King County property records.

6         In June 2010, plaintiff discovered that both Saxon and Ocwen had reported a

7   mortgage default to the credit reporting agencies.  Plaintiff alleges that both reports contained

8   inaccuracies, and that the duplicative reporting made it appear as if plaintiff had defaulted on

9   two different debts.  Within weeks, plaintiff, proceeding pro se, filed this action asserting that

10  Saxon and Ocwen had provided inaccurate information to a credit reporting agency in

11  violation of the Fair Credit Reporting Act.  When defendants challenged the adequacy of

12  plaintiff's allegations, he apparently disputed the reports with the credit reporting agencies as

13  required by statute.  A month later, plaintiff received a letter from Saxon stating that it had

14  "received your claim of Identity Theft/Fraud from the credit bureau" and requesting that

15  plaintiff provide additional information.  Plaintiff did not respond.

16                                  **DISCUSSION**

17        Summary judgment is appropriate when, viewing the facts in the light most

18  favorable to the nonmoving party, there is no genuine dispute as to any material fact that would

19  preclude the entry of judgment as a matter of law.  L.A. Printex Indus., Inc. v. Aeropostale,

20  Inc., 676 F.3d 841, 846 (9th Cir. 2012).  The party seeking summary dismissal of the case

21  "bears the initial responsibility of informing the district court of the basis for its motion"

22  (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and identifying those portions of the

23  materials in the record that show the absence of a genuine issue of material fact (Fed. R. Civ. P.

24  56(c)(1)).  Once the moving party has satisfied its burden, it is entitled to summary judgment if

25  the non-moving party fails to identify specific factual disputes that must be resolved at trial.

26

Hexcel Corp. v. Ineos Polymers, Inc., 681 F.3d 1055, 1059 (9th Cir. 2012).  The mere

existence of a scintilla of evidence in support of the non-moving party's position will not

preclude summary judgment, however, unless a reasonable jury viewing the evidence in the

light most favorable to the non-moving party could return a verdict in its favor.  U.S. v.

Arango, 670 F.3d 988, 992 (9th Cir. 2012).

### A.  Real Estate Settlement Procedures Act

Plaintiff alleges that Saxon violated § 2607(b) of RESPA when it caused RTS to

include a demand for "Beneficiary Advances" in the Notice of Trustee's Sale.  Section 2607(b)

reads:

> No person shall give and no person shall accept any portion, split, or percentage
> of any charge made or received for the rendering of a real estate settlement
> service in connection with a transaction involving a federally related mortgage
> loan other than for services actually performed.

RESPA was intended to reform the real estate settlement process (i.e., the closing of loans) by,

in relevant part, eliminating kickbacks and referral fees that unnecessarily increased the costs

of services obtained to close the transaction.  12 U.S.C. § 1601.  Plaintiff has not alleged that

the "Beneficiary Advances" were charged in connection with the settlement of his loan or

provided any evidence that would support such an inference.  Nor has plaintiff alleged that

Saxon provided settlement services or had any role in the closing.  Costs and expenses assessed

after closing are not the type of "real estate settlement services" to which RESPA generally– or

§ 2607(b) specifically – applies.  Bloom v. Martin, 77 F.3d 318, 320-21 (9th Cir. 1996) (failure

to disclose and fee-splitting claims apply only to charges for services necessary for closing:

claims related to a reconveyance fee charged when plaintiff repaid the loan were not cognizable

ORDER GRANTING SAXON MORTGAGE
SERVICES' MOTION FOR SUMMARY
JUDGMENT  - 4

1  under RESPA).[2]

2       Plaintiff also alleges that Saxon failed to respond to a Qualified Written Request

3  in violation of 12 U.S.C. § 2605(e).  The obligation to respond to inquiries arises when a loan

4  servicer "receives a qualified written request from the borrower (or an agent of the borrower)

5  for information relating to the servicing of such loan."  12 U.S.C. § 2605(e)(1)(A).  It is

6  undisputed that plaintiff did not send his request for information to Saxon.  Plaintiff contends,

7  however, that Saxon received constructive notice of the request when plaintiff filed the

8  document in the King County property records and served it on Saxon's agent, RTS.  Saxon's

9  involvement with plaintiff's loan ended almost five months before plaintiff lodged his

10  objections to the foreclosure process.  RTS was no longer acting as Saxon's agent when it

11  received a copy of the objections, and Saxon had no continuing interest in the real property that

12  would have made on-going monitoring of the King County property records prudent.  In these

13  circumstances, Saxon did not "receive" a qualified written request, and the obligation to

14  respond was not triggered.[3]

15

16       Plaintiff's RESPA claim against Saxon fails as a matter of law.

17  **B.  Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*.**

18       Plaintiff concedes that Saxon is not a "debt collector" as that term is used in the

19  FDCPA.  The claim therefore fails as a matter of law.

20

21

22

23       [2] Plaintiff fails to address the fact that RESPA is inapplicable to post-closing fees, instead challenging
    Saxon's assertion that the charges were authorized by the Deed of Trust.  Even if charging unspecified
    "inspection" and "breach fees" and advancing expenses to unidentified parties for unidentified purposes
24  exceeded Saxon's contractual authority, such post-closing charges cannot form the basis of a RESPA claim.

25       [3] Plaintiff has abandoned his claim that Saxon violated § 2605(b) of RESPA "when it failed to provide
    Plaintiff with notice that the servicing of Plaintiff's loan had been sold . . . ."  Dkt. # 57 at ¶ 3.4.4.
26

ORDER GRANTING SAXON MORTGAGE
SERVICES' MOTION FOR SUMMARY
JUDGMENT  - 5

1

## C.  Fair Credit Reporting Act, 15 U.S.C. § 1681s-2

2           Congress enacted the FCRA "to ensure fair and accurate credit reporting,

3   promote efficiency in the banking system, and protect consumer privacy."  Safeco Ins. Co. of

4   Am. v. Burr, 551 U.S. 47, 52 (2007).  Section 1681s-2 imposes two responsibilities on

5   "furnishers" of credit information to credit reporting agencies ("CRAs") such as Equifax,

6   TransUnion, and Experian.  A furnisher must not only provide accurate information to the CRA

7   in the first instance (15 U.S.C. § 1681s-2(a)), it must also investigate and/or correct inaccurate

8   information (15 U.S.C. § 1681s-2(b)).  The duty to investigate and correct arises only after the

9   furnisher receives notice of a dispute from the CRA.  A complaint received directly from the

10  consumer does not trigger the duty to investigate.  Nelson v. Chase Manhattan Mortgage Corp.,

11  282 F.3d 1057, 1059-60 (9th Cir. 2002) ("A private litigant can bring a lawsuit to enforce

12  § 1681s-2(b), but only after reporting the dispute to the CRA, which in turn reports it to the

13  furnisher.").

14              **1.    Furnishing Inaccurate Information, 15 U.S.C. § 1681s-2(a)**

15          Plaintiff alleges that Saxon provided inaccurate and incomplete information to

16  the CRAs.  Pursuant to 15 U.S.C. § 1681s-2(d), only federal and state agencies can enforce the

17  duties imposed under § 1681s-2(a).  To the extent plaintiff is asserting a claim under 15 U.S.C.

18  § 1681s-2(a), the claim fails as a matter of law.

19              **2. Investigation and/or Correction, 15 U.S.C. § 1681s-2(b)**

20          After receiving notice of a dispute from a CRA, the furnisher of credit

21  information must:

22      (A) conduct an investigation with respect to the disputed information;

23      (B) review all relevant information provided by the consumer reporting agency. . .;

24      (C) report the results of the investigation to the consumer reporting agency;

25      (D) if the investigation finds that the information is incomplete or inaccurate,

26

ORDER GRANTING SAXON MORTGAGE
SERVICES' MOTION FOR SUMMARY
JUDGMENT  - 6

report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation . . . promptly –

      (i) modify that item of information;
      (ii) delete that item of information; or
      (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1).  Although there is no explicit "reasonableness" requirement enunciated in the text, the Ninth Circuit has determined that the term "investigation" "requires an inquiry likely to turn up information about the underlying facts and positions of the parties, not a cursory or sloppy review of the dispute" and that requiring some degree of careful inquiry is appropriate given the consumer protection goal of the FCRA.  Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1155 (9th Cir. 2009).  The pertinent question is whether the furnisher's investigation were reasonable in light of the information it had regarding the nature of the consumer's dispute.

Saxon acknowledges receiving notices of plaintiff's dispute from the CRAs, but states that it was told that the matter involved a claim of identity theft or fraud.  Plaintiff has not provided any evidence regarding the nature of the dispute raised with the CRAs.  In his Second Amended Complaint, plaintiff alleges only that "Plaintiff notified Defendant Saxon and Defendant Ocwen of the inaccurate or incomplete information . . . ."  Dkt. # 57 at ¶ 3.7.  Plaintiff has not provided a copy of the dispute notification or a declaration regarding its content.  In response to the notice from the CRAs, Saxon sent plaintiff a letter describing the dispute as one of "Identity Theft/Fraud" and requesting that plaintiff complete a four-page "Identity Theft Affidavit" within ten days.  Plaintiff did not respond and Saxon verified the

ORDER GRANTING SAXON MORTGAGE
SERVICES' MOTION FOR SUMMARY
JUDGMENT  - 7

1    information as reported.

2           Plaintiff bears the burden of showing that Saxon's investigation was unreasonable

3    in light of the information it had regarding the nature of the plaintiff's dispute.  Gorman, 584

4    F.3d at 1157.  In the absence of any information regarding the nature of the dispute plaintiff

5    raised with the CRAs and/or the notice Saxon subsequently received, plaintiff has failed to raise

6    a genuine issue of fact regarding the reasonableness of Saxon's inquiry.

7

8           **D.  Washington Consumer Protection Act, RCW 19.86 *et seq*.**

9           The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts

10   or practices in the conduct of any trade or commerce."  RCW 19.86.020.  A private cause of

11   action exists under the CPA if (1) the conduct is unfair or deceptive, (2) occurs in trade or

12   commerce, (3) affects the public interest, and (4) causes injury (5) to plaintiff's business or

13   property.  Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780

14   (1986).  The purpose of the CPA is to protect consumers from harmful practices, which is why

15   plaintiff must allege an actual or potential impact on the general public, not merely a private

16   wrong.  Lightfoot v. Macdonald, 86 Wn.2d 331, 333 (1976).  Saxon argues that plaintiff cannot

17   establish most of the elements of a CPA claim.

18          The CPA does not define "unfair or deceptive" for purposes of the first element.

19   Whether an act is unfair or deceptive is a question of law.  Leingang v. Pierce County Med.

20   Bureau, Inc., 131 Wn.2d 133, 150 (1997).  Washington courts have held that a deceptive act

21   must have the capacity to deceive a substantial portion of the population (Sing v. John L. Scott,

22   Inc., 134 Wn.2d 24, 30 (1997)) and "misleads or misrepresents something of material

23   importance" (Holiday Resort Cmty. Ass'n v. Echo Lake Assocs., LLC, 134 Wn. App. 210, 226

24   (2006)).  This element is distinct from the third element of public interest impact and focuses

25   on the act's capacity to deceive rather than its actual impact on the public.  May v. Honeywell

26

ORDER GRANTING SAXON MORTGAGE
SERVICES' MOTION FOR SUMMARY
JUDGMENT  - 8

1   Int'l, Inc., 331 Fed. Appx. 526, 529 (9th Cir. 2009).  See also Henery v. Robinson, 67 Wn.

2   App. 277, 291 (1992).

3          In the Second Amended Complaint, plaintiff alleges that Saxon provided false

4   information to RTS regarding amounts owed and that this information was used to generate an

5   unfair and deceptive Notice of Trustee's Sale.  In response to Saxon's motion for summary

6   judgment, however, plaintiff appears to have abandoned that claim, instead asserting that Saxon

7   has "made misrepresentations by claiming to have authority[,] independent of an order from the

8   New Century Bankruptcy Court[,] to transfer its Servicing Rights to Ocwen . . . ."  Dkt. # 99 at

9   12.  A loan servicer acts only upon authorization of the lender or successor owner of the debt.

10  If the owner of the beneficial interest decides to switch servicers, there are very few hurdles to

11  the transfer.  See 12 U.S.C. § 2605(b) and (c) (requiring notifications to the borrower from both

12  the transferee and transferor servicers).

13         Plaintiff's argument that Saxon misrepresented its authority to transfer servicing

14  duties to Ocwen seems to be based on the hypothesis that Deutsche Bank did not possess the

15  beneficial interest in plaintiff's note and could not, therefore, choose a new loan servicer.

16  According to plaintiff, Deutsche Bank could not own the note unless (a) the original lender,

17  New Century, endorsed and transferred it to Morgan Stanley Mortgage Capital Holdings, LLC,

18  (b) who then transferred it to Morgan Stanley ABS Capital I, Inc., (c) who then transferred it to

19  Deutsche Bank acting as trustee for the Morgan Stanley ABS Capital I Inc., MSAC 2007-NC4

20  Trust.  Dkt. # 57 at ¶ 2.11.3.4.  No authority is cited for this proposition, and the basic tenet of

21  bearer paper – that the person who holds the note owns the debt and is entitled to enforce it –

22  means that Deutsche Bank could, in fact, hold the beneficial interest in plaintiff's note even in

23  the absence of the specified series of transactions.  Because plaintiff's CPA claim is based

24  solely on Saxon's alleged misrepresentation regarding its authority to transfer servicing duties

25  to Ocwen, the claim fails as a matter of law.

26

ORDER GRANTING SAXON MORTGAGE
SERVICES' MOTION FOR SUMMARY
JUDGMENT  - 9

**E.  Declaratory and Injunctive Relief**

Plaintiff has not opposed Saxon's motion for summary judgment regarding the claims for declaratory and injunctive relief.  The motion will therefore be granted.

**F.  Motion to Strike**

Saxon seeks to strike portions of the Declaration of Joshua Auxier as improper expert opinion and requests that the Court disregard the remainder of the declaration because Mr. Auxier is personally interested in the outcome of this litigation.  Mr. Auxier's opinions regarding the validity or invalidity of certain documents have not been considered by the Court. While his dual roles as paralegal for plaintiff's counsel and real estate broker involved in the potential sale of plaintiff's property suggests that even his factual testimony is not entitled to much weight, the Court declines to strike the declaration at this time.

## CONCLUSION

For all of the foregoing reasons, Saxon's  motion for summary judgment (Dkt. # 93) is GRANTED.


Dated this 25th day of September, 2013.

*MMT S Lasnik*

Robert S. Lasnik
United States District Judge

ORDER GRANTING SAXON MORTGAGE
SERVICES' MOTION FOR SUMMARY
JUDGMENT  - 10